IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | CIVIL ACTION |
| Plaintiff, | NO. 07-CV- 02768-JP |
| v. | JURY TRIAL DEMANDED |
| FACEBOOK, INC. and THEFACEBOOK, LLC, | [FILED ELECTRONICALLY] |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER

### I.   INTRODUCTION

The present case should be transferred to the Northern District of California pursuant to 28 U.S.C. §1404(a). There is no connection between this case and the Eastern District of Pennsylvania other than the fact that plaintiff resides here. While that would normally seem a valid tie to the district, in this case, the plaintiff is merely venture capital firm that recently acquire rights in the asserted patent. None of the inventors or prior assignees of the patent reside in the district. More importantly, defendant and all relevant documents, witnesses and facts are located in California.

This district has adopted the "center of gravity" test, which states that the preferred venue for patent infringement lawsuits is the jurisdiction that is as close as possible to the activity centered around the production of the accused product. Here, the accused product is the Facebook website which is developed, operated and maintained in the Northern District of California. Accordingly, this case should be transferred to the Northern District of California pursuant to section 1404(a).

PALOALTO 83108 (2K)

Dockets.Justia.com

## II. FACTS

Plaintiff Cross Atlantic Capital Partners, Inc. ("XACP") filed the instant action for patent infringement against Defendants Facebook, Inc. and Thefacebook, LLC (collectively "Facebook") on July 3, 2007 in the Eastern District of Pennsylvania. Defendant Facebook filed its Answer and Counterclaims for a declaration of non-infringement and invalidity on September 4, 2007.

Plaintiff XACP is an international venture capital firm with locations in Ireland, Scotland and the United States. XACP acquired rights in the patent-in-suit from a now defunct Virginia company called iKimbo. *See* Plaintiff XACP's Complaint. XACP filed the assignment of the asserted patent rights just weeks before filing this lawsuit. Facebook is a technology company headquartered in Palo Alto, California. *See* Declaration of Aniruddha Gadre ("Gadre Decl.") at ¶ 2. Facebook has over 350 employees, approximately 95% of whom reside in California. *Id.* at ¶ 3. The vast majority of those California employees operate, develop, maintain, advertise and market the accused Facebook website from its Palo Alto, California headquarters. *Id.*

## III. ANALYSIS

A court may transfer the venue of any civil action for the convenience of parties and witnesses, or in the interests of justice, to any other district where it might have been brought. 28 U.S.C. § 1404(a); *Saint-Gobain Calmar, Inc. v. National Products Corp.*, 230 F.Supp.2d 655, 658 (E.D. Pa. 2002). The purpose of allowing transfers under § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* (citing *Dinterman v. Nationwide Mut. Ins. Co.*, 26 F.Supp.2d 747, 749 (E.D. Pa. 1998) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). In deciding a motion to transfer, the court must first determine whether the alternative forum is a proper venue and then whether the balance of convenience clearly weighs in favor of a transfer. *Id.* Here, both jurisdiction and venue are proper in the Northern District of California, as that is where Facebook both resides and is headquartered. 28 U.S.C. §§ 1391 and

1400. Thus, the analysis centers around whether the balance of convenience clearly weighs in favor of a transfer.

### A. The Balance Of Convenience Clearly Weighs In Favor Of Transfer

In considering a motion to transfer, courts should seek to protect the interests set forth in 28 U.S.C. § 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests to justice. *Saint-Gobain*, 230 F.Supp.2d at 658 (E.D. Pa 2002). For patent cases, the Eastern District of Pennsylvania relies principally on the "center of gravity test" to determine whether the interests enumerated by 1404(a) would be furthered by a transfer. The Eastern District of Pennsylvania also considers the following public and private interest factors in deciding the propriety of a transfer under section 1404(a):[1]

> (1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses and cost of obtaining attendance of willing witnesses; (4) possibility of view of the premises, if appropriate; (5) all other practical problems that make trial of a case easy, expeditious and inexpensive; and (6) factors of public interest, including the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

*Saint-Gobain Calmar*, 230 F.Supp.2d at 659 (citing *Renzetti, Inc. v. D.H. Thompson, Inc.*, 1997 230806, at *3 (E.D. Pa. 1997)).[2] As set forth below, the balance of convenience in this case clearly weighs in favor of a transfer to the Northern District of California.

#### 1. The Center Of Gravity Of The Present Action Is In The Northern District Of California.

"[T]he Eastern District of Pennsylvania has recognized that in patent infringement cases, the preferred forum is that which is the 'center of gravity' of the alleged wrongful activity." *EVCO Technology and Development Co., LLC v. Precision Shooting Equipment, Inc.*,

---

[1] Defendant is aware that this Court has previously issued orders on motions to transfer pursuant to 28 U.S.C. § 1404(a). While those decisions address the same types of public and private interest factors as the cases cited in this memorandum, only one such published decision involved a patent litigation. *See Prevent, Inc. v. WNCK, Inc.*, 1994 WL 13826 (E.D. Pa. 1994) (Padova, J.). That decision was issued eight years before this district's adoption of the "center of gravity" test in a patent litigations and is factually distinguishable. As explained in the text, the currently prevailing analysis in the Eastern District of Pennsylvania, which includes the "center of gravity" test, supports the transfer of this action to the Northern District of California.

