## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CROSS ATLANTIC CAPITAL<br>PARTNERS, INC. | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.: 07-CV-02768 |
| | : | |
| vs. | : | |
| | : | |
| FACEBOOK, INC. and THE FACEBOOK,<br>LLC | : | |
| Defendants. | : | |

### ORDER

AND NOW this _____ day of _____, 2007, upon consideration of

defendants' motion to transfer venue to the Northern District of California pursuant to 28 U.S.C.

§ 1404(a) ("defendants' motion"), and the opposition thereto filed by plaintiff, it is hereby

### O R D E R E D

that defendants' motion is **DENIED**.

**BY THE COURT:**

_____

**HON. JOHN R. PADOVA**
U.S. District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC. | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.: 07-CV-02768 |
| | : | |
| vs. | : | HON. JOHN R. PADOVA |
| | : | |
| FACEBOOK, INC. and THE FACEBOOK, LLC | : | |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE**

COMES NOW, the plaintiff, Cross Atlantic Capital Partners, Inc., by and through its

undersigned counsel, and hereby requests this Court to deny the motion to transfer venue to the

Northern District of California pursuant to 28 U.S.C. § 1404(a) filed by defendants, Face Book,

Inc. and Thefacebook, LLC.

The grounds for this response are set forth in the accompanying brief, which is

incorporated by reference as if fully set forth herein.  In support of this response, plaintiff submits

the declaration of Glenn T. Rieger, the averments of which are incorporated by reference as if

fully set forth herein.

WHEREFORE, plaintiff respectfully requests that this Court deny defendants' motion.

Respectfully submitted,


  /s/ Frederick A. Tecce
Thomas J. Duffy, Esquire (PA ID # 34729)
Patrick J. Kennan, Esquire (PA ID # 53775)
**Duffy & Keenan**
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, Pennsylvania 19106
(215) 238-8700
(215) 238-8710 (Fax)
pjk@duffykeenan.com

and

Frederick A. Tecce, Esquire
**MᴄSʜᴇᴀ\Tᴇᴄᴄᴇ, P.C.**
The Bell Atlantic Tower - 28th Floor
1717 Arch Street
Philadelphia, Pennsylvania 19103
(215) 599-0800
(215) 599-0888 (Fax)
ftecce@mcshea-tecce.com

Counsel for plaintiff,
Cross Atlantic Capital Partners, Inc.

Dated: September 24, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC. | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.: 07-CV-02768-JP |
| | : | |
| vs. | : | HON. JOHN R. PADOVA |
| | : | |
| FACEBOOK, INC. and THE FACEBOOK, LLC | : | |
| Defendants. | : | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER VENUE**

Thomas J. Duffy, Esquire
Patrick J. Kennan, Esquire
**Duffy & Keenan**
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, Pennsylvania 19106
(215) 238-8700
(215) 238-8710 (Fax)
pjk@duffykeenan.com

and

Frederick A. Tecce, Esquire
MCSHEA\TECCE, P.C.
The Bell Atlantic Tower - 28th Floor
1717 Arch Street
Philadelphia, Pennsylvania 19103
(215) 599-0800
(215) 599-0888 (Fax)
ftecce@mcshea-tecce.com

Counsel for plaintiff,
Cross Atlantic Capital Partners, Inc.

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Legal Standards And Facebook's Burden Of Proof . . . . . . . . . . . . . . . . 4

      B.    Facebook Fails To Meet Its Requisite Evidentiary Burden To Prove That
            The Balance Of The Conveniences "Strongly Favors" Transfer Of Venue . . . . . . 8

            1.    Facebook's Unsworn Declaration Fails To Provide Key Witness
                  Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.    Facebook Did Not Assert That Any Key Non-Employee Witnesses
                  Are Unavailable For A Trial In This Forum Or That Their
                  Videotaped Depositions Could Not Be Taken . . . . . . . . . . . . . . . . . . 11

            3.    Facebook Did Not Assert That It Would Be Unable To Produce
                  Its Documents In This Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            4.    Facebook Did Not Assert That It Is Financially Unable To Defend
                  This Case In This Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            5.    Facebook Fails to Prove that  XACP's Choice Of Forum In Its
                  Home Judicial District Should Be Disturbed . . . . . . . . . . . . . . . . . . 16

            6.    Facebook Puts A Misplaced Emphasis On A "Center of Gravity"
                  Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            7.    Facebook Fails To Prove That The Balance Of The Public Interest
                  Factors Compel A Transfer Of Venue . . . . . . . . . . . . . . . . . . . . . . . 22

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## I.    **INTRODUCTION**

Defendants, Facebook, Inc. and Thefacebook, LLC (together "Facebook"), fail to meet their heavy evidentiary burden to show that the balance of the conveniences "strongly favors" transfer of this case to the Northern District of California.

This judicial district is the home forum of plaintiff, Cross Atlantic Capital Partners, Inc. ("XACP")—an active Radnor, Pennsylvania-based company. The majority of XACP's employees, key XACP witnesses, and all XACP documents related to this case are located in this judicial district. This judicial district is also the forum where numerous acts of patent infringement described in XACP's Complaint occur on a daily basis.

In support of its transfer request, Facebook merely alleges that its corporate headquarters, documents, "decision makers," and employees involved in the operation of its website are located in Palo Alto, California. Even if these allegations are true, they fall far short of providing the Court with an evidentiary basis to disturb a forum-resident's choice of forum under the applicable law.

Facebook does not identify by affidavit or verified statement, or even bare allegation, which specific witnesses it intends to call, where they specifically reside, to what they would testify, whether they are subject to this Court's compulsory process, or the cost of obtaining their testimony in this judicial district. Facebook also does not allege that its documents could not be produced in this judicial district

Facebook fails to establish that the Northern District of California would be a <u>more convenient</u> forum. Transfer of venue is not appropriate when, as here, it would merely serve to shift the conveniences or inconveniences from one forum to another. Accordingly, Facebook's request to transfer venue must be denied.

