# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | **CIVIL ACTION** |
| Plaintiff, | **NO. 07-CV- 02768-JP** |
| v. | **JURY TRIAL DEMANDED** |
| FACEBOOK, INC. and THEFACEBOOK, LLC, | |
| Defendants. | |

## DECLARATION OF DENNIS P. McCOOE IN SUPPORT OF FACEBOOK'S OPPOSITION TO CROSS ATLANTIC'S MOTION TO COMPEL

I, Dennis P. McCooe, hereby declare and state as follows:

1.      I am an attorney with Blank Rome LLP, counsel of record in this action for Facebook, Inc. and Thefacebook, LLC's (collectively "Facebook"). I make this declaration in support of Facebook's Opposition to Cross Atlantic Capital Partner, Inc.'s ("XACP") Motion to Compel Full and Complete Interrogatory Responses and Documents. I am admitted to practice law before this Court. I have personal knowledge of the facts contained within this declaration, and if called as a witness, could testify competently to the matters contained herein.

2.      Having been advised by co-counsel that XACP sent a letter dated October 30, 2007, demanding that Facebook provide a date for inspection and copying of documents within seven business days, my office attempted to contact counsel for XACP, Frederick Tecce, several times by telephone to advise him of the logistical realities associated with Facebook's production. I also intended to attempt to work out an agreement on the scope and form of Facebook's production of electronically stored docketing. Being unable to reach Mr. Tecce, we left a voice message that was never returned.

3.    On November 8, 2007, I was informed by co-counsel that Facebook received a letter from XACP counsel Patrick Keenan claiming that Facebook failed to respond to XACP's October 30 letter.

4.    Accordingly, the following day, November 9, 2007, I placed a call to Mr. Keenan to discuss both parties' document productions. During this conversation, I made XACP aware of the large number of documents Facebook was dealing with and the logistical issues associated with processing and producing that volume of documents and that the vast majority of the documents would not be useful to XACP, although technically responsive. I suggested the parties agree upon search terms to ease the burden on both parties. I also sought to reach an agreement on the form of Facebook's production, since XACP did not specify a form of production in its requests. I informed XACP that Facebook had been working diligently and was prepared to produce a large number of documents the following week. XACP refused to discuss these issues, but indicated it would do so at a later date.

5.    On November 9, 2007, I sent an email to Mr. Keenan confirming our conversation of earlier that day. On November 12, 2007, I received a reply email from Mr. Keenan, rejecting my offer for a further meeting concerning Facebook's production of documents. On November 13, 2007, I replied to Mr. Keenan's email, advising him that XACP's delay in resolving the parties' production-related issues will delay Facebook's further production. Attached hereto as Exhibit J is a true and correct copy of this email correspondence.

6.    Attached hereto as Exhibit D is a true and correct copy of a letter received the same day from Mr. Keenan, dated December 13, 2007, demanding that Facebook's produce all documents in native format.

7.     On November 14, 2007, my colleague, Alfred Zaher, and I had two telephone discussions with Mr. Keenan, wherein we explained the logistical issues concerning Facebook's production. We asked Mr. Keenan if XACP would be willing to agree on a list of search terms to narrow down its production. Mr. Keenan refused, saying that Facebook should choose its own search terms based on what it deems to be "the essence of what [XACP] wants." I advised Mr. Keenan that much more certainty would result from an agreed upon list of search terms, which would prevent XACP from later questioning the terms chosen by Facebook. Mr. Keenan refused to provide or agree upon any terms and stated that the task would be left to Facebook.

8.     During my November 14, 2007, telephone conversations with Mr. Keenan, we also addressed XACP's demand for the production of documents in native form. We explained that native document production is not technically feasible, but inspection of native files at Facebook counsel's offices would be possible. I offered to set up a searchable database of native files at my office for XACP to review. I told Mr. Keenan that XACP would be permitted as much time as it needed to electronically flag each native document it wanted to have produced. Fcaebook's counsel would then appropriately mark and produce the flagged documents to XACP. I told Mr. Keenan if XACP wanted all documents produced to XACP, rather than made available for inspection, that production would be made in TIFF format. I told Mr. Keenan that TIFF files could be made electronically searchable at XACP's expense. As a further alternative, I offered to produce all documents in TIFF format and to categorize them according to XACP's document requests. Mr. Keenan agreed to take these options under consideration.

