**Exhibit A**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | CIVIL ACTION<br>NO. 07-CV-02768 |
| Plaintiff, | |
| | HON. JOHN R. PADOVA |
| v. | |
| FACEBOOK, INC. and THEFACEBOOK, LLC., | JURY TRIAL DEMANDED |
| Defendants. | |

## DEFENDANTS FACEBOOK, INC. AND THEFACEBOOK, LLC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF CROSS ATLANTIC CAPITAL PARTNERS, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, defendants Facebook, Inc. and Thefacebook, LLC. (collectively "Facebook") submit the following responses and objections to the First Set of Interrogatories served by plaintiff Cross Atlantic Capital Partners, Inc. ("XACP"):

## GENERAL OBJECTIONS

1.      Facebook objects to each interrogatory to the extent it purports to require Facebook to do anything beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court and other applicable law.

2.      Facebook objects to each interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine and/or any other applicable privilege or immunity.

3.      Facebook objects to each interrogatory to the extent it is phrased in a manner that would render it overly broad, vague, or ambiguous, or require subjective judgment

or speculation on the part of Facebook. Facebook responds to these interrogatories by construing them in light of the scope of the issues in this action.

4. Facebook objects to each interrogatory to the extent it seeks to elicit information that is subject to a right of privacy under the relevant provisions of federal and state law.

5. Facebook objects to each interrogatory to the extent it seeks to elicit information that comprises third-party confidential information.

6. Facebook objects to each interrogatory to the extent it purports to place an obligation on Facebook to obtain information that is as readily available to XACP as it is to Facebook.

7. Facebook objects to each interrogatory to the extent it calls for information not in the possession, custody or control of Facebook.

8. The following responses are based on information reasonably available to Facebook as of the date of this response. Facebook's investigation is continuing and ongoing and Facebook expressly reserves the right to revise and/or supplement its responses.

9. Facebook objects to each interrogatory to the extent it seeks privileged information originating on or subsequent to the commencement of this lawsuit. Given the burden and expense involved to Facebook in creating a privilege log in accordance with Instruction No. 4, Facebook objects to logging information originating on or subsequent to the commencement of this lawsuit.

10. These General Objections shall be deemed incorporated in full into each of the individual responses set forth below.

### OBJECTIONS TO DEFINITIONS

1. Facebook objects to the interrogatories to the extent they incorporate the terms "Online Community Creation System and/or Created Online Community" on the grounds that XACP's definition of these terms is vague and ambiguous. XACP's definition of these terms is also overly broad and unduly burdensome in that: a) it encompasses systems and

communities completely unrelated to Facebook or its services; b) it imposes on Facebook an improper and impossible burden of providing information that far exceeds the functionality of the accused product which is at issue in this case; and c) it attempts to capture information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Facebook's responses to defendant's interrogatories are made with the understanding that "Online Community Creation System and/or Created Online Community" refers to the "Groups" application of the Facebook website. By doing so, Facebook does not agree that Facebook Groups meets the definition of "Online Community Creation System and/or Created Online Community" proffered by Plaintiff.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1

Identify each Online Community Creation System and/or Created Online Community service which you have made, used, licensed, offered for licensing, sold, offered for sale, or purchased since January 1, 2004 by stating its trade name and serial number (if any); further, state the date upon which each such system, service or product was first made, used, licensed, offered for licensing, sold, or offered for sale, and the identity of each person knowledgeable with respect to the development, manufacture, marketing, licensing, offer for licensing, sale, or offer for sale, of each such system, service or product.

### RESPONSE TO INTERROGATORY NO. 1

In addition to the General Objections, Facebook objects to this interrogatory as compound, overly broad and unduly burdensome in that it seeks the identities of persons regardless of the extent of their knowledge on the subject areas listed. Facebook objects to the use of the terms "Online Community Creation System" and "Created Online Community" as vague, ambiguous, overly broad and unduly burdensome, and will assume for the purpose of responding to this interrogatory that Plaintiff is referring to Facebook's Groups application.

## INTERROGATORY NO. 3

State whether Facebook has ever made, or ever caused to be made, any search of prior art relating to the subject matter of the '629 Patent, and if so:

(a)     Identify each document that refers to, relates to, or comments upon such search including each item of prior art uncovered by such search; and

(b)     Identify each person who requested such search and who was in any way involved with such search.

## RESPONSE TO INTERROGATORY NO. 3

In addition to its General Objections, Facebook objects to this interrogatory on the ground that it seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege.

Subject to and without waiving its General Objections and the objections set forth above, Facebook responds that it cannot respond to this interrogatory until it has had a reasonable opportunity to consider Plaintiff's disclosures and responses to discovery requests concerning the '629 Patent, the identity of the claims Plaintiff is asserting, the nature of the alleged infringement of the '629 Patent, the construction of the asserted claims of the '629 Patent Plaintiff is proposing, and the invention and priority dates of the '629 Patent upon which Plaintiff is relying. All other information requested in this interrogatory is protected by the attorney-client privilege and work product doctrine.

## INTERROGATORY NO. 4

Identify the date when Facebook first became aware of the '629 Patent and state whether Facebook has taken any steps to avoid infringement of the '629 Patent; and, if the answer is anything but an unqualified negative, identify each document relating to, referring to or commenting upon such steps and each person having knowledge of such steps.

## RESPONSE TO INTERROGATORY NO. 4

In addition to its General Objections, Facebook objects to this interrogatory on the ground that it seeks information protected by the attorney-client privilege, work product doctrine, and/or other applicable privilege.

**INTERROGATORY NO. 5**

If you contend that any claim of the '629 Patent is invalid or unenforceable for any reason, including, but not limited to, obviousness, provided (sic) the complete legal basis, including Facebook's proposed claim construction and factual basis for each such contention, including, but not limited to (if applicable), the level of ordinary skill in the art and the definition of the person of ordinary skill in the art at the time the invention was made and all prior art upon which Facebook relies, or intends to rely, in support of each such contention, including, but not limited to, a chart identifying specifically where each element of each claim of the '629 Patent is found in each prior art reference upon which Facebook intends to rely, and identify all documents in the possession, custody or control of, or available to, Facebook or any of its agents, which relate thereto.

**RESPONSE TO INTERROGATORY NO. 5**

In addition to its General Objections, Facebook objects to this interrogatory as compound and containing multiple subparts; this interrogatory will be counted as multiple interrogatories toward the maximum number of interrogatories allowed to XACP. Facebook objects to this interrogatory as a premature contention interrogatory. Facebook objects to this interrogatory on the ground that it is premature to the extent that it requires Facebook to provide "Facebook's proposed claim construction and factual basis for each such contention" prior to the date set forth for such disclosure in the Court's Pretrial Scheduling Order.

