IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | CIVIL ACTION |
| Plaintiff, | NO. 07-CV- 02768-JP |
| v. | |
| FACEBOOK, INC. and THEFACEBOOK, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

### FACEBOOK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

**I.    INTRODUCTION**

Defendants Facebook, Inc. and Thefacebook, LLC (collectively, "Facebook") seek an order preventing the deposition of Mark Zuckerberg, Founder, Chief Executive Officer ("CEO") and Chairman of the Board of Facebook. Mr. Zuckerberg heads one of the most high-profile technology companies in the United States. Plaintiff Cross Atlantic Capital Partners, Inc. ("XACP") noticed the deposition of Mr. Zuckerberg prior to noticing any other individual, and prior to taking any other depositions. XACP seeks to depose Mr. Zuckerberg, despite that fact that there are numerous other individuals at Facebook who are, and have been identified as, substantially more knowledgeable about the facts relevant to the subject matter of this litigation.

Clearly, XACP's notice is intended to harass, unreasonably burden and pressure Facebook, rather than for the legitimate purpose of discovering relevant information. Accordingly, Facebook moves for a protective order to prevent this deposition.

**II.    BACKGROUND**

On July 3, 2007, Plaintiff XACP filed a complaint for patent infringement against Facebook. XACP's complaint asserts that the Facebook website infringes United States Patent

No. 6,519,629 B2, entitled "System for Creating a Community of Users with Common Interests to Interact In" ("the '629 Patent"). XACP alleges that the Groups application on the Facebook website infringes Claims 1 to 32 of the '629 Patent. Even though Facebook is a corporation with its principal place of business in Palo Alto, California, on February 4, 2008, XACP noticed the deposition of Facebook's Chairman of the Board and CEO in Philadelphia, Pennsylvania. *See* Declaration of Mark R. Weinstein, at ¶ 2. Mr. Zuckerberg is Facebook's highest-ranking corporate officer. *See* Declaration of Mark Zuckerberg ("Zuckerberg Decl."), at ¶¶ 1-2. He is not listed in discovery responses as a person most knowledgeable. Despite this, he is the first named individual that XACP has sought to depose. *See* Declaration of Mark R. Weinstein, at ¶ 2.

### III. ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party,…" Fed. R. Civ. P. 26(b)(1). Such discovery, however, should be limited if the court determines that "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2).

Given these standards, courts have routinely granted protective orders where parties seek to take the deposition of highly placed executives. Under Rule 26(c) of the Federal Rules of Civil Procedure, courts are authorized and empowered, for good cause shown, to enter an order which justice requires to protect a person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Protective orders have been granted for a variety of reasons, including where the party seeking to take the deposition: 1) failed to meet its burden of demonstrating that the executive had unique or superior personal knowledge of discoverable information in relation to other employees; or 2) failed to exhaust less intrusive means prior to resorting to seeking deposition testimony. As explained below, a protective order

2

should be granted because XACP has neither met its burden, nor sought to minimize the burden on Facebook and Mr. Zuckerberg.

### A. XACP Failed To Meet Its Burden of Demonstrating That Mark Zuckerberg Has Unique or Superior Personal Knowledge of Discoverable Information.

The Eastern District of Pennsylvania and courts throughout the country have dramatically curtailed depositions of corporate officers or executives at the top or "apex" of the corporate hierarchy. *See, e.g., Roman v. Cumberland Ins. Group*, 2007 WL 4893479, at *1 (E.D. Pa. Oct. 26, 2007) (order granting in part and denying in part defendants' motion for protective order); *Koken v. Lexington Ins. Co.*, 2005 WL 6051364, at *1 (E.D. Pa. July 18, 2005) (order granting defendant's motion for a protective order); *First Fidelity Bank Corp. v. National Union Fire Insurance Company of Pittsburgh, PA*, 1992 U.S. Dist. LEXIS 3367, at *14-15 (E.D. Pa. 1992) (holding that, although some high-ranking executives could contribute relevant information, the parties should not be permitted to depose those executives whose knowledge was limited and where there were less intrusive means available to obtain the same information). *See also, Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex. 1995). In such cases, the Court "should first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information." *Crown Cent. Petroleum Corp.*, 904 S.W.2d at 128. The "unique personal knowledge" must be truly unique - not knowledge that can be derived from the deposition testimony of other individuals. *See Community Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621-22 (D.D.C. 1983). If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the court should grant the motion for a protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. *Crown Cent. Petroleum Corp.*, 904 S.W.2d at 128.

