IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO.: 07-CV-02768 |
| vs. | : | |
| | : | |
| FACEBOOK, INC. and THEFACEBOOK, LLC, | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW this _____ day of _____, 2008, upon consideration of the Motion for Protective Order of defendants Facebook, Inc. and Thefacebook, LLC. (Doc. No. 84), and plaintiff's opposition thereto, **IT IS HEREBY ORDDERED** that defendants' motion is **DENIED;** and that Mark Zuckerberg shall appear for deposition within fourteen (14) days of the date of this order.

BY THE COURT:

_____
**HON. JOHN R. PADOVA**
*U.S. District Court Judge*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO.: 07-CV-02768-JP |
| vs. | : | HON. JOHN R. PADOVA |
| FACEBOOK, INC. and THEFACEBOOK, LLC, | : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

I. **INTRODUCTION**

Defendants, Facebook, Inc. and Thefacebook, LLC (together "Facebook"), seek an order preventing the deposition of Mark Zuckerberg, which Facebook identified in answers to interrogatories as being a person "most knowledgeable" and "who significantly contributed to the creation, development and design of Facebook's Groups application....". Since plaintiff Cross Atlantic Capital Partners, Inc. ("XACP") asserts in this action that Facebook's Groups application infringes its patent, XACP is entitled to depose Mr. Zuckerberg on his knowledge of that application and other issues relevant to this case. Thus, Facebook's motion for a protective order should be denied.

1

## II. BACKGROUND

### A. Procedural History

This case was commenced on July 3, 2007 when XACP filed its complaint for patent infringement. The complaint alleges that Facebook infringes the claims of United States Patent No. 6,519,629 B2 ("'629 Patent"), entitled "System for Creating a Community for Users with Common Interests to Interact In." Cmpl., Count I ¶¶ 22-30.

On July 20, 2007, the summons and complaint were served on Facebook. (D.E. # 6). On August 15, 2007, this Court approved the parties' stipulation extending the time for Facebook to answer or otherwise plead until September 4, 2007. (D.E. # 14).

On September 4, 2007, Facebook answered and counterclaimed seeking a declaration of non-infringement and invalidity regarding the '629 Patent. (D.E. # 16). On September 10, 2007, Facebook filed a motion to transfer venue. (D.E. # 23). On September 24, 2007, XACP filed its response in opposition to Facebook's motion to transfer (D.E. # 31). The Court denied Facebook's motion to transfer venue on September 28, 2007 (D.E. 33).

On September 24, 2007, this Court conducted a Preliminary Pretrial Conference. (*See*, Report at D.E. # 32). On October 15, 2007, the Court entered its Pretrial Scheduling Order, which set a discovery deadline of March 26, 2008 and a deadline for expert disclosures of February 25, 2008. (D.E. # 36). On March 11, 2008, the Court approved a stipulation of the parties extending, *inter alia*, the discovery deadline to April 16, 2008.

(D.E. # 91).

B. <u>Facts</u>

The underlying facts concerning this case are set forth in plaintiff's response in Opposition to Defendants' Motion to Transfer Venue (D.E. # 31), they will not be repeated here. The following facts are relevant to the motion.

On September 14, 2007, plaintiff XACP served defendants with Plaintiff Cross Atlantic Capital Partners, Inc.'s First Set of Interrogatories Directed to Defendants. Interrogatories Nos. 1 and 7 stated:

### INTERROGATORY NO. 1.

Identify each Online Community Creation System and/or Created Online Community which you have purchased, made, used, licensed, offered for licensing, sold, or offered for sale, since January 1, 2004 by stating its trade name and serial number (if any); further, state the date upon which each such system and/or product was first made, used, licensed, offered for licensing, sold, or offered for sale, and the identity of each person knowledgeable with respect to the development, manufacture, marketing, licensing, offer for licensing, sale, or offer for sale, of each such system and/or product.