[2] Factor four, "possibility of view of the premises," is not relevant to this case and, therefore, is not analyzed.

379 F.Supp2d 728, 729, n. 8 (citing *Saint-Gobain*, 230 F.Supp.2d at 660); *see also Renzetti*, 1997 WL 230806, at *3. The "center of gravity" is the jurisdiction that is "as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Saint-Gobain*, 230 F.Supp.2d at 660; *Renzetti*, 1997 WL 230806, at *3. In locating the center of gravity, courts should also consider "the location of a product's development, testing, research, production, and the place where the marketing and sales decisions were made, rather than where limited sales activity has occurred." *Saint-Gobain*, 230 F.Supp.2d at 660.

In the present case, it cannot be disputed that the center of gravity of the accused activity is in the Northern District of California. Facebook headquarters are located in Palo Alto, California, in the Northern District of California. *See* Gadre Decl. at ¶ 2. The vast majority of Facebook's approximately 350 employees are located in Palo Alto. *Id.* at ¶ 3. The "hub of activity" for development, testing, research and production of Facebook's accused website all takes place at its headquarters in Palo Alto. *Id.* Marketing and sales decisions are also made at the Palo Alto headquarters. *Id.*

By contrast, Facebook's activities in the Eastern District of Pennsylvania are very limited. Because of its presence on the Internet, the Facebook website is accessible to those who reside in Eastern District of Pennsylvania. Facebook, however, has more than 40 million active users with more than 200,000 new registrations per day, on average, since January 2007. *See* Gadre Decl. at ¶ 2. Facebook, therefore, has no greater connection to the Eastern District of Pennsylvania than it does to any other federal district or state. *See Saint-Gobain*, 230 F.Supp.2d at 660 (finding sale of accused products in forum unpersuasive when the "District is one of many fora in which the claim can arise because [defendant's] products are sold nationally").

Facebook's only other contact with this jurisdiction is by virtue of a contract it entered into with Comcast Corporation, which has its principal place of business in Philadelphia. *See* Gadre Decl. at ¶ 5. That agreement, however, concerns activities nationwide and has no particular relevance to the Eastern District of Pennsylvania. *Id.*

Facebook's activities in this jurisdiction pale in comparison to those that take place in the Northern District of California where virtually all activity related to the operation, maintenance, development, sales and marketing of the accused website takes place. Accordingly, for the convenience of the parties, this case should be transferred to the preferred venue under the center of gravity test – the Northern District of California.

2. Plaintiff's choice of forum should be given little weight.

While a plaintiff's choice of forum is normally entitled to a certain amount of deference, when the central facts of a lawsuit occur outside the forum state, plaintiff's choice will carry little weight. *Saint-Gobain*, 230 F.Supp.2d at 660 (citing *Renzetti*, 1997 WL 230806, at *3). This is particularly true in a patent litigation where the "center of gravity" test provides the preferred venue, as explained above.

Plaintiff XACP has no particular connection with the Eastern District of Pennsylvania, other than having one of its offices located in Radnor, Pennsylvania. Plaintiff XACP is a venture capital firm with offices in Ireland, Scotland and Radnor. XACP's Radnor presence consists of a small suite that it shares with Northern California-based Silicon Valley Bank. XACP's is in the business of investing in other companies, which are located all over the United States and the world (including in California). *Id.* Because XACP routinely does business all over the United States, and has significant financial resources, it would not be burdensome on XACP to bring suit in the Northern District of California.

Accordingly, because the "center of gravity" of the accused activity in this case is in the Northern District of California, and because the Plaintiff appears to be an international concern with little real connection to this jurisdiction, no deference should be accorded to plaintiff's choice of forum.

3. Relative ease of access to sources of proof weighs heavily in favor if transfer

No sources of proof necessary to litigate the claims and defenses in the present case are located in the Eastern District of Pennsylvania. The vast majority of these materials, as well as most of the likely witnesses, are located in the Northern District of California.

In order to analyze "the relative ease of access to sources of proof," the court must:

> scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.