## II.    BACKGROUND

### A.    Procedural History

This case was commenced on July 3, 2007 when XACP filed its complaint for patent

infringement.  (A true and correct copy of XACP's complaint (D.E. # 1) is attached hereto as

Exhibit A).  The complaint alleges that Facebook infringes the claims of United States Patent No.

6,519,629 B2 ("'629 Patent"), entitled System for Creating a Community for Users with

Common Interests to Interact In.  Cmpl., Count I ¶¶ 22-30.  (A true and correct copy of the '629

Patent is attached as Exhibit A to the Cmpl.)

On July 20, 2007, the summons and complaint were served on Facebook.  (D.E. # 6.)  On

August 15, 2007, this Court approved the parties' stipulation extending the time for Facebook to

answer or otherwise plead until September 4, 2007.  (D.E. # 14.)  On August 23, 2007, this Court

scheduled at preliminary pre-trial conference for September 26, 2007 at 1:30 p.m.  (D.E. # 15.)

On September 4, 2007, Facebook answered and counterclaimed seeking a declaration of

non-infringement and invalidity regarding the '629 Patent.  (D.E. # 16.)[1]  On September 10,

2007, Facebook filed the instant motion to transfer venue.  (D.E. # 23).  Pursuant to this Court's

Local Rule 7.1(c), XACP's response in opposition to the instant motion is due on or before

October 1, 2007.[2]

---

[1]    By filing an answer without moving to dismiss for improper venue, Facebook has
admitted that venue is proper in this judicial district. FED. R. CIV. P. 12(b).

[2]    At the request of the Court, XACP has filed its response in opposition so as to
allow the Court to address these issues at or before the September 26, 2007 pre-trial conference.

### B.    Facts

In 1999, a company was formed called iKimbo, Inc. ("iKimbo") to develop and commercialize the novel and ground-breaking technology conceived in large part by Jamie Harvey ("Harvey").  *See* Glenn T. Rieger's ("Rieger") declaration ¶ 7.  (Rieger's declaration ("Rieger Decl.") is attached hereto as Exhibit B, and its averments are incorporated by reference as if fully set forth in this brief.)  This technology includes, *inter alia*, systems and methods for creating an on-line community for users with common interests.  *Id.*

As with most start-up companies, iKimbo needed capital.  XACP managed two funds known as "Cross Atlantic Technology Fund" ("XATF") and "The Co-Investment 2000 Fund" ("CI2K").  *Id.* ¶¶ 8-9.  iKimbo sought capital from those funds to finance its efforts to develop, market and commercialize Harvey's novel inventions.  *Id.* ¶ 9.  Beginning in or about 2000, XACP, through the two funds it managed, became an active and significant investor in iKimbo and its efforts to commercialize aspects of the technology disclosed and claimed in the '629 Patent.  *Id.* ¶ 10.  Through XATF and C12K, XACP also made a series of secured loans to iKimbo.  *Id.* ¶ 11.  In addition, other organizations, including then Philadelphia-based PECO (Exelon) also invested in iKimbo during that time.  *Id.* ¶ 12.

After XACP invested in iKimbo, XACP played an integral role in iKimbo's daily operations.  *Id.* ¶ 13.  Rieger, then an XACP General Partner, was on iKimbo's board of directors.  *Id.* ¶¶ 3, 14.  He also served on various committees at iKimbo, including the compensation committee and the audit committee.  *Id.* ¶ 14.  Eventually, Rieger was named Chairman of iKimbo's Board of Directors.  *Id.*  Various other XACP employees and partners were also involved in iKimbo's operations, including its efforts to commercialize aspects of the

3

technology disclosed and claimed in the '629 Patent. *Id.* ¶ 15. Other XACP partners were

involved in iKimbo's operations and iKimbo's business was addressed at weekly partners'

meetings in XACP's Radnor, Pennsylvania office ("Radnor Office"). *Id.* ¶¶ 15-16. Other XACP

non-equity personnel (virtually all of whom are still at XACP's Radnor Office) were also

involved in iKimbo's operations. *Id.* ¶ 15.

In 2004, XATF and C12K were assigned iKimbo's rights in the '629 Patent, as well as

other assets, when iKimbo failed to repay certain secured loans. *Id.* ¶ 18. XATF and C12K

subsequently assigned those right to XACP. *Id.* At this time, any existing documents of iKimbo

are located at XACP's Radnor Office. *Id.* ¶ 19. Any existing documents of XACP regarding its

involvement in iKimbo and iKimbo's efforts to commercialize aspects of the technology

disclosed and claimed in the '629 Patent are also located at XACP's Radnor Office. *Id.* ¶ 20.

Witnesses having knowledge regarding these facts, and those set forth in the complaint are also

located at XACP's Radnor Office. *Id.*

## III. ARGUMENT

### A. Legal Standards And Facebook's Burden Of Proof

The change of venue statute provides in pertinent part:

> For the convenience of parties and witnesses, in the interest of justice, a district
> court may transfer any civil action to any other district or division where it might
> have been brought.

28 U.S.C. § 1404(a).[3]

The purpose of the transfer section is to prevent waste of "time, money, and energy" and

---

[3]    The Northern District of California is a judicial district where this case might have
been brought.

4

to "protect litigants, witnesses and the public against any unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)), *quoted in, Measurement Specialties, Inc. v. Stayhealthy.com*, 275 F. Supp. 2d 638, 640 (E.D. Pa. 2003) (transfer denied). "Although a district court has discretion under § 1404, a motion to transfer is not to be liberally granted." *Id.* (citations omitted); *accord Prevent, Inc. v. WNCK, Inc.*, No. 93-CV-4516, 1994 WL 13826, *1 (E.D. Pa. Jan. 18, 1994) (Padova, J.) (transfer denied).