9.     Attached hereto as Exhibit F is a true and correct copy of a letter I sent to Patrick Keenan, dated November 15, 2007, wherein I confirmed the content of the two conversations we had on November 14, 2007.

10.     Attached hereto as Exhibit G is a true and correct copy of a letter I received later that day from Mr. Keenan, dated November 15, 2007, wherein Mr. Keenan stated that XACP was "agreeable to examining and testing the database in your office prior to next Wednesday November 21st."

11.     Attached hereto as Exhibit H is a true and correct copy of a cover letter I sent to Mr. Keenan, dated November 16, 2007, which accompanied Facebook production of over 100,000 pages of documents numbered FCBK0000001-FCBK0100782.

12.     Attached hereto as Exhibit I is a true and correct copy of a letter I sent to Mr. Keenan, dated November 19, 2007, wherein I informed Mr. Keenan that an electronically searchable database would be available for inspection in Facebook counsel's office beginning November 21, 2007. In my letter I also informed Mr. Keenan that the same database could be made available to XACP at Facebook local counsel's office in Pennsylvania the following week.

13.     I never received another communication from counsel for XACP on the issue of Facebook's production, or the inspection of Facebook's electronic files until I was served with XACP's motion to compel.

        I declare under penalty of perjury that the foregoing is true and correct. Executed on December 13, 2007, at Philadelphia, Pennsylvania.


                                                    /s/ Dennis P. McCooe
                                                    Dennis P. McCooe

EXHIBIT D



**DUFFY&KEENAN**
Attorneys at Law

PATRICK J. KEENAN
DIRECT DIAL  215.238.8707

November 13, 2007

**Via Facsimile & First Class Mail**

Dennis P. McCooe
Blank Rome
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998

**Re:   Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.**

Dear Mr. McCooe:

You have indicated in an e-mail that Facebook, Inc. intends to produce documents responsive to Plaintiff's Request for Production of Documents and Things only in TIFF format.  This is unacceptable. Fed. R. Civ. P. 34(b) requires Facebook to produce documents "as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Plaintiff, therefore, expects that Facebook's production will comply with Rule 34(b), and that documents will be produced as they are maintained in the usual course of business and that electronic documents will be produced in their native format.

You also incorrectly suggest in your e-mail that plaintiff has agreed to essentially waive any objections to Facebook's documents request except those related to privilege. This is of course untrue.  Plaintiff's document production will be made in good faith but without waiving any of its timely objections, including, but not limited to, those based on attorney-client privilege, the work product doctrine, and Fed. R. Civ. P. 26(a)(2)(3), (b)(3) and (b)(4).

Finally, your comment about "repeatedly" trying to discuss your client's discovery obligations with us strikes me as a self-serving and inaccurate effort to cover up Facebook's dilatoriness to date. After not receiving any response from Facebook's counsel to my e-mail of October 18th, and my letters dated October 30th and November 8th, you left *one* voicemail with Mr. Tecce before your appearance was entered in this case, and you faxed my office a letter at 7:02 p.m. on November 8th. On November 9th, I called you and concluded our conversation with the understanding that Facebook would be producing documents this week in good faith. This commitment by Facebook was conspicuously absent from your e-mail following our conversation, replaced with a request for another meeting without any explanation for its necessity other than to further delay matters.  Your client's effort to hamper our discovery efforts by producing the documents in an unmanageable manner is not good faith and merely further evidences the probable need for the court's intervention.

The Curtis Center, Suite 1150
Independence Square West
Philadelphia PA  19106
215.238.8700 *tel*   215.238.8710 *fax*

DUFFY & KEENAN

Dennis P. McCooe
November 13, 2007
Page 2

If you have any questions or would like to discuss this matter, please feel free to contact me.

Sincerely,

Patrick J. Keenan

cc:    Frederick A. Tecce, Esquire

EXHIBIT F



**BLANK ROME** LLP
COUNSELORS AT LAW

*Phone:* **(215) 569-5580**
*Fax:* **(215) 832-5580**
*Email:* **McCooe@BlankRome.com**

November 15, 2007

**VIA FIRST CLASS MAIL & FACSIMILE**
Patrick J. Keenan, Esq.
Duffy & Keenan
The Curtis Center - Suite 1150
Independence Square West
Philadelphia, PA 19106

>        Re:    Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.
>               and Thefacebook, LLC

Dear Mr. Keenan:

We write to summarize our two telephonic discussions of yesterday afternoon regarding the production of documents in the above-referenced matter.