Subject to and without waiving its General Objections and the objections set forth above, Facebook cannot respond to this contention interrogatory until it has had a reasonable opportunity to consider Plaintiff's disclosures and responses to discovery requests concerning the '629 Patent, the identity of the claims Plaintiff is asserting, the nature of the alleged infringement of the '629 Patent, the construction of the asserted claims of the '629 Patent Plaintiff is proposing,

6

and the invention and priority dates of the '629 Patent upon which Plaintiff is relying. Facebook cannot respond to the portion of this interrogatory concerning unenforceability until it has obtained information through discovery concerning the named inventors, patent applicants and prosecuting attorneys involved in all applications that resulted in the issuance of the '629 Patent.

**INTERROGATORY NO. 6**

With respect to each Online Community Creation System and/or Created Online Community product or service made, used, licensed, offered for licensing, sold, or offered for sale by Facebook from January 1, 2004 to the present:

(a)     State the number of registered users and/or licensees of such Online Community Creation Systems and/or Created Online Communities;

(b)     State the number of Created Online Communities (including Facebook Groups) created by registered users and/or licensees of such Online Community Creation Systems and/or Created Online Communities;

(c)     Identify each Created Online Community (including Facebook Groups) created by registered users and/or licensees of such Online Community Creation Systems and/or Created Online Communities Online Communities (sic);

(d)     State the revenues directly or indirectly derived by Facebook from such Created Online Communities (including Facebook Groups), including but not limited to such revenues derived from advertising;

(e)     State the profits earned by Facebook on such Created Online Communities (including Facebook Groups), including a detailed explanation of the methodology that is being used to allocate overhead to the calculation of profit; and

(f)     Identify the person or persons most knowledgeable with respect to the revenues and profits derived from such Created Online Communities (including Facebook Groups) and the profits derived therefrom.

## INTERROGATORY NO. 11

With respect to each Online Community Creation System and/or Created Online Community service or product identified or listed in the answers to these Interrogatories, as to which infringement is denied by Facebook, identify each element (including its claim construction and all intrinsic and extrinsic evidence that supports Facebook's proposed claim construction), feature, functional characteristic or other matter, if any, upon which Facebook intends to rely as a point of material difference from the systems or methods disclosed and claimed in the '629 Patent and describe the purpose and use of such feature, element functional characteristic or other matter.

## RESPONSE TO INTERROGATORY NO. 11

In addition to its General Objections, Facebook objects to this interrogatory as compound and containing multiple subparts; this interrogatory will be counted as multiple interrogatories toward the maximum number of interrogatories allowed to XACP. Facebook

objects to this interrogatory as a premature contention interrogatory. Facebook objects to this interrogatory on the ground that it is premature to the extent that it requires Facebook to provide its "claim construction and all intrinsic and extrinsic evidence that supports Facebook's proposed claim construction" prior to the deadline for disclosing such information set forth in the Court's Pretrial Scheduling Order. Facebook objects to the use of the terms "Online Community Creation System" and "Created Online Community" as vague, ambiguous, overly broad and unduly burdensome, and will assume for the purpose of responding to this interrogatory that Plaintiff is referring to Facebook's Groups application.

Subject to and without waiving its General Objections and the objections set forth above, Facebook cannot respond to this contention interrogatory until it has had a reasonable opportunity to consider Plaintiff's disclosures and responses to discovery requests concerning the claims of the '629 Patent Plaintiff is asserting, the products Plaintiff is accusing of infringing the '629 Patent, the construction of the asserted claims of the '629 Patent Plaintiff is proposing, and the priority date of the '629 Patent Plaintiff is relying upon. Facebook will provide its claim construction and related information at the deadline for doing so under the Court's Pretrial Scheduling Order and reserves the right to supplement this interrogatory after it has had a chance to review and analyze its defenses in light of Plaintiff's disclosures.

**INTERROGATORY NO. 12**

Identify and describe fully and in detail, including, but not limited to, Facebook's proposed claim construction (and all extrinsic and intrinsic evidence that supports such construction), every feature, limitation, and element, including each element that Facebook contends is governed by 35 U.S.C. § 112(6), if any, of each of the claims and elements of the '629 Patent which Facebook contends is not found in each of the systems and/or methods of any Online Community Creation System and/or Created Online Community made, used, licensed, offered for licensing, sold, or offered for sale by Facebook from January 1, 2004 to the present, and upon which Facebook intends to rely as a point of material difference in the defense of this suit.

**INTERROGATORY NO. 14**

Identify all persons having knowledge of the facts set forth in the complaint, answer and counterclaims in the instant action and for each such person, identify the knowledge that he or she possesses.

**RESPONSE TO INTERROGATORY NO. 14**

In addition to the General Objections, Facebook objects to this interrogatory as overly broad and unduly burdensome in that it seeks the identities of persons regardless of the extent of their knowledge on the subject areas listed. Facebook objects tot his interrogatory as duplicative of requests made elsewhere in these interrogatories.

Date: October 17, 2007                 WHITE & CASE LLP

By_____

Attorneys for Defendants
FACEBOOK, INC. and THEFACEBOOK, LLC

**Exhibit B**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | CIVIL ACTION NO. 07-CV- 02768 |
| Plaintiff, | |
| v. | HON. JOHN R. PADOVA |
| FACEBOOK, INC. and THEFACEBOOK, LLC., | JURY TRIAL DEMANDED |
| Defendants. | |

## DEFENDANTS FACEBOOK, INC. AND THEFACEBOOK, LLC.'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFF CROSS ATLANTIC CAPITAL PARTNERS, INC.'S FIRST SET OF INTERROGATORY NOS. 3, 5 AND 12

Pursuant to Federal Rules of Civil Procedure 33 and 26(e), defendants Facebook, Inc. and Thefacebook, LLC. (collectively "Facebook") submit the following supplemental responses and objections to the First Set of Interrogatories served by plaintiff Cross Atlantic Capital Partners, Inc. ("XACP"):

## GENERAL OBJECTIONS

1.      Facebook objects to each interrogatory to the extent it purports to require Facebook to do anything beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court and other applicable law.

2.      Facebook objects to each interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine and/or any other applicable privilege or immunity.

3.      Facebook objects to each interrogatory to the extent it is phrased in a manner that would render it overly broad, vague, or ambiguous, or require subjective judgment

or speculation on the part of Facebook. Facebook responds to these interrogatories by construing them in light of the scope of the issues in this action.

4.     Facebook objects to each interrogatory to the extent it seeks to elicit information that is subject to a right of privacy under the relevant provisions of federal and state law.

5.     Facebook objects to each interrogatory to the extent it seeks to elicit information that comprises third-party confidential information.