In *Baine v. General Motors Corp.*, the plaintiffs sought to depose a vice president because years earlier he had written a memorandum concerning the vehicle restraint system that was the subject of the lawsuit. 141 F.R.D. 332, 333 (M.D. Ala. 1991). The court held that

deposing the vice president would be "oppressive, inconvenient and burdensome" because the plaintiffs had not yet deposed lower level employees, such as the head of the company's engineering analysis section. *Id.* at 335. The court noted:

> The corporate deposition has not yet been taken, and it could satisfy some of the plaintiffs' needs. At the very least, it would aid in developing and refining a line of questioning. These avenues have not yet been exhausted or even pursued. It has also not been demonstrated that Mr. Mertz has any superior or unique personal knowledge of the restraint system or of the accident which lead to the plaintiffs' decedent's death.

*Id.*; *see also Consolidated Rail Corp. v. Primary Indus. Corp.*, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (curtailing discovery because "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation. Accordingly, where other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive").

In *Liberty Mutual Ins. Co. v. Superior Court of San Mateo Co.*, the court noted that "apex" depositions "when conducted before less intrusive discovery methods are exhausted, raise a tremendous potential for discovery abuse and harassment." 10 Cal. App. 4th 1282, 1287 (Cal. Ct. App. 1992). The court stated that "federal decisions recognize the potential for abuse and generally do not allow a plaintiff's deposition power to automatically reach the pinnacle of the corporate structure." *Id.* at 1288. The court held that,

> [W]hen a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior knowledge of discoverable information. If not, as will presumably often be the case in the instance of a large national or international corporation, the trial court should issue the protective order.

*Id.* at 1289; *see also Cantor v. The Equitable Life Assurance Soc'y of the U.S.*, 1998 WL 544962, at *2 (E.D. Pa. 1998) (granting defendant's motion for protective orders for an upper-management vice-president, a former CEO, and a corporate designee).

Here, XACP has made no showing whatsoever that Mark Zuckerberg has unique or superior knowledge pertinent to the issues in this case. This case concerns whether one feature of Facebook's website (the Groups application) infringes the '629 Patent. Mr. Zuckerberg's knowledge of the subject matter of this lawsuit is limited to his development of the general idea of the Groups application as a small component of the much larger Facebook website back in 2004. *See* Zuckerberg Decl., at ¶ 4. Since that time, other than generally guiding the direction of Facebook and its website at an executive level, Mr. Zuckerberg has had no involvement in the day-to-day development, coding, implementation, or maintenance of the Groups application. *Id.* Rather, Facebook employs engineers who tend to these day-to-day tasks and who would be much more knowledgeable on the facts relevant to the instant litigation. *Id.* at ¶¶ 2 & 4.

Similarly, Mr. Zuckerberg is not the person most knowledgeable about the financial condition of the company or the revenue, profits and/or losses attributable to the accused product. *Id.* at ¶ 5. Facebook employs financial specialists who are much more knowledgeable on these issues. *Id.* at ¶¶ 2 & 5. Finally, Mr. Zuckerberg has no personal knowledge of the '629 Patent or plaintiff XACP. *Id.* at ¶ 3. He only became aware of the Plaintiff and its patent after this lawsuit was filed. *Id.*

Because XACP has not met and cannot meet its burden of demonstrating that Mark Zuckerberg has unique or superior knowledge concerning the issues relevant to this litigation, the Court should grant Facebook's Motion for a Protective Order.

### B. XACP Is Required To Pursue Less Intrusive Means of Discovery.

Courts routinely reject attempts to take depositions of high placed executives prior to exhausting less intrusive means of gaining the same information. Courts generally require parties to pursue other methods of discovery prior to noticing such depositions. When a party fails to take the necessary preliminary steps, courts generally issue protective orders or refuse to compel depositions.