### INTERROGATORY NO. 7

With respect to each Online Community Creation System and/or Created Online Community made, used, licensed, offered for licensing, sold, or offered for sale by Facebook from January 1, 2004 to the present, identify and/or state:
    (a)    The name of each person who significantly contributed to its creation, development and design;
    (b)    The manner in which each such person significantly contributed to its creation, development and design;
    (c)    The timeframe during which each such person significantly contributed to its creation, development and design; and

> (d) Identify any document directed in whole or in part which refers to, relates, or comments upon the contribution each such person made to its creation, development and design.

On October 17, 2007, defendants served XACP with Defendants' Response to Plaintiff Cross Atlantic Capital Partners, Inc.'s First Set of Interrogatories, a copy of which is attached hereto as Exhibit A. Facebook's answers to XACP's Interrogatories Nos. 1 and 7 state *inter alia*:

### RESPONSE TO INTERROGATORY NO. 1

Subject to and without waiving the objections set forth above, Facebook responds that it made an application that allows users to create groups. The name of the application is "Groups." Groups was launched in September 2004. ***Person most knowledgeable about the development of Groups are*** Dustin Moskovitz, Steven Dawson-Haggerty, Victor Valdez and ***Mark Zuckerberg***.

### RESPONSE TO INTERROGATORY NO. 7

Subject to and without waiving the objections set forth above, Facebook responds that the names of each ***person who significantly contributed to the creation, development and design of Facebook's Groups application are*** Dustin Moskovitz, Steven Dawson-Haggerty, ***Mark Zuckerberg*** and Victor Valdez. Dustin Moskovitz, Steven Dawson-Haggerty and ***Mark Zuckerberg*** contributed to the creation, development and design of Groups by developing and implementing the Groups application… The time frame during which Steven Dawson-Haggerty and ***Mark Zuckerberg*** significantly contributed to the creation, development and design of Groups was between June 2004 and September 2004.

Facebook's interrogatory answer makes clear that, in addition to being the founder of Facebook, Mr. Zuckerberg was the original creator of the accused Groups application. Based on the important knowledge Mr. Zuckerberg has regarding the Groups application

4

and the overall website, XACP issued a Notice under Federal Rule 30(b)(1) of Deposition Upon Oral examination of Mr. Zuckerberg on February 4, 2008, a copy of which is attached hereto as Exhibit B. The deposition was noticed to take place on February 19, 2008.

On February 8, 2008, Facebook objected to the deposition of Mr. Zuckerberg on the sole basis that he allegedly lacks "unique or extraordinary knowledge" concerning any issue relevant to this case.[1] On February 11, 2008, XACP advised Facebook in writing that Mr. Zuckerberg's deposition was permitted under the Federal Rules of Civil Procedure and applicable case law. (*See* Exhibit D). Subsequently, XACP's counsel, Patrick Keenan, Esquire, spoke on more than one occasion to Facebook's counsel, Sam O'Rourke, Esquire, about the scheduling of Mr. Zuckerberg's deposition. (*See* Exhibit C). Mr. O'Rourke told Mr. Keenan that Facebook was considering producing Mr. Zuckerberg for deposition, and that he would advise Mr. Keenan of their final decision as soon as possible. *Id.* Without any additional notice, Facebook filed the present motion for

---

[1] Facebook notes in its motion that the deposition of Mr. Zuckerberg was noticed to occur in Pennsylvania, but fails to mention that XACP agreed to conduct the deposition in California and has already conducted the depositions of three other Facebook employees there, including two as corporate designees. Thus, the location of the Zuckerberg deposition is a non-issue. (*See* Declaration of Patrick J. Keenan, Esquire, attached as Exhibit C).

protective order. *Id.*

III. <u>**ARGUMENT**</u>

XACP is entitled to take the oral deposition of Mark Zuckerberg, who is credited with creating the infringing Facebook website and has been specifically identified by Facebook in discovery as a person "most knowledgeable" about Facebook's infringing Groups application and one of only four persons "who significantly contributed to the creation, development and design of that application." Mr. Zuckerberg is not too important to avoid answering questions under oath about his role in creating the infringing Facebook website in general and the Groups application in particular.

> Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides, *inter alia:*
>
> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Moreover, in this District, and elsewhere, "the party seeking discovery ... may name a specific officer, director, or managing agent to give deposition testimony on behalf of a party corporation pursuant to Fed. R.C.P. 30(b)(1)." *Triple Crown America, Inc. v. Biosynth AG*, 1998 U.S. Dist. LEXIS 6117 (E.D. Pa. April 30, 1998); *United States v. Afram Lines*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994).

Facebook erroneously asserts that Mr. Zuckerberg should not be deposed because it would be too intrusive and as he lacks "unique or superior personal knowledge" of discoverable information. The burden is on Facebook, as the party opposing discovery, to show good cause why discovery should not be permitted. *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980); *Momah v. Albert Einstein Medical Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996). ***"Broad allegations of harm, unsubstantiated by specific examples, are not sufficient to justify an order to protect a person from 'annoyance, embarrassment, oppression, or undue burden or expense.'"*** *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483-484 (3d Cir. 1995) (emphasis added).

There is no "unique or superior personal knowledge" requirement set forth in Rule 30(b)(1). Furthermore, although Rule 26(b)(1) limits discovery to "relevant information," it is well settled that "discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action." *Caruso v. The Coleman Company*, 157 F.R.D. 344, 347 (E.D. Pa. 1994). "Relevance in a discovery context is construed more broadly than is relevance for trial." *Speller v. United States*, 14 Cl.Ct. 170, 172 (1988). As stated by the Supreme Court, relevancy for discovery purposes encompasses "any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case...." *Klonosky v. Mahleb*, 156 F.3d 255, 267 (1st Cir. 1998) (*citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Consistent with the notice-pleading system established by the

7

Rules, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer*, 437 U.S. at 351. "Where there is doubt over relevance, [Rule 26(b)(1)] indicates that the court should be permissive." *Klonosky*, 156 F.3d at 267, *citing Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986).

In answers to XACP's First Set of Interrogatories, Facebook identified Mark Zuckerberg as a person "most knowledgeable" about the infringing Groups application, and someone "who significantly contributed to the creation, development and design of Facebook's Groups application...." Thus, Mr. Zuckerberg's knowledge and significant contributions regarding the infringing Groups application is certainly relevant, *i.e.*, bears on issues relevant to this matter. XACP has deposed two of the other persons identified by Facebook as having similar knowledge, including Victor Valdez as a corporate designee under Rule 30(b)(6). However, Mr. Valdez was not even employed by Facebook when the accused website and Groups application were originally developed.

This matter is readily distinguishable from the cases upon which Facebook relies to support its motion, none of which involved an officer of a company who significantly contributed to the original creation, development and design of an accused device. For example, Facebook relies of a series of cases involving high level executives with little or no direct knowledge of any relevant issues, *i.e., Koken, Roman, Liberty Mutual Ins. Co., Cantor, Baine* and *First Fidelity Bancorporation.*

8

In *Koken v. Lexington Insurance Company,* 2005 U.S. Dist. LEXIS 46195 (E.D. Pa. July 18, 2005), the Court precluded the deposition of an insurance company executive who attested that "he has no 'personal, direct knowledge regarding any of the issues' in dispute in the present litigation...."

In *Roman v. Cumberland Ins. Group,* 2007 WL 4893479 (E.D. Pa. Oct. 26, 2007), the Court precluded the depositions of a vice president and the board of directors who had "***no direct knowledge of plaintiff's claim***," noting that "[c]ourts throughout the country have prohibited the deposing of corporate executives who have ***no direct knowledge of a plaintiff's claim*** when other employees with superior knowledge are available to testify."

In *Liberty Mutual Ins. Co. v. Superior Court,* 10 Cal. App. 4th 1282, 13 Cal. Rptr. 2d 363 (Cal. App. 1st Dist. 1992), the Court required the plaintiff to depose lower level executives before being able to seek the deposition of the CEO of Liberty Mutual Insurance Company, whose only link to the disputed insurance claim at issue in the case was plaintiff's "counsel's act of copying him, by title only, on two letters which would have been automatically rerouted to a lower level employee and which [CEO] Countryman never saw." *Id.* at 1286, 13 Cal. Rptr. at 365.