*Saint-Gobain*, 230 F.Supp.2d at 661 (citing *Ricoh Co.*, 817 F.Supp. at 483). Plaintiff's sole cause of action is for patent infringement. In order to prove infringement, Plaintiff must prove that the accused Facebook website falls within the scope of the asserted patent by proving that "every element of at least one claim of the patent at issue, properly construed, is literally found within the accused device." *Synergetics, Inc. v. Peregrine Surgical, Ltd.*, 427 F.Supp.2d 537, 548 (E.D. Pa 2006) (citing *WMS Gaming, Inc. v. International Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999)). Plaintiff must also prove that the allegedly infringing device was made, used, sold, offered for sale or imported into the United States. 35 U.S.C. § 271(a)

The sources of proof for determining whether the accused Facebook website falls within the scope of the asserted patent are the website itself, documents related to the website and witnesses with knowledge of the website's attributes. *See* Gadre Decl. at ¶¶ 3-4. All documentation concerning the attributes of the accused website are located at Facebook headquarters in Palo Alto, as are the Facebook employees involved in the operation, research and development of the accused website. *Id.* Sources of proof concerning the making, using, selling and offering for sale of the Facebook website, such as documents concerning advertising, marketing and financials, are also housed at Facebook headquarters in the Northern District of California. *Id.* No witnesses or documents related to the issue of infringement are located in the Eastern District of Pennsylvania.

Plaintiff has also alleged inducement of infringement, aiding and abetting infringement and willful infringement. Proof of inducement and aiding and abetting infringement requires documentation and testimony of witnesses demonstrating that Facebook took action to encourage others to infringe the asserted patent. Proof of willfulness requires a showing of knowledge of the asserted patent coupled with willful, continued infringement. Decision makers for Facebook, likely witnesses to prove or disprove these allegations, are similarly located at Facebook headquarters in the Northern District of California. *See* Gadre Decl. at ¶ 3.

Defendants' principal defenses, and counterclaims, are non-infringement and invalidity of the asserted patent. The sources of proof for demonstrating non-infringement are the same as those mentioned above for proving infringement. Necessary sources of proof for demonstrating invalidity are documentation of prior art and, potentially, the testimony of the inventors and patent prosecutors involved in procuring the asserted patent. Prior art could be located anywhere, so it does not factor in the analysis. Neither the named inventors, nor the prosecuting attorneys are located in the Eastern District of Pennsylvania. Accordingly, the location of sources of proof for Facebook's defense and counterclaim of non-infringement weighs in favor of transfer, while sources of proof for demonstrating invalidity should play no part in the determination of this transfer motion since they are not located in either the present or alternate venue.

Finally, the plaintiff in this case, XACP, has no relevant information that would serve as a source of proof for any of the issues present in this litigation. XACP did not develop the alleged invention of the asserted patent. It does not appear the XACP was involved in the application for the asserted patent. Nor does it appear that XACP practices the alleged invention of the asserted patent. Rather, XACP is simply a venture capital firm that filed its assignment for the asserted patent just weeks before filing this lawsuit.

Accordingly, the convenience of access to sources of proof and witnesses weighs in favor of transfer to the Northern District of California.

### 4. Availability of compulsory process for attendance of unwilling witnesses and cost of obtaining attendance of willing witnesses

The majority of the witnesses that would likely testify at trial are located in the Northern District of California. The cost of obtaining the attendance of these witnesses would be exponentially higher if the case remains in the Eastern District of Pennsylvania. Those witnesses would incur the cost of travel from California to Pennsylvania, as wells as incidental and accommodation expenses. All of these costs would be avoided through a transfer.

There is no indication that any potential third party witnesses, including the named inventors and prosecuting attorneys, reside in the Eastern District of Pennsylvania. Accordingly, compulsory process for attendance of these witnesses, should they be unwilling to testify, would not be available in this district.

### 5. Transfer would alleviate other practical problems that would prevent the easy, expeditious and inexpensive trial of this case

As all of the above discussions indicate, transfer would promote the easy, expeditious and inexpensive trial of this case as that is where all of the documents and witnesses reside.

### 6. Factors of public interest weigh in favor of transfer

The Third Circuit Court of Appeals has stated that, in evaluating public interest factors, courts should consider the "locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Saint-Gobain*, 230 F.Supp.2d at 662 (citing *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 640 (3d Cir. 1989). As set forth in Section III(A)(1) above, the "locus of the alleged culpable conduct" is the Northern District of California. There is no real connection between the allegedly culpable conduct with the Eastern District of Pennsylvania, other than the mere fact that Facebook's website can be accessed from this jurisdiction – as is the case in every jurisdiction in the United States. *See Saint-Gobain*, 230 F.Supp.2d at 662 (finding that, because accused products were sold

nationally, sales in Pennsylvania were not the locus of the alleged infringement and did not weigh in favor of Pennsylvania as the proper venue under § 1404(a)).

Thus, it is the Northern District of California that has the greatest interest in deciding this controversy.

## IV. CONCLUSION

For the foregoing reasons, Defendant Facebook respectfully requests that this Court transfer this matter to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated: September 12, 2007

By: s/Charles J. Bloom        CJB322
Charles J. Bloom
STEVENS & LEE, P.C.
620 Freedom Business Center
Suite 200
King of Prussia, PA 19406

Heidi L. Keefe (*pro hac vice pending*)
Mark R. Weinstein (*pro hac vice pending*)
Sam C. O'Rourke (*pro hac vice pending*)
WHITE & CASE LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA  94306