"The burden of establishing the propriety of transfer rests with the movant." *CAT Internet Servs., Inc. v. Magazines.com Inc.*, No. 00-CV2135, 2001 WL 8858, *8 (E.D. Pa. Jan. 4, 2001) (Padova, J.) (transfer denied) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

A plaintiff's choice of forum is a "paramount consideration" that should not be lightly disturbed, especially when the plaintiff is a forum resident, such as XACP is here. *Jumara*, 55 F.3d at 879; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910 (1971); *CAT Internet*, 2001 WL 8858, at *8; *Stone Street Servs., Inc. v. Breaux*, No. 00-CV-1904, 2000 WL 876886, *4 (E.D. Pa. Jun. 19, 2000) (Padova, J.) (transfer denied); *Lepage's, Inc. v. 3M*, No.97-CV-3983, 1997 WL 587355, *2 (E.D. Pa. Sept. 10, 1997) (Padova, J.) (transfer denied). The "plaintiff's choice [of forum] should prevail, unless the balance of convenience of the parties is strongly in favor of the defendant." *CAT Internet*, 2001 WL 8858, at *8 (emphasis added) (quoting *Shutte*, 431 F.2d at 25); *accord Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947).

5

Therefore, a "defendant must meet a fairly heavy burden with respect to forum." *Id.* A defendant " may meet this burden through extrinsic documents including affidavits, depositions, and stipulations." *Royal Ins. Co. v. Packaging Coordinators, Inc.*, No. 00-CV-3231, 2000 WL 1456737, *1 (E.D. Pa. Sept. 29, 2000) (transfer denied because defendant "failed to produce any evidence supporting the necessity for transfer"), *vacated on recon. on other grounds*, 2000 WL 1586081 (E.D. Pa. Oct. 2004); *accord Deere & Co. v. Reinhold*, No. 99-CV-6313, 2000 WL 486607, *4 (E.D. Pa. Apr. 24, 2000) (Padova, J.) (transfer denied because party seeking transfer "must submit adequate information to facilitate the court's analysis").

In deciding a motion to transfer, a court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 878. In doing so, a court must balance a variety of "private and public interests protected by the language of § 1404(a)." *Id.* The private interests include:

> (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, "but only to the extent that the witnesses may only be unavailable for trial in one of the fora"; and (6) the location of books and records "to the extent that the files could not be produced in the alternative forum."

*Morris Black & Sons v. Zitone Const. and Supply Co., Inc.*, No. 04-2608, 2004 WL 2223310, *2 (E.D. Pa. Oct. 1, 2004) (transfer denied) (quoting *Jumara*, 55 F.3d at 879 (citations omitted)). The public interests include:

6

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citing *Jumara*, 55 F.3d at 879-80 (citations omitted).

The burden is on the movant "to make an evidentiary showing" regarding the private and public interest factors. *Pro Sprice, Inc. v. Omni Trade Gr., Inc.*, 173 F. Supp. 2d 336, 340-41 (E.D. Pa. 2001) (citing *Jumara*, 55 F.3d at 879 and *Simon v. Ward*, 80 F. Supp. 2d 464, 470 (E.D. Pa. 2000)).

If the transfer would merely "shift the inconvenience" from the defendant to the plaintiff (the scenario that Facebook presents in its motion), the transfer will not be allowed. *See Residex Corp. v. Farrow*, 374 F. Supp. 715, 722 (E.D. Pa. 1974), *aff'd*, 556 F.2d 567 (3d Cir. 1977); *accord Deere*, 2000 WL 486607, at *5 (allegations that defendant resided in Michigan, both of plaintiff's witnesses resided in Iowa, and that any conversion occurred in Michigan was insufficient to justify transfer); *Lucent Techs., Inc.v. Aspect Telecomms. Corp.*, No. 97-CV-1618, 1997 WL 476356, *4 (E.D. Pa. Aug. 20, 1997) (transfer to Northern District of California denied in a patent infringement action because the "purpose of § 1404 is to provide a more convenient forum, not a forum which is equally convenient or inconvenient to both parties" and "transfer is not designed to switch the economic burden of an inconvenient forum from the defendant to the plaintiff") (citations omitted); *Rosen v. Fidelity Fixed Income Trust*, No. 95-CV-2365, 1995 WL 560037, *3 (E.D. Pa. Sept. 20, 1995) (Padova, J.) (transfer denied because "[e]ven if a Massachusetts venue would be more convenient for the Fidelity Defendants and their employees, it is certainly not more convenient for Plaintiff, a Pennsylvania resident").

7

Facebook has not met its burden to prove that a transfer of venue is warranted pursuant to these established venue transfer principles.

**B.    Facebook Fails To Meet Its Requisite Evidentiary Burden To Prove That The Balance Of The Conveniences "Strongly Favors" Transfer Of Venue**

Facebook has fallen woefully short of its burden to prove that the balance of conveniences "strongly favors" transfer of this case to the Northern District of California for numerous reasons.

**1.    Facebook's Unsworn Declaration Fails To Provide Key Witness Information**

The only "evidence" Facebook offers in support of its motion is a declaration of its Vice President and General Counsel, Aniruddha Gadre ("Gadre"). Gadre's declaration, however, must be disregarded.[4]

Even if Gadre's declaration is considered, it is of little value to Facebook's motion. Facebook fails to provide any key witness information in its motion or *via* Gadre's declaration in disregard of the transfer of venue requirements established by the United States Court of Appeals for the Third Circuit ("Third Circuit"). Facebook merely argues that the "majority of the witnesses that would likely testify at a trial are located in the Northern District of California."