As an initial matter, our vendor in California is expected to ship approximately 85,000 pages of responsive Facebook documents to us by the close of business on Friday. We will hand-deliver these documents to you upon receipt. If for some unexpected reason the documents cannot be produced as scheduled, we will notify you promptly and produce them as soon as possible. As discussed, Facebook's documents will be produced in TIFF format (tagged image file format). While we recently have come to understand that you find TIFF format to be "unacceptable" and that you would like Facebook to produce all electronic documents in their "native" format, it should be noted that Plaintiff's First Request for Production did not specify the form for producing electronically stored information. Accordingly, by producing these documents in TIFF, Facebook is fully complying with its obligations to produce electronic documents in a "form" that is "reasonably useable." Fed. R. Civ. P. 34(b)(ii). Furthermore, as discussed yesterday, the production of electronic documents in their "native" format is neither reasonable at this early stage of the litigation nor required under the Rules.

As we also discussed, we are in the process of preparing a chart which should allow you to correlate the categories in Plaintiff's First Request for Production with the specific bates stamped documents in Facebook's initial production. Given the breadth of these requests, and the overlapping nature of many of them, it may not be possible to identify a specific request to which each document corresponds, but we will endeavor to do so.



BLANK ROME llp
COUNSELORS AT LAW

Given the large number of additional, potentially responsive Facebook documents, we once again requested that you provide us with a list of search terms tailored to the issues in this matter so that we can narrow the scope of production to a reasonable size. You have refused to do so. Instead, you have asked that Facebook conduct the searches using Facebook's own criteria based on what Facebook deems, in good faith, to be "the essence of what *[Plaintiff]* wants." Our only source of information as to what Plaintiff wants is the document requests you have served, which are extremely broad. Accordingly, we anticipate that your approach will result in the production of a significant volume of documents which, although facially responsive, have little or no bearing on the issues in the case. Whereupon, we further anticipate that Plaintiff will protest that it has not received all the documents it was seeking. Notwithstanding our genuine belief that Plaintiff's approach is impractical and will result in an extraordinary waste of time and resources, we will begin the search process as outlined by you. Once we have a rough estimate of the number of responsive pages to be produced in TIFF, we will report back to you. If we have in any way misunderstood your wishes in this regard, please advise us no later than the close of business on November 16 so that we can avoid engaging in unnecessary searches of Facebook's potentially responsive documents.

As a reasonable alternative to the production plan outlined immediately above, we have offered to make Facebook's potentially responsive documents available on a searchable database instead. This database will use a powerful document management tool, Concordance®, which would allow you to conduct your own queries and searches and, thereby, collect only the documents you select. Once you have flagged the documents to be produced, Facebook's counsel would designate them, as appropriate, in accordance with the terms of the proposed protective order. We anticipate that the Concordance® database would be available throughout the discovery period, upon reasonable notice, at a location to be arranged in either California or Philadelphia. We understand that you will consider this proposal and will provide us with a response within the next few days.

Furthermore, we promised to provide you with a proposed stipulation which would set forth the parties' agreement as to how electronic discovery would be conducted and would provide a dispute resolution mechanism should disputes arise. I will provide you with the draft stipulation shortly after we receive your decision on whether you elect to use Concordance® to search Facebook's potentially responsive documents or, instead, elect to continue receiving documents in TIFF format.



**BLANK ROME** LLP
COUNSELORS AT LAW

Patrick J. Keenan, Esquire
November 15, 2007
Page 3

Finally, you confirmed that XACP will be producing its documents by the close of business on November 23, 2007.

We look forward to hearing from you.

Very truly yours,

Dennis P. McCooe

DPM/dma
cc:    Frederick A. Tecce, Esquire
        Heidi L. Keefe, Esquire
        Alfred Zaher, Esquire



Patrick J. Keenan, Esquire
November 15, 2007
Page 4

bcc:    Sam O'Rourke, Esquire
        Mark Weinstein, Esquire

900200.00001/11724612v2

EXHIBIT G

# DUFFY & KEENAN

Attorneys at Law

PATRICK J. KEENAN
DIRECT DIAL 215.238.8707

November 15, 2007

**Via Facsimile & First Class Mail**

Dennis McCooe
Blank Rome
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998

Re:     **Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.**

Dear Mr. McCooe:

If you feel compelled to "summarize" our conversations or events related to this case, I suggest that you do so in an accurate and not a self-serving manner. Your letter of this date fails at this.