6.     Facebook objects to each interrogatory to the extent it purports to place an obligation on Facebook to obtain information that is as readily available to XACP as it is to Facebook.

7.     Facebook objects to each interrogatory to the extent it calls for information not in the possession, custody or control of Facebook.

8.     The following responses are based on information reasonably available to Facebook as of the date of this response. Facebook's investigation is continuing and ongoing and Facebook expressly reserves the right to revise and/or supplement its responses.

9.     Facebook objects to each interrogatory to the extent it seeks privileged information originating on or subsequent to the commencement of this lawsuit. Given the burden and expense involved to Facebook in creating a privilege log in accordance with Instruction No. 4, Facebook objects to logging information originating on or subsequent to the commencement of this lawsuit.

10.     These General Objections shall be deemed incorporated in full into each of the individual responses set forth below.

## OBJECTIONS TO DEFINITIONS

1.     Facebook objects to the interrogatories to the extent they incorporate the terms "Online Community Creation System and/or Created Online Community" on the grounds that XACP's definition of these terms is vague and ambiguous. XACP's definition of these terms is also overly broad and unduly burdensome in that: a) it encompasses systems and

communities completely unrelated to Facebook or its services; b) it imposes on Facebook an improper and impossible burden of providing information that far exceeds the functionality of the accused product which is at issue in this case; and c) it attempts to capture information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Facebook's responses to defendant's interrogatories are made with the understanding that "Online Community Creation System and/or Created Online Community" refers to the "Groups" application of the Facebook website. By doing so, Facebook does not agree that Facebook Groups meets the definition of "Online Community Creation System and/or Created Online Community" proffered by Plaintiff.

<b>SPECIFIC OBJECTIONS AND RESPONSES</b>

## INTERROGATORY NO. 3

State whether Facebook has ever made, or ever caused to be made, any search of prior art relating to the subject matter of the '629 Patent, and if so:

(a) Identify each document that refers to, relates to, or comments upon such search including each item of prior art uncovered by such search; and

(b) Identify each person who requested such search and who was in any way involved with such search.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3

Facebook incorporates by reference its original Objections and Response to Interrogatory No. 3. Facebook and its counsel have conducted searches for prior art pertaining to the subject matter of the '629 patent. These searches were conducted by and at the direction of counsel for Facebook, after the filing of the Complaint in this action. Accordingly, the details sought by this Interrogatory relating to prior art searches are protected by the attorney-client privilege and attorney work product doctrine. Facebook has identified the prior art it contends invalidates one or more claims of the '629 patent in its response to Interrogatory No. 5.

## INTERROGATORY NO. 5

If you contend that any claim of the '629 Patent is invalid or unenforceable for any reason, including, but not limited to, obviousness, provided (sic) the complete legal basis, including Facebook's proposed claim construction and factual basis for each such contention, including, but not limited to (if applicable), the level of ordinary skill in the art and the definition of the person of ordinary skill in the art at the time the invention was made and all prior art upon which Facebook relies, or intends to rely, in support of each such contention, including, but not limited to, a chart identifying specifically where each element of each claim of the '629 Patent is found in each prior art reference upon which Facebook intends to rely, and identify all documents in the possession, custody or control of, or available to, Facebook or any of its agents, which relate thereto.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5

Facebook incorporates its original Objections and Response to Interrogatory No. 5. Facebook maintains that this Interrogatory is because premature Facebook has not had a full opportunity to take discovery regarding the invalidity and unenforceability of the '629 patent, including obtaining documents and testimony from the named inventors. This Interrogatory seeks, for example, "the person of ordinary skill in the art at the time the invention was made and all prior art upon which Facebook relies," but XACP has refused to specify the invention date for any claim of the '629 patent in response to Facebook's interrogatories. No claim construction order has been issued in this case. Facebook therefore reserves its right to further supplement response to this interrogatory after discovery, receipt of responsive materials from XACP, and other developments in the case. Subject to and without waiving its objections, Facebook responds as follows:

With respect to claims 8, 16, 24 and 32, these claims are indefinite under 35 U.S.C. § 112 ¶ 2 because it cannot be determined from the claims in light of the written description, for example, whether these claims require at least one other community, user and product, only one of the three or some undisclosed combination; how the required comparison is

carried out. With respect to claims 13-16 and 29-32, these claims are indefinite under 35 U.S.C. § 112 ¶ 2 because the claims recite a system and the use of that system in a particular manner. *See generally IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005).

All claims of the '629 patent are invalid because each independent claim recites either the receipt or transmission of "a creation transmission, the creation transmission indicating the desire to create a community." This limitation is not disclosed in the written description of the '629 patent as required by 35 U.S.C. § 112 ¶ 1, rendering all claims invalid. Claims 7, 15, 23, and 31 are invalid because the alleged feature recited in these claims (*i.e.* "accessing the at least one subscription object through the one of the at least one application object maintains all of the original features of the subscription object") is not disclosed in the written description as required by 35 U.S.C.§ 112 ¶ 1. Claim 4, 12, 20 and 28 are invalid because they recite features (*e.g.* "voice chat application object," "video conferencing application object") that have no support in the written description as required by 35 U.S.C. § 112 ¶ 1.

For purposes of assessing the lack of novelty and non-obviousness of the claims of the '629 patent, the claims are entitled to an effective priority date of no earlier than February 25, 2000. The application for the '629 patent was filed on October 2, 2001, as a divisional of U.S. Patent Appl. Ser. No. 09/513,844 ("'844 Application"), filed Feb. 25, 2000, which in turn was a continuation-in-part of U.S. Patent Appl. Ser. No. 09/264,988 ("'988 Application"), filed September 15, 1998. Each limitation of each claim of the '629 patent recites a part of either a method or system for creating a community in which users can interact. Communities, and the methods and systems used to create them, were introduced only with the filing of the '844 Application. *See e.g.*, '844 Application, page 14 and figure 2. No limitation of the issued claims of the '629 patent is supported by the earlier '988 Application. The claims of '629 patent are entitled to an effective priority date of no earlier than February 25, 2000 under 35 U.S.C. § 120.

For purposes of this response only, Facebook assumes that a person having ordinary skill in the art at the time of the invention (February 25, 2000) would have at least a Bachelors in Science in Computer Science or Electrical Engineering and at least four years of

experience. Such a person would be generally familiar with the design and operation of websites, electronic mail programs such as Microsoft Outlook and Lotus Notes, and would have familiarity with the features and capabilities of popular prior art workgroup collaboration software packages such as Lotus Notes and Microsoft Netmeeting.

The claims of the '629 patent are invalid because they lack novelty and/or non-obviousness under 35 U.S.C. §§ 102, 103. The alleged invention of these claims is anticipated or obvious in view of at least the following prior art references:

- U.S. Patent No. 5,008,853 to Sara A. Bly et al. ("Bly '853").[1]

- U.S. Patent No. 5,206,934 to Frederick E. Naef ("Naef '934").