These preliminary steps generally fall into two categories. First, there are many instances where courts refuse to permit depositions of executives when the noticing party fails to utilize

less intrusive discovery methods (such as interrogatories) to determine the extent of the executive's knowledge and the necessity for the deposition testimony. In *Baine v. General Motors Corp.*, the court issued a protective order quashing the deposition of a high level executive and ordered the plaintiffs to propound the necessary interrogatories before seeking to take deposition testimony. 141 F.R.D. at 335-36. Similarly, in *Mulvey v. Chrysler Corp*, the District Court for the District of Rhode Island held that plaintiffs were not entitled to depose the chairman of the board noting that "discovery has become an abusive tool in the hands of certain attorneys," and that the chairman was a "singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse." 106 F.R.D. 364, 365-66 (D.R.I. 1985). The court determined that the plaintiffs needed to first explore the true nature of the chairman's knowledge through written interrogatories. *Id.* at 366; s*ee also Mitchell v. American Tobacco Co.*, 33 F.R.D. 262, 263 (M.D. Pa. 1963) (vacating deposition notice of the president of the company because "plaintiff's purpose would be adequately served at this time by means of written interrogatories"); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681-82 (7th Cir. 2002) (refusing to compel deposition of corporation's vice-president where plaintiff failed to submit interrogatories would have been an inexpensive and more convenient method of discovery). XACP failed to serve interrogatories to attempt to determine the extent of Mr. Zuckerberg's knowledge prior to noticing his deposition.

Second, many courts require parties to take the depositions of lower level employees to determine if the same information can be gained without taking deposition testimony from the executive. In *Thomas v. Int'l Bus. Machines*, the court upheld a protective order blocking the deposition of the chairman where the plaintiff sought that deposition prior to taking the deposition of any other personnel. 48 F.3d 478, 483 (10th Cir. 1995). The court noted that the plaintiff "made no attempt to demonstrate that the information she seeks to obtain" from the chairman could not be gathered from other personnel, "for whom a deposition might have been less burdensome." *Id.*; *see also Patterson*, 281 F.3d at 681-82 (Seventh Circuit refused to compel the deposition of the corporation's vice-president and controller when plaintiff could

have deposed lower level employees); *Salter v. Upjohn Co.*, 593 F.2d 649, 650-51 (5th Cir. 1979) (issuing protective order prohibiting the deposition of the president because plaintiff had not yet deposed other employees); *M.A. Porazzi Co. v. The Mormaclark*, 16 F.R.D. 383, 383-84 (S.D.N.Y. 1951) (holding deposition of vice-president should not be taken where it would add nothing beyond that which could be gleaned from deposition of a lower-level employee); *see also Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D. Okla. 2003); *Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001). XACP has failed to pursue alternate means to gain the information it seeks.

Accordingly, the Court should issue a protective order preventing the deposition of Mr. Zuckerberg. At a minimum, XACP should be required to use less intrusive discovery methods, as well as the depositions of lower level, more knowledgeable employees, to attempt to meet its burden of proving that Mr. Zuckerberg's deposition is necessary to the issues in this case.

### C. Should XACP Meet Its Burden, Mr. Zuckerberg's Deposition Should Be Limited.

Facebook is confident that after propounding written interrogatories and deposing more knowledgeable employees, XACP will be unable to establish that Facebook's CEO possesses any unique knowledge concerning the matters at issue in this litigation. However, if XACP is able to meet its burden, the court should limit the scope and duration of the deposition to reduce the burden on Mr. Zuckerberg.

In *Folwell v. Hernandez*, the court limited the topics upon which Linda Woltz, the CEO, could be deposed to those about which she possessed unique knowledge. 210 F.R.D. 169, 175 (D.C.N.C. 2002). The deposing party was prohibited from exploring topics for which other deponents were better suited or more knowledgeable. *Id.* The court required the plaintiffs to conduct a Rule 30(b)(6) deposition to obtain information concerning those topics, and "[i]f plaintiffs include any of the Woltz topics in the Rule 30(b)(6) deposition, they shall be eliminated from the Woltz deposition, unless the topics were not answered." *Id.*; *see also Tulip*

7

*Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 102 (D. Del. 2002) (limiting topics of the deposition).

Accordingly, if Mr. Zuckerberg's deposition is ultimately to occur, it should be limited only to those topics about which he possesses unique knowledge not discoverable from other sources or using other methods.

## IV. CONCLUSION

For the foregoing reasons, Defendant Facebook respectfully requests that this Court grant this motion for a protective order prohibiting the deposition of Mark Zuckerberg.

Dated: March 4, 2008                         By:      /s/ Heidi L. Keefe
                                                                                   Heidi L. Keefe
                                                                                   WHITE & CASE LLP

                                                                                   Attorneys for FACEBOOK, INC. and
                                                                                   THEFACEBOOK, LLC