In *Cantor v. Equitable Life Assur. Soc'y of the United States,* 1998 U.S. Dist. LEXIS 13240 (E.D. Pa. Aug. 27, 1998), which involved an alleged wrongful termination of disability benefits, the Court refused to order the deposition of two high level

executives where neither executive was "involved in the decision to terminate plaintiff's benefits" and "their testimony at a deposition would be irrelevant, and would constitute an annoyance and harassment, and would be unduly burdensome." *Id.* at 6.

In *Baine v. General Motors Corp.*, 141 F.R.D. 332, 1991 U.S. Dist. LEXIS 19437 (M.D. Ala. 1991), the Court directed the plaintiff to depose a corporate designee for General Motors before seeking to depose a vice president of the company about a memorandum he wrote more than a decade earlier.

Finally, in *First Fidelity Bancorporation v. National Union Fire Ins. Co.*, 1992 U.S. Dist. LEXIS 3367 (E.D. Pa. Mar. 5, 1992), National Union sought to preclude the depositions of the chairman of its board of directors as well as the chairman of its parent company's board of directors since it had stated in answers to interrogatories that neither person had any involvement in the relevant issues in the case. The plaintiff argued that the two chairmen had knowledge of National Union's "corporate claim handling policy" and "claims payments policy." *Id.* at *5-6. Despite this tangential connection to the case, the Court refused to preclude their depositions but, instead, instructed the plaintiff to first complete the depositions of lower ranking officials. *Id.* at *18. In doing so, the Court stated:

> The liberal rules of discovery require that National Union make a strong showing before FIRG is denied its right to take the depositions of Maurice Greenberg and Jeffrey Greenberg. Fed. R. Civ. P. 26(c). First, ***this court does not agree that the depositions of Maurice and Jeffrey Greenberg are precluded simply because they are high ranking executives.*** Second, Messrs. Greenberg's depositions are relevant in that they "appear[]

10

> reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1). With respect to Maurice Greenberg's deposition, [it] is true that a request for nonparty discovery requires a stronger showing of relevance than for simple party discovery. *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.C. N.J. 1990). However, it is also true that for discovery purposes relevancy is broadly construed and is not limited to the precise issues set forth in the pleadings or to the merits of the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).

*Id.* at *13-14 (emphasis added).

Unlike the executives sought to be deposed in *Koken, Roman, Liberty Mutual Ins. Co., Cantor,* and *Baine*. Mark Zuckerberg of Facebook is not someone with little or no knowledge about any relevant issues in this case. To the contrary, Facebook identified Mr. Zuckerberg as a person "most knowledgeable" about the accused Groups application, and someone "who significantly contributed to the creation, development and design of Facebook's Groups application...." Furthermore, unlike in *First Fidelity Bancorporation*, Mr. Zuckerberg is not being deposed because of general knowledge that he may have about Facebook's corporate "philosophies." His deposition is being sought to explore his direct personal knowledge of the accused systems which *he* created, developed and designed.

Facebook's reliance on the "Apex Officials" doctrine adopted in *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125 (Tex. 1995) is similarly misplaced. In discussing that state court case, the district court in *Van Den Eng v. The Coleman Co.*, 2005 U.S. Dist. LEXIS 40720 (D. Kan. Oct. 21, 2005), observed:

> The Court rejects Coleman's assertion that high-level corporate executives

> ("Apex Officials") cannot be deposed unless the party seeking the deposition can show that (1) the executive has unique or special knowledge of the facts at issue and (2) the seeking party has exhausted other less burdensome avenues for obtaining the information sought.
>
> * * * *
>
> Furthermore, while the state court cases, interpreting state law, cited by Coleman may support Plaintiff's assertion that the Apex doctrine is a mandatory threshold inquiry, the Court is unaware of any federal case, interpreting the Federal Rules of Civil Procedure, that has adopted such an absolute threshold test that must be met before Apex Officials can be deposed. To be sure, the Tenth Circuit has never adopted any special test for such executives.