---

[4]    Gadre's declaration is not in compliance with the statutory requirements for unsworn declarations. *See* 28 U.S.C. § 1746. The contents of Gadre's declaration are not declared to be "true under penalty of perjury" as mandated by § 1746. *See, e.g., In re Ross*, No. 97-CV-19956, 1998 WL 643095, *2 (Bankr. E.D. Pa. Sept. 11, 1998) (unsworn certificate that was not made under penalty of perjury was not "considered as part of the record" on a summary judgment motion); *Chase v. Annett*, No. 86-CV-0764, 1986 WL 11714, *4 (E.D. Pa. Oct. 17, 1986) (unsworn statement of defendant was defective since "28 U.S.C. § 1746 requires an unsworn declaration in lieu of an affidavit be made under penalty of perjury"); *see also Matter of Muscatell*, 106 B.R. 307, 309 (Bankr. M.D. Fla. 1989) (although trustee's statments were made under the penalty of perjury, they were not declared "to be true and correct" and were disregarded).

Facebook's Brief at 8 (emphasis added). Facebook, however, fails to identify even a single witness (or likely witness) for trial in its motion or the Gadre declaration. In the absence of this vital information, Facebook fails to meet the Third Circuit's venue transfer requirements.

> Specifically, the Third Circuit requires that parties seeking transfer must:
>
> clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must be on this showing rather than on numbers. One key witness may outweigh a great number of less important witnesses. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied.

*Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 160 (3d Cir. 1980) (citing C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 at 270-71 (1976)), *rev'd on other other grounds*, 454 U.S. 235 (1981)); *see, e.g., Olympia Steel Bldg. Sys. Corp. v. General Steel Domestic Sales, LLC*, No. 06-CV-1597, 2007 WL 1816281, *7 (W.D. Pa. Jun. 22, 2007) (transfer denied because to the extent defendants "speak of third party witnesses, they have not identified who these individuals are, how their testimony is relevant, and whether these individuals would in fact be unwilling to testify") (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir.1973) (compelling the district court to vacate a venue transfer order because defendants failed to provide any evidentiary support for the transfer, including "affidavits showing the materiality of the matter" to which witnesses would testify)); *Szabo v. CSX Transp., Inc.*, No. 05-CV-4390, 2006 WL 263625, *2 (E.D. Pa. Feb. 1, 2006) (transfer denied where court held: "When arguing for transfer on the basis of witness availability at trial and witness convenience, movant has the responsibility to specify clearly the key witnesses to be called[,]" and defendants' identification of only one key witness who lived in the transferee forum was not

sufficient to establish a "clear case of convenience.") (internal quotation marks and citation

omitted); *Lucent*, 1997 WL 476356, at \*6 (transfer denied where defendant listed thirty-six trial

witnesses by name and category that would testify as to invalidity and infringement issues

because it failed "to meet its heightened burden under § 1404 by not identifying with particularity

the unavailability and materiality of specific witnesses"); *Ford v. New Jersey Transit Rail*

*Operations, Inc.*, No. 96-CV-7501, 1997 WL 255488, \*2 (E.D. Pa. May 8, 1987) (Padova, J.)

(transfer denied where defendant did not indicate which witnesses were expected to testify and

whether there were any unwilling witness, so there may be no need for compulsory process);

*Darpoh v. New Jersey Transit Rail Ops., Inc.*, No. 92-6976, 1993 WL 160114, \*2 (E.D. Pa. May

17, 1993) (Padova, J.) (transfer denied where key witnesses evidence was lacking); *Gaines v.*

*National R.R. Passenger Corp.*, No. 92-6812, 1993 WL 89163, \*2 (E.D. Pa. Mar. 24, 1993)

(Padova, J) (same); *cf. Saint-Gobain Calmar, Inc. v. National Prods. Corp.*, 230 F. Supp. 2d 655,

659 (E.D. Pa. 2002) (cited numerous times in Facebook's Brief) ("NPC has provided a factually

specific affidavit that lists key employee witnesses and third party witnesses.")

    In *Darpoh*, this Court explained why key witness evidence supporting transfer of venue is

necessary:

> Defendant argues that this case should be transferred to the District of New Jersey
> because the "overwhelming contacts with New Jersey regarding plaintiff's
> residence, accident occurrence, witness location and medical treatment warrant
> such a transfer." . . . <u>As required of the moving party in support of a motion to
> transfer, however, defendant does not identify by affidavit or verified statement,
> or even by bare allegation, which witnesses it intends to call, where they
> specifically reside, to what they would testify, whether they are willing to testify
> here, whether they are subject to this Court's power of compulsory process, or the
> cost of obtaining their testimony in Pennsylvania . . . Nor does defendant offer
> affidavits, or, again, even bare allegations, regarding the sources of proof it
> requires or its access to those sources if the case proceeds in Pennsylvania versus</u>

10

<u>New Jersey</u>.  Defendant simply relies upon the notion that New Jersey is the better choice because of its "contacts" with the parties, the witnesses, and the accident. Though a state's "contacts" to a dispute may be relevant in determining which state's law applies to a case, for example, they are not relevant here; the issue is convenience, to the parties and the witnesses, and defendant has not shown that the balance of conveniences weights strongly in its favor.

1993 WL 89163, at *2 (emphasis added) (citing, *inter alia, Reyno,* 630 F.3d at 160-61).

Facebook failure to provide key witness (or any witness) information compels a denial of

its motion to transfer venue on this basis alone.

**2.      Facebook Did Not Assert That Any Key
Non-Employee Witnesses Are Unavailable
For A Trial In This Forum Or That Their
Videotaped Depositions Could Not Be Taken**

Facebook alleges that of its approximately 350 employees, 95% reside in California, and

its "decision makers" and employees involved in the "operations, research and development of

its website" are located in its Palo Alto headquarters.  Gadre Decl. ¶ 3.  This information, even if

true, does not impact a balance of conveniences analysis.  The law is clear that the convenience

of employees of a party seeking transfer of venue "carr[ies] no weight because the parties are

obligated to procure their attendance at trial."  *Lomanno v. Black,* 285 F. Supp.2d 637, 646 (E.D.

Pa. 2003) (citations omitted); *accord Hillard v. Guidant Corp.,* 76 F. Supp. 2d 566, 570 (M.D.

Pa. 1999) ("The law on the transfer of cases distinguishes between party and non-party witnesses.