This is to further memorialize plaintiff's position with respect to Facebook's production of electronically stored information, none of which has occurred yet. Plaintiff wants nothing more, and nothing less, than Facebook's compliance with Fed. R. Civ. P. 34(b). Rule 34(b) permits plaintiff to specify the form(s) that electronically stored information is to be produced. In my letter to you dated November 13, 2007, we specified that "documents will be produced as they are maintained in the usual course of business and that electronic documents will be produced in their native format."

Even if Facebook had a justified reason for not complying with our request, which it does not, it is still required by Rule 34(b) to "produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably useable." The Advisory Notes to Rule 34(b) make clear that Facebook may not convert electronically stored information from a searchable form to a form that is not searchable, such as TIFF images.

> [T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Fed. R. Civ. 34(b), 2006 Amendment, Advisory Committee's Note. Your conversion of searchable electronically stored information to non-searchable TIFF images does not comply with Rule 34(b).

The Curtis Center, Suite 1150
Independence Square West
Philadelphia PA 19106
215.238.8700 tel    215.238.8710 fax

DUFFY&KEENAN

Dennis McCooe
November 15, 2007
Page 2

Your proposal to make a searchable database available to plaintiff at your offices makes clear that defendants currently have the documents in machine readable form, in their native format or in some other form which permits electronic searches, and it also makes clear that defendants can export the documents from the database in a searchable format (*e.g.*, searchable PDF). Plaintiff therefore reiterates that defendants are obligated to produce electronically stored information in a searchable format. Defendants may do this by either providing plaintiff a copy of the database, or providing the information in a searchable format after exporting it from the database.

As a measure of good faith, we are agreeable to examining and testing the database in your office prior to next Wednesday, November 21st. If your client had not delayed in presenting its proposal, we could have afforded more time to explore it. However, your clients' delay in producing useable discovery is presently impeding our ability to complete discovery within the time allotted by the Court and prepare this case for trial. Please let me know as soon as possible whether you will make the database available to plaintiff in your office before Wednesday.

If you have any questions, please feel free to contact me.

Sincerely,

Patrick J. Keenan

cc:      Frederick A. Tecce, Esquire

EXHIBIT H



**BLANK ROME** LLP
COUNSELORS AT LAW

*Phone:* **(215) 569-5580**
*Fax:* **(215) 832-5580**
*Email:* **McCooe@BlankRome.com**

November 16, 2007

**VIA HAND DELIVERY**

Patrick J. Keenan, Esq.
Duffy & Keenan
The Curtis Center - Suite 1150
Independence Square West
Philadelphia, PA 19106

      Re:    Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.
              and Thefacebook, LLC

Dear Mr. Keenan:

    Enclosed please find Facebook, Inc.'s first production of documents numbered FCBK0000001-FCBK0100782.

    Please contact me should you have any questions. Thank you.

                    Very truly yours,

                    Dennis P. McCooe

DPM/dma
enclosure
cc:    Frederick A. Tecce, Esquire
        Heidi L. Keefe, Esquire
        Alfred Zaher, Esquire
        (all w/o enclosure)



Patrick J. Keenan, Esquire
November 16, 2007
Page 2

bcc:    Sam O'Rourke, Esquire
        Mark Weinstein, Esquire

EXHIBIT I



**BLANK ROME** LLP
COUNSELORS AT LAW

*Phone:*     *(215) 569-5580*
*Fax:*       *(215) 832-5580*
*Email:*     *McCooe@BlankRome.com*

November 19, 2007

**Via Email and First Class Mail**
Patrick J. Keenan, Esq.
Duffy & Keenan
The Curtis Center - Suite 1150
Independence Square West
Philadelphia, PA 19106

Re:    Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.
       and Thefacebook, LLC

Dear Mr. Keenan:

As previously discussed and as expressly set forth in my letter of November 15, 2007, we have offered to provide XACP with access to a searchable database in either Philadelphia or California. Based on your letter of Friday, November 16, we now understand that you wish to avail yourself of this opportunity. Accordingly, a searchable database of responsive documents will be made available for examination and testing in Palo Alto, California beginning on Wednesday, November 21. Alternatively, we can make arrangements to have a searchable database available in Philadelphia some time next week. Please notify me in writing by the close of business today as to how you would like to proceed.