- U.S. Patent No. 5,363,507 to Toshiyuki Nakayama et al. ("Nakayama '507").

- U.S. Patent No. 5,392,400 to David B. Berkowitz et al. ("Berkowitz '400").

- U.S. Patent No. 5,471,318 to Sudhir R. Ahuja et al. ("Ahuja '318").

- U.S. Patent No. 5,539,886 to Barry K. Aldred et al. ("Aldred '886").

- U.S. Patent No. 5,572,582 to Guy G. Riddle et al. ("Riddle '582").

- U.S. Patent No. 5,617,539 to Lester F. Ludwig et al. ("Ludwig '539").

- U.S. Patent No. 5,649,105 to Barry Aldred et al. ("Aldred '105").

- U.S. Patent No. 5,724,508 to Daniel L. Harple, Jr. et al. ("Harple '508").

- U.S. Patent No. 5,793,365 to John Tang et al. ("Tang '365").

- U.S. Patent No. 5,861,883 to Genarro A. Cuomo et al. ("Cuomo '883").

- U.S. Patent No. 5,892,909 to Charles A. Grasso et al. ("Grasso '909").

- U.S. Patent No. 5,909,543 to Kenichiro Tanaka et al. ("Tanaka '543").

- U.S. Patent No. 5,950,200 to Gill S. Sudai et al. ("Sudai '200").

- U.S. Patent No. 5,960,406 to Richard A. Rasansky et al. ("Rasansky '406").

- U.S. Patent No. 6,016,478 to Qili Zhang et al. ("Zhang '478").

---

[1] Some of the U.S. patents cited as prior art references in the text refer on their face to foreign counterpart applications that share substantially identical written descriptions. In such instances, Facebook will make available a copy of foreign counterpart applications to the extent they are in Facebook's possession. A separate chart will be provided for foreign counterparts only to the extent their disclosures are materially different from the U.S. patent.

- U.S. Patent No. 6,018,774 to Neil L. Mayle et al. ("Mayle '774").

- U.S. Patent No. 6,064,977 to Paul Haverstock et al. ("Haverstock '977").

- U.S. Patent No. 6,078,948 to Marek Podgorny et al. ("Podgorny '948").

- U.S. Patent No. 6,167,432 to B. Jiang ("Jiang '432").

- U.S. Patent No. 6,175,831 to Andrew F. Weinreich et al. ("Weinreich '831").

- U.S. Patent No. 6,223,177 to Charles Tatham et al. ("Tatham '177").

- U.S. Patent No. 6,272,214 to Bjorn Jonsson ("Jonsson '214").

- U.S. Patent No. 6,336,133 to Harry W. Morris ("Morris '133").

- U.S. Patent No. 6,339,586 to Martin Yates et al. ("Yates '586").

- U.S. Patent No. 6,363,352 to Jane L. Dailey et al. ("Dailey '352").

- U.S. Patent No. 6,356,909 to Jeffrey S. Spencer ("Spencer '909").

- U.S. Patent No. 6,560,707 to Pavel Curtis et al. ("Curtis '707").

- U.S. Patent No. 6,563,914 to Michael J. Sammon et al. ("Sammon '914").

- U.S. Patent No. 6,584,493 to Laura Butler et al. ("Butler '493").

- U.S. Patent No. 6,608,636 to Robert D. Roseman ("Roseman '636").

- U.S. Patent No. 6,629,129 to Matthew D. Bookspan et al. ("Bookspan '129").

- U.S. Patent No. 6,661,822 to Brian B. Beams et al. ("Beams '822").

- U.S. Patent No. 6,728,784 to Shane D. Mattaway et al. ("Mattaway '784").

- U.S. Patent No. 6,750,881 to Barry Appelman ("Appelman '881").

- U.S. Patent No. 6,766,942 to Kia Silverbrook et al. ("Silverbrook '942").

- U.S. Patent No. 6,976,220 to Paul Lapstun et al. ("Lapstun '220").

- U.S. Patent No. 7,136,062 to Laura J. Butler ("Butler '062").

- European Patent App. No. 91300772.0, published as EP 0 497 022 A1 to Richard Jennings et al. ("Jennings '022").

- M. Chen et al., *Software Architecture of DiCE: A Distributed Collaboration Environment.* Multimedia Communications, 1992, 4th IEEE ComSoc International Workshop on Multimedia, pp 172-185 (April 1992); M. Chen et al., *Software*

*Architecture of DiCE: A Distributed Collaboration Environment*, ACM SIGCOMM Computer Communication Review, Vol. 22, Issue 3 (July 1992), pp. 51-52 (collectively "Chen").

- Curt Degenhart et al., *AOL In a Nutshell: A Desktop Guide to America Online* (O'Reilly ed. 1998) ("Degenhart").

- Erfert Fenton, *America Online Bible* (IDG Books ed. 1998) ("Fenton").

- America Online service, on sale and in public use in the United States prior to September 15, 1997 ("AOL").

- Hania Gajewska et al., *The Argo Telecollaboration System*, DEC Digital Systems Research Center, 1994, one page description and video, from Proceedings of the Second ACM International Conference on Multimedia, San Francisco, CA, p. 486 (1994).[2]

- Hania Gajewska et al., *Argo: A System for Distributed Collaboration*, Proceedings of the Second ACM International Conference on Multimedia, San Francisco, CA, pp. 433-440 (1994) ("Gajewska").

- *Aspects 1.02 Software for Real-Time Document Collaboration*, Video Demonstration (videotape of commercial product), pre-1992.

- M. Handley et al., CCCP: Conference Control Channel Protocol: A Scalable Base for Building Conference Control Applications, Proc. of SIGCOM 95, 1995 ACM Press, NY (August 1995) ("Handley").

- N. Borenstein, Computational mail as network infrastructure for computer-supported cooperative work, Proceedings of the 1992 ACM Conference on Computer-supported Cooperative Work ("Borenstein").

- Sunil K. Sarin, *Interactive On-Line Conferences* (Ph.D Thesis), June 1984, Massachusetts Institute of Technology ("Sarin Ph.D").

---

[2] Video materials are not being listed in the chart attached as Appendix A because it would be impractical to do so, but are being made available to XACP in discovery.

- Sunil K. Sarin et al., *Software for Interactive On-Line Conferences*, Proceedings of the Second ACM-SIGOA Conference on Office Information Systems, pp. 46-58 (1984) ("Sarin ACM").

- Sunil K. Sarin et al., *Computer-Based Real-Time Conferencing Systems*, IEEE Computer, 18(10), pp. 33-49 (October 1985) ("Sarin IEEE").