*Id.* at *6-7. "[M]otions for protective orders for Apex Officials are treated under the same standards as any other protective order, while taking into consideration special factors that may apply to such officials." *Id.* at 8.

Even assuming *arguemdo* that XACP has an obligation to depose lower level employees before seeking the deposition of Mr. Zuckerberg, XACP deposed Victor Valdez as a corporate designee of Facebook on issues relating to the infringing website as well as Dustin Moskovitz. However, as was previously mentioned, Mr. Valdez was not even employed by Facebook when the accused website and Groups application were originally developed. Additionally, Mr. Valdez claimed to lack knowledge about even basic aspects of Facebook's website that are relevant to XACP's infringement claims, such as Facebook's processes for user registration and enabling user's to create targeted advertisements. (*See* Exhibit C).

Finally, Facebook also cites to *Community Federal Sav. & Loan Asso. v. Federal Home Loan Bank Bd.*, 96 F.R.D. 619 (D.D.C. 1983), which concerned the inapposite issue of the special restrictions placed on a party's right to depose federal agency officials about the mental processes of their administrative decision making, in that case two Board members of the Federal Home Loan Bank.

In sum, Mr. Zuckerberg has been identified by Facebook as someone with very relevant and personal knowledge in this case, and Rules 26 and 30 permit XACP to further explore that knowledge through a deposition. His mere status as an executive in a corporation does not change this. Additionally, Rule 37 provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions...." FED.R.CIV.P. 37(a)(2)(A). This Rule may be enforced by the discretion of the Court. *Capitol Pants v. U. S. F. & G.*, 1996 U.S. Dist. LEXIS 1279 (E.D. Pa. Feb. 5, 1996); *O'Connor v. Am Gen'l Corp.*, Civ. A. No. 85-6679, 1992 WL 382366, * 2 (E.D. Pa., Dec. 7, 1992). Therefore, Facebook's motion for protective order should be denied, and the Court is respectfully requested to order Mr. Zuckerberg to appear for deposition.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, plaintiff Cross Atlantic Capital Partners, Inc. respectfully requests that this Court deny the motion for protective order of defendants

Facebook, Inc. and Thefacebook, LLC.

                                 Respectfully submitted,

                                   <u> /s/ Patrick J. Keenan</u>
                                   Thomas J. Duffy, Esquire (PA ID # 34729)
                                   Patrick J. Keenan, Esquire (PA ID # 53775)
                                   **Duffy & Keenan**
                                   The Curtis Center, Suite 1150
                                   Independence Square West
                                   Philadelphia, Pennsylvania 19106
                                   (215) 238-8700
                                   (215) 238-8710 (Fax)
                                   <u>pjk@duffykeenan.com</u>

                                   and

                                   Frederick A. Tecce, Esquire
                                   **McShea\Tecce, P.C.**
                                   The Bell Atlantic Tower - 28th Floor
                                   1717 Arch Street
                                   Philadelphia, Pennsylvania 19103
                                   (215) 599-0800
                                   (215) 599-0888 (Fax)
                                   <u>ftecce@mcshea-tecce.com</u>

                                   Counsel for plaintiff,
                                   Cross Atlantic Capital Partners, Inc.

Dated: March 17, 2007

# CERTIFICATE OF SERVICE

This is to hereby certify that on this 17th day of March, 2008, I caused true and correct copies of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Protective Order to be served *via* this Court's Electronic Filing ("ECF") System and regular mail, upon the following:

        Alfred W. Zaher, Esquire
        **Blank Rome, LLP**
        130 N. 18th Street
        Philadelphia, Pennsylvania 19103

        and

        Heidi L. Keefe, Esquire
        **White & Case LLP**
        3000 El Camino Real
        5 Palo Alto Square, 9th Floor
        Palo Alto, California 94306

        Counsel for defendants,
        Facebook, Inc. and Thefacebook, LLC

                                    /s/ Patrick J. Keenan
                                    Patrick J. Keenan, Esquire