The party witnesses are presumed to be willing to testify in either forum despite any

inconvenience.  The convenience of non-party witnesses is the main focus.") (citing *Jumara,* 55

F.3d at 879)); *Lucent,* 1997 WL 476356, at *4 ("courts assume that a party's employees will

appear as witnesses voluntarily"); *Ford,* 1997 WL 255488, at *2 (defendant could compel

employee witnesses to testify in any forum).

11

Therefore, whether Facebook's as yet unidentified employee witnesses will be inconvenienced by appearing in this judicial district to testify at trial, is of no significance to a convenience of the witness factor analysis.

Although Facebook did not specify any key non-party witness for trial in its motion or in Gadre's declaration, it makes a cursory reference to unidentified inventors and patent prosecutors in its Brief as follows: "Necessary sources of proof for demonstrating invalidity are documentation of prior art and, potentially the testimony of the inventors and patent prosecutors involved in procuring the asserted patent." Facebook's Brief at 7.

Facebook further argues that because none of these inventors and patent prosecutors are located in this forum or in the proposed alternative forum the "sources of proof for determining invalidity should play no part in the determination of this transfer motion . . . .". *Id.* By making this argument, Facebook, in effect, concedes that the convenience of any non-party witness it may call at trial should be not considered in weighing the convenience of the witnesses factor. Consequently, there is no convenience of the witnesses factor that can weigh in favor of transfer of venue.[5]

In any event, Facebook did not assert that any of its as yet unidentified witnesses for trial would be unwilling or unable to testify in this forum for any reason. In the absence of such an assertion, Facebook is not entitled to any deference on the issue of the convenience or

---

[5]    The inventors of the patent-in-suit and the patent prosecutors all are located on the East Coast in the metropolitan Washington, D.C. area, and would not be subject to the compulsory power of the Norther District of California court. A trial in this judicial district would presumably be more convenient for these non-party witnesses than a trial in the Northern District of California. Regardless of whether this case is in California or Pennsylvania, these individuals can be presented by videotape or designation.

12

inconvenience of its witnesses. *See Pennsylvania Mach. Works, Inc. v. North Coast Remfg. Corp.*, No. 04-CV-1731, 2004 WL 2600117, *6 (E.D. Pa. Nov. 16, 2004) (transfer denied in a case where defendant failed to cite evidence showing that the witnesses would refuse to testify in their neighboring state, and failed to explain why it could not effectively present these witnesses *via* videotape); *Morris Black & Sons*, 2004 WL 2223310, at *3 (transfer denied in case where there was "no evidence that Defendant's non-party witnesses will be unwilling to testify outside" of the proposed alternate forum); *Ford*, 1997 WL 255488, at *2 (transfer denied in case where defendant did not identify any witnesses expected to testify at trial or aver that any of them would be unavailable for trial); *Richards v. Consolidated Rail Corp.*, No. 94-CV-3942, 1994 WL 586009, *2 (E.D. Pa. Oct. 18, 1994) (Padova, J.) (transfer denied in a case where defendant identified a number of witnesses and specified their addresses, but did not assert that they were expected to testify or were in fact unwilling to testify in this judicial district, and did not "specif[y] the subject matter of their testimony, nor the cost of obtaining their testimony in this district").

Furthermore, "[g]iven the current technological advances in the federal court system, any information the unavailable non-party witnesses can provide which is not cumulative of the testimony of [defendant's] employees can easily be presented at trial through deposition or videotape testimony without any significant imposition on [defendant's] trial defense." *Lucent*, 1997 WL 476356, at *6. Facebook made no assertion as to why non-party witness testimony could not be presented at trial through deposition or videotape testimony,

Therefore, in this case, the convenience of the witnesses factor does not weigh in favor of transfer of venue.

13

### 3.    Facebook Did Not Assert That It Would Be Unable To Produce Its Documents In This Forum

Facebook did not assert that its documents are so voluminous that shipping them to this forum (if even necessary) would cause it an undue burden. *See Dermamed, Inc. v. Spa De Soleil, Inc.*, 152 F. Supp. 2d 780, 784 (E.D. Pa. 2001); *Morris Black & Sons*, 2004 WL 2223310, at *3 (transfer denied in a case where the defendant, *inter alia*, did not suggest that its relevant documents and files could not be produced in this forum).

Even so, this Court has held that "technological advancements in document imaging, management, and retrieval make it unlikely that one party will be severely inconvenienced by having the opposition's key documents located in another forum." *Id.* at *7; *accord Hodgson v. Kottke Assocs.*, LLC, No. 06-CV-5040, 2007 WL 2234525, *4 (E.D. Pa. Aug. 1, 2007) ("in light of modern document imaging technology, the location of books and records relevant to this matter is of limited significance").

Therefore, in this case, he location of documents factor does not weigh in favor of transfer of venue.[6]

---

[6]    In addition, Facebook's assertions (unsupported by any evidence or legal authority) that—(1) "[n]o source of proof necessary to litigate the claims and defenses in the present case are located in the Eastern District of Pennsylvania" (Facebook's Brief at 6); (2) XACP "has no relevant information that would even serve as a source of proof for any of the issues present in this litigation" (*Id.* at 7); and (3) "transfer would promote the easy, expeditious and inexpensive trial of this case as that is where all of the documents and witnesses reside" (Id. at 8)—are incorrect. XACP's documents related to this case and key XACP witnesses are located in this forum. Rieger Decl. ¶¶ 16-17, 19-20. XACP's witnesses have highly relevant information concerning the issues in this case. *Id.* ¶¶ 3-23.

14

**4.    Facebook Did Not Assert That It Is Financially
Unable To Defend This Case In This Forum**

Without commenting on its own financial condition, Facebook makes bare allegations

that XACP "has significant financial resources," and it would not be burdensome on XACP to

bring suit in the Northern District of California" Facebook's Brief at 5.  Facebook, however, is

required to present evidence that it does not have sufficient resources to defend this case properly

in this forum before the financial condition factor can have any weight in a transfer analysis.  *See*

*Curry v. Weeks Marine, Inc.*, No. 97-CV-7540, 1998 WL 150883, *3 (E.D. Pa. Mar. 27, 1998)

(Padova, J.) (transfer denied in a case where defendant did "not claim that to maintain the case in

Philadelphia would be unfair or that the cost or burden of travel would be prohibitive").