Very truly yours,

Dennis P. McCooe

DPM/dma
cc:    Frederick A. Tecce, Esquire
       Heidi L. Keefe, Esquire
       Alfred Zaher, Esquire

EXHIBIT J

| From: | McCooe, Dennis P. [McCooe@BlankRome.com] |
|---|---|
| Sent: | Tuesday, November 13, 2007 11:13 AM |
| To: | Patrick J. Keenan |
| Cc: | Frederick A. Tecce; Keefe, Heidi L.; Zaher, Alfred W. |
| Subject: | RE: Facebook ats CACP |

Patrick --

We should be ready to produce approximately 75-100,000 pages of documents by the end of the week. They will be produced in TIFF format, which are image files. There is a process by which these files can be made searchable. You may take advantage of that process at your own expense.

You have stated that you do not feel another meeting is necessary at this time concerning the logistics and scope of further document production, but you should understand that every day you delay the parties' resolution of these issues will result in a delay in our further production. Further, your assertion that Facebook's production is "approaching a month overdue" is completely unfounded and inaccurate. We have repeatedly tried to discuss the logistics of document production with you and your co-counsel, and just as you have done once again in your email below, you have delayed engaging in such discussions. Moreover, XACP has yet to produce any documents, so by your logic, XACP's production is also overdue. As we have repeatedly stated, we are available at any time to discuss the logistics of the further production of documents, as well as the protective order.

On a related note, please confirm some details regarding XACP's production. Based on our discussion last Friday, I understood that XACP would be producing approximately 3-5 bankers boxes of documents by the end of this week, not next week. I further understood from you that this production will include all responsive documents in XACP's possession, custody or control, and that no documents will be withheld from production except those subject to a claim of privilege.

Regards, Dennis

**Dennis P. McCooe | Blank Rome LLP**
One Logan Sq, 130 N 18th St | Philadelphia, PA 19103-6998
Phone: (215)569-5580 | Fax: (215)832-5580 | Email: McCooe@BlankRome.com

---

**From:** Patrick J. Keenan [mailto:pjk@duffykeenan.com]
**Sent:** Monday, November 12, 2007 12:16 PM
**To:** McCooe, Dennis P.
**Cc:** Thomas J. Duffy; Frederick A. Tecce; Keefe, Heidi L.
**Subject:** Re: Facebook ats CACP

Dennis,

Another meeting seems unnecessary at this time. During our conversation on Friday, you agreed to produce about 100,000 pages of responsive documents to us this week. You thought that Facebook's records were all kept electronically without hard copies. If that is the case, we are agreeable to being provided a searchable database containing the documents. Nonetheless, we are expecting to receive responsive documents this week since they are approaching a month overdue. At that point, we can

meet to discuss Facebook's further production of responsive documents. XACP has agreed to produce copies of documents responsive to Facebook's requests, and we expect to do this by the end of next week.

Patrick

Patrick J. Keenan
Duffy & Keenan
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, PA 19106
P 215.238.8707
F 215.238.8710

----- Original Message -----
From: McCooe, Dennis P.
To: pjk@duffykeenan.com ; ftecce@mcshea-tecce.com
Cc: Weinstein, Mark R. ; Zaher, Alfred W. ; Keefe, Heidi L.
Sent: Friday, November 09, 2007 6:45 PM
Subject: Facebook ats CACP

Dear Pat--

It was good speaking with you today.

Given the breadth of Plaintiff's document requests and the enormous number of potentially responsive documents (the vast number of which would have little or no bearing on the case), we look forward to meeting with you early next week to establish an appropriate means of exchanging documents. Ideally, we will also come to agreement on the final terms of the protective order.

We are available for a conference call on Tuesday at 11 or 4. Please advise as to your availability. Thank you.

Dennis

**Dennis P. McCooe | Blank Rome LLP**
One Logan Sq, 130 N 18th St | Philadelphia, PA 19103-6998
Phone: (215)569-5580 | Fax: (215)832-5580 | Email: McCooe@BlankRome.com

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.**

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Any Federal tax advice contained herein is not intended or written to be used, and cannot be used by you or any other person, for the purpose of avoiding any penalties that may be

imposed by the Internal Revenue Code. This disclosure is made in accordance with the rules of Treasury Department Circular 230 governing standards of practice before the Internal Revenue Service. Any written statement contained herein relating to any Federal tax transaction or matter may not be used by any person without the express prior written permission in each instance of a partner of this firm to support the promotion or marketing of or to recommend any Federal tax transaction(s) or matter(s) addressed herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*