- M. A. Sasse et al., *Multimedia Conferencing over the Internet - The MICE Project*. Library & Information Systems Briefings, Issue 58, pp. 1-15 (March 1995) ("Sasse").

- Eve M. Schooler, *A Distributed Architecture for Multimedia Conference Control*, ISI Research Report, ISI/RR-91-289, Nov. 1991, Information Sciences Institute, University of Southern California, Marina del Rey ("Schooler MCC").

- Eve M. Schooler, The Connection Control Protocol: Architecture Overview. Version 1.0. Jan 28, 1992 ("Schooler CCP-Architecture").

- Eve M. Schooler, *The Connection Control Protocol: Specification.* Version 1.0. Jan 29, 1992 ("Schooler CCP-Specification").

- Eve M. Schooler, *Case Study: Multimedia Conference Control in a Packet-Switched Teleconferencing System*, Journal of Internetworking: Research and Experience, Vol. 4, No. 2 (June 1993) 99-120. Also as ISI Reprint Series ISI/RS-93-359, Aug 1993 ("Schooler Case").

- S.R. Ahuja et al., *A Comparison of Application Sharing Mechanisms in Real-Time Desktop Conferencing Systems*, ACM SIGOIS Bulletin. Vol. 11, No. 2-3. pp 238-248 (April 1990) ("Ahuja '90").

- J.R. Ensor et al., *The Rapport Multimedia Conferencing System-a Software Overview*, Proc. 2nd IEEE Conference on Computer Workstations, Santa Clara, CA. pp. 52-58, March 7-10, 1988 ("Ensor '88").

- J.R. Ensor et al., Control Issues in Multimedia Conferencing. Proceedings of TRICOMM '91. pp. 133-143. April 18-19, 1991 ("Ensor '91").

- Nadia Kausar et al., *An Architecture of Conference Control Function*, Proceedings of Photonics East, Boston, MA (Sept. 1999), SPIE ("Kausar").

- Clarence A. Ellis et al., *Design and Use of a Group Editor*, Proc. Working Conference on Engineering for Human-Computer Interaction, IFIP Working Group TC 2 / WG 2.7. Napa Valley, CA, pp. 1-13. G. Cockton (Ed.) ("Ellis").

- M. Roseman et al., *Building Groupware with GroupKit*, in M. Harrison (ed.) TCL/TK Tools, pp. 535-564 (O'Reilly ed. 1997) ("GroupKit TCL").

- M. Roseman et al., *Building Real-Time Groupware with GroupKit, A Groupware Toolkit*, ACM Transactions on Computer-Human Interaction (TOCHI), Vol. 3, Issue 1, pp. 66-106 (1996) ("GroupKit TOCHI").

- S. Greenberg et al., *GroupWeb: A Groupware Web Browser* (abstract and video), Proceedings of the 1996 ACM Conference on Computer Supported Cooperative Work, Boston, MA, p. 7 (1996).

- GroupKit Groupware Toolkit, in public use in the United States no later than 1996 ("GroupKit"), which is described in the papers identified above and others that will be made available to XACP in discovery.[3]

---

[3] GroupKit is described in a number of publications in addition to those listed in the text, including: M. Roseman et al., *GroupKit: A groupware toolkit for building real-time conferencing applications*, Proceedings of the ACM CSCW Conference on Computer Supported Cooperative Work, Toronto, Canada. pp. 43-50. ACM Press, November 1-4, 1992; M. Roseman et al., *User-Centered Design of Interface Toolkits*, 1993, Research Report 93/501/06, Department of Computer Science, University of Calgary, Calgary, Canada, http://pharos.cpsc.ucalgary.ca/; M. Roseman, *GroupKit User's Guide and Reference Manual* (aka GroupKit User's Guide) (1993), Technical Report 1993-509-14, March 1, Department of Computer Science, University of Calgary, http://pharos.cpsc.ucalgary.ca/; M. Roseman et al., *The GroupKit Reference Manual* (aka *Groupkit Infrastructure Manual: A Guide to its Architecture, Interprocess Communications, and Programs*), Technical Report, April 1993, Department of Computer Science, University of Calgary. http://grouplab.cpsc.ucalgary.ca/papers/; M. Roseman et al., *GroupKit Tutorial*, Department of Computer Science, University of Calgary, http://grouplab.cpsc.ucalgary.ca/papers/; M. Roseman, *Design of a Real-Time Groupware Toolkit*, M.Sc Thesis, Department of Computer Science, University of Calgary, February 1993 (also as Research Report 1993-515-20, Dept of Computer Science, University of Calgary, March 1993); M. Roseman et al., Building Flexible Groupware Through Open Protocols, 1993, Proceedings of the ACM Conference on Organizational Computing Systems, California; S. Greenberg et al., *Groupware Toolkits for Synchronous Work*, in M. Beaudouin-Lafon, editor, *Computer-Supported Cooperative Work* (Trends in Software 7), Chapter 6, p135-168, John Wiley & Sons Ltd, ISBN 0471 96736 X. 258pp (1999) (earlier version as: Technical Report 1996/589/09, Department of Computer Science, University of Calgary, Calgary, Alberta, Canada, Oct. 1, 1996). These publications will be made available to XACP for inspection and copying.

- M. Roseman, Managing Complexity in TeamRooms, a TCL-Based Internet Groupware Application, Proceedings of the 1996 Tcl/Tk Workshop, Usenix Press; M. Roseman et al., TeamRooms, Network Places for Collaboration, Proceedings of ACM Conference on Computer Supported Cooperative Work, pp. 325-333, ACM Press (1996) (collectively "Roseman").

- M. Roseman et al., A Tour of TeamRooms, Proceedings of ACM SIGCHI '97 Conference on Human Factors in Computing Systems, March 22-27, 1997 (Video demonstration).

- Microsoft Outlook 98 including Microsoft NetMeeting (commercial product), on sale and in public use in the United States no later than 1997, in addition to and as described in Catapult Press, *Microsoft Outlook 98: Step by Step* (Microsoft Press ed. 1998); Bob Summers, *Official Microsoft NetMeeting Book* (Microsoft Press ed. 1998) ("Summers"); Alan Neibauer, *Running Microsoft Outlook 98* (Microsoft Press ed. 1998) ("Neibauer") (collectively "Outlook 98").

- Yahoo! Clubs, in public use in the United States no later than August 1998 ("Yahoo! Clubs").

- Excite Communities, in public use in the United States no later than August 1998 ("Excite Communities").

- Commissioner.com website, in public use in the United States prior to September 15, 1997.

- Six Degrees social networking website (sixdegrees.com), in public use in the United States prior to September 15, 1997.

- PlanetAll social networking website (planetall.com), in public use in the United States prior to September 15, 1997.