Nevertheless, Facebook intentionally fails to mention that it has significant financial

resources.  The "Facebook Factsheet" presented on Facebook's website indicates that during the

past three years Facebook has received funding from various sources totaling $40.7 million.  *See*

"FaceBook FactSheet" at http://www.facebook.com/press/info.php?factsheet a true and correct

copy of which is attached hereto as Exhibit C.

Facebook has also entered into a lucrative exclusive advertising relationship with

Microsoft Corporation ("Microsoft").  *See* "Microsoft and Facebook Team Up for Advertising

Syndication" press release at http://www.facebook.com/press/releases.php?p=635 a true and

correct copy of which is attached hereto as Exhibit D.[7]

---

[7]     Indeed, in an August, 2007 NEWSWEEK cover story, a member of Facebook's
Board of Directors was quoted as saying that it may have been smart for Facebook to reject
Yahoo's $1 billion offer to purchase Facebook because Facebook's market capitalization is
closer to $8 billion. (http://www.msnbc.msn.com/id/20227872/site/newsweek/page/0/).

This Court has held that it is not unreasonable for a corporation with millions of dollars in assets "to travel to places where it is subject to jurisdiction in order to defend its corporate interests." *Lucent*, 1997 WL 476356, *4. Hence, a company with 350 employees and millions of dollars in assets, such as Facebook, cannot complain (and Facebook notably did not complain) that it would be a financial hardship to travel to this forum—where it is subject to jurisdiction—to defend its corporate interests.

Therefore, the financial condition of the parties factor does not weigh in favor of transfer of venue.

> **5.    Facebook Fails to Prove that XACP's Choice
> Of Forum In Its Home Judicial District Should
> Be Disturbed**

Facebook argues, without any evidentiary support, that XACP's choice of forum "should be given little weight." Facebook's Brief at 5. Facebook then baldly alleges that XACP "has no particular connection with" this judicial district. *Id.*

The substantial deference afforded to a plaintiff's choice of forum is only lessened (but not obviated) "when the plaintiff does not live in the forum state and none of the operative facts occurred there." *Ford*, 1997 WL 255488, at *2 (emphasis added) (citing *American Tel. & Tel. Co. v. MCI Comms. Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990)); *accord Gaines*, 1993 WL 89163, at *2; *Lepage's, Inc. v. 3M*, No. 97-CV-3983, 1997 WL 587355, *2 (E.D. Pa. Sept. 10, 1997) (Padova, J.) (transfer denied and deference to plaintiff's choice of forum afforded despite fact that plaintiff was not a forum resident and its "choice to bring the case in this district [was] not an obvious one); *cf. Saint-Gobain*, 230 F. Supp. 2d at 659 (relied on in Facebook's Brief) ("A plaintiff's choice of forum, however, is entitled to less weight where the plaintiff chooses a

16

forum which is <u>neither his home</u> nor the situs of the occurrence upon which the suit is based.")
(emphasis added).

There is no evidence in the record that challenges XACP's home-forum status.  This is
because XACP unquestionably is a resident of this forum.  *See* Rieger Decl. ¶¶ 4-5, 15-17.
Facebook admits that XACP has "one of its offices located in Radnor, Pennsylvania."  *Id.*  This
admission alone, indicates that this judicial district is XACP's home forum.

Also, XACP's corporate headquarters is (and for all times relevant to this case was)
located in Radnor, Pennsylvania in this judicial district.  *Id.* at ¶ 4.[8]  XACP is (and for all times
relevant to this case was) an active company that employs about twelve people, ten of which
work (and have worked) in the Radnor Office.  *Id.* ¶ 5.  Two key XACP witness in this case (Fox
and Adamsky) work in the Radnor Office.  *Id.* ¶¶ 16-17.  Another key XACP witness, Rieger,
works in Radnor, Pennsylvania.  *Id.* ¶ 2.

Additionally, many of the "operative facts" of this case have occurred in this judicial
district, *e.g.*:

•    Facebook has targeted and continues to directly target the Facebook® website to,
and knowingly interact with, residents of Pennsylvania, including, but not limited to, students at
the approximately 125 colleges and universities and the hundreds of high schools in this judicial
district.  *See* Cmpl. ¶ 20; Rieger Decl. ¶ 21.

---

[8]    In *Lepage's*, this Court opined that the plaintiff's choice of forum deserved some
deference "although less than it would if Plaintiff's headquarters were in this district . . . ."  1997
WL 587355.  In this case, it is undisputed that XACP's corporate headquarters is located in this
judicial district.

17

- Facebook has entered and continues to enter into commercial agreements, collaborations, joint ventures and/or partnerships relating to the use and operation of the Facebook® website with residents of Pennsylvania, including, but not limited to, Comcast Interactive Media, LLC, which is principally located at 1500 Market Street, Philadelphia, Pennsylvania 19102. *See* Cmpl. ¶ 21; Rieger Decl. ¶ 21; Gadre Decl. ¶ 5.

- Acts which constitute direct infringement, inducement of infringement and contributory infringement by defendants of some or all of the claims of the '629 Patent have taken place and are taking place within this judicial district on a daily basis each time a resident of this judicial district logs into and uses the Facebook® website. Cmpl. ¶ 23; Rieger Decl. ¶ 21.

- In this judicial district, Facebook has been and is in the business of, *inter alia*, owning, making, operating, maintaining, marketing, selling advertising for, and generating income and profits from the Facebook® website which facilitates the creation of online communities by its registered users through the use of systems and methods covered by one or more claims of the '629 Patent. *See* Cmpl. ¶ 24; Rieger Decl. ¶ 21.