- Classmates.com social networking website, in public use in the United States prior to September 15, 1997.

Facebook has produced non-privileged documents constituting and describing these prior art references. The claim chart contained in Appendix A, served concurrently herewith and incorporated herein by reference, identifies where each limitation of each claim of the '629 patent can be found in the prior art. The prior art chart indicates, for each limitation of each claim, one location in a particular cited prior art reference at which the limitations of a given claim element may be found. The charts do not necessarily indicate every location within a particular prior art reference at which a given claim element may be found. In many instances, the chart indicates that a limitation may be found separately in several different references— hence the multiple citations for particular elements. The fact that multiple prior art references may be cited for a particular limitation is not intended to indicate that the limitation is found only through the combination. Rather, each citation fully discloses the limitation to which it refers. Accordingly, where a prior art reference is cited against a claim listed in Appendix A, and unless otherwise noted in the chart, that reference anticipates the claim under 35 U.S.C. § 102.

Claims 1, 9, 17, and 25 are anticipated by each of: Bly '853; Naef '934; Nakayama '507; Berkowitz '400; Ahuja '318; Aldred '886; Riddle '582; Ludwig '539; Aldred '105; Harple '508; Tang '365; Cuomo '883; Grasso '909; Tanaka '543; Sudai '200; Rasansky '406; Zhang '478; Mayle '774; Haverstock '977; Podgorny '948; Jiang '432; Weinreich '831; Tatham '177; Jonsson '214; Morris '133; Yates '586; Dailey '352; Spencer '909; Curtis '707; Sammon '914; Butler '493; Roseman '636; Bookspan '129; Mattaway '784; Appelman '881; Lapstun '220; Butler '062; Jennings '022; Ahuja '90; Ensor '88; Ensor '91; Chen; Degenhart; Fenton; AOL; Gajewska; Handley; Borenstein; Sarin Ph.D; Sarin ACM; Sarin IEEE; Sasse; Schooler MCC; Schooler CCP-Architecture; Schooler CCP-Specification; Schooler Case; Kausar; Ellis; GroupKit TCL; GroupKit TOCHI; GroupKit; Roseman; Summers; Neibauer; Outlook 98; Yahoo! Clubs; Excite Communities; Commissioner.com.

Claims 2, 10, 18, and 26 are anticipated by each of: Bly '853; Naef '934; Nakayama '507; Berkowitz '400; Ahuja '318; Aldred '886; Riddle '582; Ludwig '539; Aldred '105; Harple '508; Tang '365; Cuomo '883; Grasso '909; Tanaka '543; Sudai '200; Rasansky

'406; Zhang '478; Mayle '774; Haverstock '977; Podgorny '948; Jiang '432; Weinreich '831; Tatham '177; Jonsson '214; Morris '133; Yates '586; Dailey '352; Spencer '909; Curtis '707; Sammon '914; Butler '493; Roseman '636; Bookspan '129; Mattaway '784; Appelman '881; Lapstun '220; Butler '062; Jennings '022; Ahuja '90; Ensor '88; Ensor '91; Chen; Degenhart; Fenton; AOL; Gajewska; Handley; Borenstein; Sarin Ph.D; Sarin ACM; Sarin IEEE; Sasse; Schooler MCC; Schooler CCP-Architecture; Schooler CCP-Specification; Schooler Case; Kausar; Ellis; GroupKit TCL; GroupKit TOCHI; GroupKit; Roseman; Summers; Neibauer; Outlook 98; Yahoo! Clubs; Excite Communities; Commissioner.com.

Claims 3, 11, 19 and 27 are anticipated by each of: Bly '853; Naef '934; Nakayama '507; Berkowitz '400; Ahuja '318; Ludwig '539; Harple '508; Tang '365; Grasso '909; Tanaka '543; Sudai '200; Rasansky '406; Zhang '478; Mayle '774; Haverstock '977; Weinreich '831; Tatham '177; Jonsson '214; Morris '133; Yates '586; Dailey '352; Spencer '909; Sammon '914; Roseman '636; Bookspan '129; Mattaway '784; Appelman '881; Lapstun '220; Butler '062; Degenhart; Fenton; AOL; Gajewska; Handley; Borenstein; Sasse; Schooler MCC; Schooler CCP-Architecture; GroupKit; Summers; Neibauer; Outlook 98; Yahoo! Clubs; Excite Communities; Commissioner.com.

Claims 4, 12, 20, and 28 are anticipated by each of: Bly '853; Naef '934; Nakayama '507; Berkowitz '400; Ahuja '318; Aldred '886; Riddle '582; Ludwig '539; Aldred '105; Harple '508; Tang '365; Cuomo '883; Grasso '909; Tanaka '543; Sudai '200; Rasansky '406; Zhang '478; Mayle '774; Haverstock '977; Podgorny '948; Jiang '432; Weinreich '831; Tatham '177; Jonsson '214; Morris '133; Yates '586; Dailey '352; Spencer '909; Curtis '707; Sammon '914; Butler '493; Bookspan '129; Mattaway '784; Appelman '881; Lapstun '220; Butler '062; Jennings '022; Ahuja '90; Ensor '88; Ensor '91; Chen; Degenhart; Fenton; AOL; Gajewska; Handley; Sarin Ph.D; Sarin ACM; Sarin IEEE; Sasse; Schooler MCC; Schooler CCP-Architecture; Schooler CCP-Specification; Schooler Case; Kausar; Ellis; GroupKit TCL; GroupKit TOCHI; GroupKit; Roseman; Summers; Neibauer; Outlook 98; Yahoo! Clubs; Excite Communities; Commissioner.com.

Claims 5, 13, 21, and 29 are anticipated by each of: Bly '853; Naef '934; Nakayama '507; Berkowitz '400; Ahuja '318; Aldred '886; Riddle '582; Ludwig '539; Aldred '105; Harple '508; Tang '365; Cuomo '883; Grasso '909; Tanaka '543; Sudai '200; Rasansky '406; Zhang '478; Mayle '774; Haverstock '977; Podgorny '948; Weinreich '831; Tatham '177; Morris '133; Yates '586; Dailey '352; Spencer '909; Curtis '707; Butler '493; Roseman '636; Bookspan '129; Mattaway '784; Appelman '881; Lapstun '220; Butler '062; Jennings '022; Ahuja '90; Ensor '88; Ensor '91; Chen; Degenhart; Fenton; AOL; Gajewska; Handley; Sarin Ph.D; Sarin ACM; Sasse; Schooler MCC; Schooler CCP-Architecture; Schooler Case; Kausar; Ellis; GroupKit TCL; GroupKit TOCHI; GroupKit; Roseman; Summers; Neibauer; Outlook 98; Yahoo! Clubs; Excite Communities; Commissioner.com.