- In this judicial district, Facebook through the Facebook® website, has induced and continues to actively induce on a daily basis others, including residents of this judicial district, to infringe one or more claims of the '629 Patent. *See* Cmpl. ¶ 25; Rieger Decl. ¶ 21.

- In this judicial district, Facebook, through the Facebook® website, has and continues to aid and abet on a daily basis residents of this judicial district to infringe one or more claims of the '629 Patent. *See* Cmpl. ¶ 26; Rieger Decl. ¶ 21.

The acts of patent infringement by Facebook of one or more claims of the '629 Patent has also deprived XACP of revenues which it otherwise would have made or caused to be made in

this judicial district, and has in other respects, injured XACP, a resident of this judicial district, and will cause XACP added injury and loss of revenues unless enjoined by this Court. *See* Cmpl. ¶ 28; Rieger Decl. ¶ 22.

Accordingly, the "paramount consideration" given to XACP's home-forum preference should not be disturbed. *See id.* ¶ 23. Furthermore, Facebook fails to prove that the "where the claim arose" factor weighs in favor of transfer of venue.

### 6.    Facebook Puts A Misplaced Emphasis On A "Center of Gravity" Test

Facebook's argument that this case should be transferred to a California court based on a "center of gravity" test for patent infringement actions is flawed for numerous reasons.

First, as explained by the court in *Lucent Techs., Inc. v. Aspect Telecomms. Corp.*, No. 97-CV-1618, 1997 WL 476356, *4 (E.D. Pa. Aug. 20, 1997) , in the usual case where the plaintiff has brought suit in its home forum, such as XACP has done here:

> [t]he center of gravity test cannot be the predominate factor to consider in determining the forum in patent infringement cases because the defendant would almost always be allowed to transfer the case to its home forum, thereby turning on its head the traditional notion expressed in *Jumara*, 55 F.3d at 879, the plaintiff's choice of forum should be lightly disturbed.

1997 WL 47356, at *3.

Second, a "center of gravity" test gives "inordinate weight to the 'accused activities' by focusing solely on the geographical area where the defendant designed and developed the allegedly infringing product." *Id.*, at *2.

Third, Congress never intended a "center of gravity" test to be the predominant factor in determining venue in patent infringement actions. *Id.* The venue provision statute for patent

19

actions, 28 U.S.C. § 1400(b), does not mandate such a test. *Id.* This Court has reasoned, "[i]f

the center of gravity test did in fact dictate in which forum patent cases must be litigated, 28

U.S.C. § 1400(b) would be meaningless." *Id.*

Fourth, many courts, in accordance with 28 U.S.C. § 1400(b), do not refer to a "center of

gravity" test when deciding transfer motions in patent cases. *Id.*, at *3 (citing numerous cases in

support of this proposition). Rather, many courts follow the traditional analysis of balancing the

private and public factors as required by § 1404(a) case law. *Id.*

Fifth, "[c]ourts which refer to a center of gravity test make clear that the 'center of

gravity' is only one factor to be considered in addition to those already enumerated, and is to be

given substantial weight only where the plaintiff has engaged in forum shopping." *Id.* (emphasis

added) (distinguishing *Renzetti, Inc. v. D.H. Thompson, Inc.*, No. 96-CV-8520, 1997 U.S. Dist.

LEXIS 6121, 1997 WL 230806 (E.D. Pa. May 2, 1997), one of three cases cited by Facebook

purported in support of application of a "center of gravity" test in this case—*see* Facebook's

Brief at 4);[9] *accord Schreiber v. Eli Lilly & Co.*, No. 05-CV-2616, 2006 WL 782441, *9-10 (E.D.

---

[9]     As the *Lucent* court aptly explained, in *Renzetti,* the only contact with the selected
forum was the presence of the plaintiff's lawyer. 1997 WL 230806, at *3. Facebook's two other
cases cited for application of a "center of gravity" test—*Saint-Gobain*, 230 F. Supp. 2d 655 and
*EVCO Tech. & Dev. Co. v. Precision Shooting Equip.*, 379 F. Supp. 2d 728 (E.D. Pa. 2005)—are
also factually distinguishable from this case. In *Saint-Gobain*, the plaintiff was not a forum
resident and did not have any books, records, or witnesses in the forum, whereas the defendant
provided a factually specific key witness affidavit establishing that many key third party
witnesses worked or resided in or near the proposed alternative forum. *See* 230 F. Supp. 2d at
659-62. In *EVCO*, the court found a transfer to Arizona was warranted because: (1) the plaintiff
was found to "exist only on paper" in the forum as its owner and sole employee resided in
Canada; (2) plaintiff's only business activities in the forum were the litigation to enforce the
patent-in-suit; (3) none of the alleged acts of infringement occurred in the forum; and (4) all of
plaintiff's witnesses resided in Canada. In contrast, in this case, not only have numerous alleged
acts of infringement occurred in this forum, XACP is a forum resident whose key witnesses and
documents related to this case are located in this forum. XACP's forum choice is clearly

Pa. Mar. 27, 2006) (transfer denied despite fact that the court found Indiana to be the "center of

gravity" in a patent infringement case involving several Indiana state law claims, and where

Indiana was a forum of another pending patent infringement case allegedly involving some

similar issues, because the balance of the *Jumara* convenience factors did not outweigh "the

paramount consideration given to plaintiff's choice of forum"); *Garvey Corp. v. Blue Chip*

*Eng'g,* No. 02-CV-3886 (RBK), at 15 (D.N.J. Jan. 26, 2004) (citing to *Lucent* court held: "while

the Court accepts that Wisconsin is the 'center of gravity' of this lawsuit, that does not mean that

transfer to Wisconsin is in the interests of justice where the plaintiff is an established business in

New Jersey and has brought suit in its home forum and where the balance of the *Gulf Oil* and

*Jumara* factors do not otherwise weigh strongly in favor of transfer.") (A true and correct copy of

the *Garvey* opinion is attached hereto as Exhibit E); *see also Travel Rags, Inc. v. Performance*

*Printing Corp.,* No. 06-CV-2970, 2007 WL 2122662, *3 (D. Minn. Jul 19, 2007) (transfer denied

and court, citing *Lucent,* 1997 WL 476356 and other cases, opined: "[w]here a plaintiff has

chosen to bring suit in its home forum, the fact that another location may be the center of the

allegedly infringing activity does not necessarily outweigh the plaintiff's choice of forum.").