Claims 6, 14, 22, and 30 are anticipated by each of: Bly '853; Naef '934; Nakayama '507; Berkowitz '400; Ahuja '318; Aldred '886; Riddle '582; Ludwig '539; Aldred '105; Harple '508; Tang '365; Cuomo '883; Grasso '909; Tanaka '543; Sudai '200; Rasansky '406; Zhang '478; Mayle '774; Podgorny '948; Weinreich '831; Tatham '177; Morris '133; Yates '586; Dailey '352; Spencer '909; Curtis '707; Butler '493; Roseman '636; Bookspan '129; Mattaway '784; Appelman '881; Lapstun '220; Butler '062; Jennings '022; Ahuja '90; Ensor '88; Ensor '91; Chen; Degenhart; Fenton; AOL; Gajewska; Handley; Sarin Ph.D; Sarin ACM; Sarin IEEE; Sasse; Schooler MCC; Schooler CCP-Architecture; Schooler Case; Kausar; Ellis; GroupKit TCL; GroupKit TOCHI; GroupKit; Roseman; Summers; Neibauer; Outlook 98; Yahoo! Clubs; Excite Communities; Commissioner.com

Claims 7, 15, 23, and 31 are anticipated by each of: Bly '853; Naef '934; Nakayama '507; Berkowitz '400; Ahuja '318; Aldred '886; Riddle '582; Ludwig '539; Aldred '105; Harple '508; Tatham '177; Cuomo '883; Grasso '909; Tanaka '543; Rasansky '406; Zhang '478; Mayle '774; Podgorny '948; Weinreich '831; Tatham '177; Morris '133; Yates '586; Dailey '352; Spencer '909; Curtis '707; Butler '493; Roseman '636; Bookspan '129; Mattaway '784; Appelman '881; Lapstun '220; Butler '062; Jennings '022; Ahuja '90; Ensor '88; Ensor '91; Chen; Degenhart; Fenton; AOL; Gajewska; Handley; Sarin Ph.D; Sarin ACM; Sarin IEEE;

Sasse; Schooler MCC; Schooler CCP-Architecture; Schooler Case; Kausar; Ellis; GroupKit TCL; GroupKit TOCHI; GroupKit; Roseman; Summers; Neibauer; Outlook 98; Yahoo! Clubs; Excite Communities; Commissioner.com.

Claims 8, 16, 24 and 32 are anticipated by each of: Bly '853; Naef '934; Nakayama '507; Berkowitz '400; Ahuja '318; Aldred '886; Riddle '582; Ludwig '539; Aldred '105; Harple '508; Tang '365; Cuomo '883; Grasso '909; Tanaka '543; Sudai '200; Rasansky '406; Zhang '478; Mayle '774; Jiang '432; Weinreich '831; Tatham '177; Morris '133; Yates '586; Dailey '352; Spencer '909; Curtis '707; Sammon '914; Roseman '636; Bookspan '129; Mattaway '784; Appelman '881; Lapstun '220; Butler '062; Jennings '022; Ahuja '90; Ensor '88; Ensor '91; Chen; Degenhart; Fenton; AOL; Gajewska; Handley; Sarin Ph.D; Sarin ACM; Sarin IEEE; Sasse; Schooler MCC; Schooler CCP-Architecture; Ellis; GroupKit TCL; GroupKit TOCHI; GroupKit; Roseman; Summers; Neibauer; Outlook 98; Yahoo! Clubs; Excite Communities; Commissioner.com.

To the extent a prior art reference is not cited against a particular claim element, the missing element is nothing more than the predictable use of prior art elements according to their established functions. Such references can be combined with any other applicable reference to render the claim obvious under 35 U.S.C. § 103. The references identified in Appendix A deal with creating communities for group chat, instant messaging, whiteboarding, and general workgroup collaboration, which are closely related to the subject matter of the '629 patent. One of ordinary skill in the art at the time of the alleged invention would have certainly been motivated to combine any of these closely related references to render the claims of the '629 patent invalid under 35 U.S.C. § 103.

Based on the extremely broad manner in which XACP is attempting to apply the claims of the '629 patent, the universe of potential prior art is vast. Facebook has conducted a reasonable and diligent search for relevant prior art and its search is ongoing. Facebook reserves its right to supplement its response to this Interrogatory once XACP provides adequate responses to Facebook discovery seeking the priority and invention dates of the '629 patent, in the event

XACP modifies the manner it which applies the '629 patent, in the event Facebook locates additional information that bears on the invalidity and/or unenforceability of the '629 patent, in light of expert discovery and expert analysis.

## INTERROGATORY NO. 11

With respect to each Online Community Creation System and/or Created Online Community service or product identified or listed in the answers to these Interrogatories, as to which infringement is denied by Facebook, identify each element (including its claim construction and all intrinsic and extrinsic evidence that supports Facebook's proposed claim construction), feature, functional characteristic or other matter, if any, upon which Facebook intends to rely as a point of material difference from the systems or methods disclosed and claimed in the '629 Patent and describe the purpose and use of such feature, element functional characteristic or other matter.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11

Facebook incorporates by reference its original Objections and Response to Interrogatory No. 11. Facebook objects to the use of the terms "Online Community Creation System" and "Created Online Community" as vague, ambiguous, overly broad and unduly burdensome, and will assume for the purpose of responding to this interrogatory that Plaintiff is referring to the functionality of the Facebook Groups application identified in XACP's Response to Facebook Interrogatory No. 1, dated October 17, 2007 (hereafter "XACP's Infringement Contentions"). Subject to and without waiving its objections, Facebook responds as follows:

Facebook provided its claim construction and related information on December 10, 2007 in accordance with the Court's Pretrial Scheduling Order.

Facebook's accused Groups application does not infringe the '629 patent because it does not contain or practice all limitations of any claim, either literally or under the doctrine of equivalents. The patent laws further provide that a dependent claim "shall be construed to incorporate by reference all of the limitations of the claim to which it refers," 35 U.S.C. § 112

## CERTIFICATE OF SERVICE

I, Joel L. Dion, hereby certify that on this 3rd day of January, 2008, I caused a true and correct copy of the foregoing Defendants Facebook, Inc. and THEFACEBOOK, LLC Second Supplemental Responses to Plaintiff Cross Atlantic Capital Partners, Inc.'s First Set of Interrogatories Nos. 3, 5 and 12 to be served, by hand, upon counsel for plaintiff, as follows:

Frederick A. Tecce
McShea Tecce, P.C.
The Bell Atlantic Tower, 28th Floor
1717 Arch Street
Philadelphia, PA 19103

and by first class mail, postage pre-paid, upon counsel for plaintiff as follows:

Thomas J. Duffy, Esquire
Duffy & Keenan
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, PA. 19106

Joel L. Dion

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CROSS ATLANTIC CAPITAL      :
PARTNERS, INC.,      :    CIVIL ACTION
     :
         Plaintiff,      :    NO.: 07-CV-02768
     :
         vs.      :
     :
FACEBOOK, INC. and THEFACEBOOK, : 
LLC.,      :
         Defendants.      :

## DECLARATION OF FREDERICK A. TECCE IN
## OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

I, Frederick A. Tecce, make the following statements under penalty of perjury:

1.    I am counsel of record for plaintiff Cross Atlantic Capital Partners, Inc. ("XACP") in connection with the above-captioned matter. I make this Declaration in support of XACP's opposition to Defendants' Motion to Compel (D.E. # ).