Sixth, Facebook's argument that "it cannot be disputed that the center of gravity of the

accused activity is the Northern District of California[,]" (Facebook's Brief at 4), must be

rejected. This Court's analysis, in another case, of where a cause of action arose is applicable

here:

---

legitimate, and not the result of forum shopping.

> While many of the alleged wrongs in this case would have taken place in St. Paul, this case is not like one of an automobile collision that occurred in a single readily identifiable location. It appears that the cause of action arose at numerous locations throughout the country, including the retail outlets where Defendant's private-label customers allegedly stopped carrying Plaintiff's products because of Defendant's anticompetitive activities. I do not find that the cause of action arose in a particular location to which this case should be transferred.

*Lepage's*, 1997 WL 587355. In , at *5 (emphasis added).

Similarly, in this case, acts of alleged infringement by Facebook are occurring in numerous locations across the country (each time someone logs into and uses the Facebook website®), and are not isolated to the Northern District of California.[10] Moreover, since the Eastern District of Pennsylvania is very populous, and has a large number of colleges and high schools within its borders, it is a "center of gravity" for much of the accused activity.

Finally, assuming that the "center of gravity" of this case is the Northern District of California (which XACP denies), the interests of justice do not compel a transfer to that venue because Facebook fails to meet its burden to prove even a single other private interest factor weighs in its favor. As such, Facebook fails to prove that the balance of the conveniences "strongly favors" transfer of venue.

### 7. Facebook Fails To Prove That The Balance Of The Public Interest Factors Compel A Transfer Of Venue

Facebook does not discuss how any specific public interest factor weighs in its favor. Rather, Facebook argues that in "evaluating public interest factors, courts should consider the 'locus of the alleged culpable conduct' . . . ." Facebook's Brief at 8 (citing *Saint-Gobain*, 230 F.

---

[10] Additionally, given the fact that Facebook has entered into an exclusive advertising venture with Microsoft Corporation in Washington (*see* Exhibit D, Press Release), California is not the "hub" of Facebook's advertising and marketing efforts.

Supp. 2d at 662). Since the locus of the alleged culpable conduct is not isolated to the Northern District of California, such a consideration is not integral to the public interest analysis in this case.

The public interest factors simply do not weigh in favor of transfer of venue in this case. (This is presumably why Facebook did not argue that any particular public interest factor supported its transfer request).

Facebook did not present any evidence concerning a difference in docket congestion between the two forums at issue, or that there would be any difficulty in the enforcement of the judgment in either forum (there would not be). There are no issues of state law in this case. This case does not present an opportunity for a clash between fundamental social polices between California and Pennsylvania, since federal patent law—consistent across the county—is to be applied. Facebook also did not present any evidence that there is a single forum that would be the easiest and least expensive for trial for both parties. Thus, any practical considerations that could make the trial easy, expeditious, or inexpensive do not favor a California court. Finally, this judicial district has a strong interest in protecting XACP, one of its forum residents, from acts of infringement. *See FMC Corp. v. AMVAC Chem. Corp.,* 379 F. Supp. 2d 733, 751-752 (E.D. Pa. 2005) ("Pennsylvania has a strong interest in protecting its residents and providing a forum for resolution of their disputes.") (citation omitted); *Endless Pools, Inc. v. Wave Tec Pools, Inc.,* 362 F. Supp. 2d 578, 587 (E.D. Pa. 2005).

Therefore, the public interest factors do not weigh in favor of transfer of venue.

IV.    **CONCLUSION**

For the foregoing reasons, Facebook fails to meet its burden to prove that the balance of

the conveniences "strongly favors" transfer of this case to the Northern District of California.

XACP respectfully requests that this Court deny Facebook's motion to transfer venue.

Respectfully submitted,


  /s/ Frederick A. Tecce
Thomas J. Duffy, Esquire (PA ID # 34729)
Patrick J. Kennan, Esquire (PA ID # 53775)
**Duffy & Keenan**
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, Pennsylvania 19106
(215) 238-8700
(215) 238-8710 (Fax)
pjk@duffykeenan.com

and

Frederick A. Tecce, Esquire
**McShea\Tecce, P.C.**
The Bell Atlantic Tower - 28th Floor
1717 Arch Street
Philadelphia, Pennsylvania 19103
(215) 599-0800
(215) 599-0888 (Fax)
ftecce@mcshea-tecce.com

Counsel for plaintiff,
Cross Atlantic Capital Partners, Inc.

Dated: September 24, 2007

24

## CERTIFICATE OF SERVICE

This is to hereby certify that on this 24th day of September, 2007, I caused true and correct

copies of the foregoing Response in Opposition to Motion to Transfer venue and Supporting

Brief to be served *via* this Court's Electronic Filing ("ECF") System and regular mail, upon the

following:

> Charles J. Bloom, Esquire
> **Stevens & Lee, P.C.**
> 620 Freedom Business Center
> Suite 200
> King of Prussia, Pennsylvania 19406
>
> and
>
> Heidi L. Keefe, Esquire
> **White & Case LLP**
> 3000 El Camino Real
> 5 Palo Alto Square, 9[th] Floor
> Palo Alto, California 94306
>
> Counsel for defendants,
> Face Book, Inc. and Thefacebook, LLC

　　　　　　　　　　　　　　　　 /s/ Frederick A. Tecce
　　　　　　　　　　　　　　　 Frederick A. Tecce, Esquire