2.    On Friday, February 15, 2008 at 1:00 p.m. (e.s.t.), co-counsel Patrick J. Keenan and I participated in an extended telephone conference with counsel for defendants Facebook, Inc. and Thefacebook, LLC (collectively "Facebook") Marc Weinstein and another individual from Mr. Weinstein's office.

3.    The primary purpose of this conference was to determine if the issues surrounding Facebook's objections to XACP's Rule 30(b)(6) Notice could be resolved without Court intervention.

4.    During that conference, the parties were able to significantly narrow the issues regarding Facebook's objections so that the Rule 30(b)(6) deposition could

proceed.

5.    After that, Mr. Keenan and I inquired as to whether there were any other discovery issues that could be addressed.

6.    At that time, Mr. Weinstein indicated that Facebook was still awaiting the production of documents from Robert Decklebaum, one of the named inventors that had been subpoenaed by Facebook.  In response to his request, we produced documents from Mr. Decklebaum on Tuesday, February 19, 2008.

7.    At no time during the February 15, 2008 telephone conference did Mr. Weinstein raise any of the issues addressed in Facebook's Motion to Compel filed at 11:00 p.m. (e.s.t.) that evening.

8.    Had Mr. Weinstein raised these issues, many, if not all of them, could have been resolved.

9.    For example, with respect to Facebook's motion to compel the production of documents, we would have advised Mr. Weinstein that XACP has produced all documents in its possession in any way related to iKimbo.

10.    When iKimbo ceased operations in approximately 2004, the company was closed and documents remained in Virginia.

11.    Sometime thereafter, some documents regarding iKimbo were transferred to XACP's office in Radnor, Pennsylvania.  The large majority of iKimbo documents were lost or destroyed well before the remaining documents were transferred to XACP.

-2-

12.	In response to Facebook's document request, every iKimbo document in XACP possession was produced.

13.	Further, XACP is willing to produce a chart showing XACP's structure.

14.	In addition, XACP is also willing to produce, and has produced, its consulting agreements with the named inventors.

15.	Accordingly, the issues raised by Facebook's motion to compel production are moot and could have readily been resolved had Mr. Weinstein advised us of Facebook's contentions during the February 15, 2008 conference call.

16.	Some time in late 2006, Facebook's attorneys hired a private investigator and found at least two of the named inventors, Jamey Harvey and Andrew Fegley.

17.	Shortly thereafter, Facebook's attorneys, including Mr. Weinstein, called Messrs. Harvey and Fegley and "threatened" that if they did not cooperate and answer his questions on the phone, Facebook would send a process server to their house and subpoena them.

18.	Both Mr. Fegley and Mr. Harvey felt threatened by Mr. Weinstein's conduct and sought assistance from XACP and its counsel.

19.	Shortly thereafter, our firm and Duffy & Keenan were retained to represent all of the named inventors in large part, to put an end to Facebook's lawyers threatening phone calls with the inventors.

20.	In a December 21, 2008 letter (Keefe Exhibit H) we advise Facebook of

that representation and further advised that we were authorized to accept service of subpoenas for the four named inventors.

21. Since then, Facebook has served subpoenas on all four named inventors. In response to those subpoenas, we have produced all documents in the inventors custody in any way related to iKimbo or the technology at issue WITHOUT objection.

22. Further, we have coordinated with the inventors to make them available for deposition at defendants' counsels' offices in Washington D.C. at mutually convenient dates and times.

23. To that end, Facebook has already deposed Mr. Harvey and had ample opportunity to question him regarding all issues including, but not limited to, the dates of conception and reduction to practice. In fact, Facebook's attorney did not use all of the allotted seven hours for a deposition provided by the Federal Rules of Civil Procedure.

The above statements are true and correct to the best of my knowledge, information and belief and are made under penalty of perjury.

Dated: March 3, 2008

**Frederick A. Tecce, Esquire**

# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CROSS ATLANTIC CAPITAL  
PARTNERS, INC.,  :    **CIVIL ACTION**
  :  
     Plaintiff, :    **NO.: 07-CV-02768**
  :  
     vs. : 
  :  
FACEBOOK, INC. and THEFACEBOOK, :  
LLC., :  
     Defendants. :

## DECLARATION OF PATRICK J. KEENAN IN
## OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

I, Patrick J. Keenan, make the following statements under penalty of perjury:

1.      I am counsel of record for plaintiff Cross Atlantic Capital Partners, Inc. ("XACP") in connection with the above-captioned matter.  I make this Declaration in support of XACP's opposition to Defendants' Motion to Compel (D.E. # ).

2.      On Friday, February 15, 2008 at 1:00 p.m. (e.s.t.), co-counsel Frederick A. Tecce and I participated in an extended telephone conference with counsel for defendants Facebook, Inc. and Thefacebook, LLC (collectively "Facebook") Marc Weinstein and another individual from Mr. Weinstein's office.

3.      The primary purpose of this conference was to determine if the issues surrounding Facebook's objections to XACP's Rule 30(b)(6) Notice could be resolved without Court intervention.

4.      During that conference, the parties were able to significantly narrow the issues regarding Facebook's objections so that the Rule 30(b)(6) deposition could

proceed.

5. After that, Mr. Tecce and I inquired as to whether there were any other discovery issues that could be addressed.

6. At that time, Mr. Weinstein indicated that Facebook was still awaiting the production of documents from Robert Decklebaum, one of the named inventors that had been subpoenaed by Facebook. In response to his request, we produced documents from Mr. Decklebaum on Tuesday, February 19, 2008.

7. At no time during the February 15, 2008 telephone conference did Mr. Weinstein raise any of the issues addressed in Facebook's Motion to Compel filed at 11:00 p.m. (e.s.t.) that evening.

8. Had Mr. Weinstein raised these issues, many, if not all of them, could have been resolved.

The above statements are true and correct to the best of my knowledge, information and belief and are made under penalty of perjury.


Dated: March 3, 2008

_____
**Patrick J. Keenan, Esquire**