# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | CIVIL ACTION |
| Plaintiff, | NO. 07-CV- 02768-JP |
| v. | |
| FACEBOOK, INC. and THEFACEBOOK, LLC, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF THE
COURT'S PROPOSED AMENDMENT TO ITS CLAIM
CONSTRUCTION ORDER DATED FEBRUARY 29, 2008**

On March 17, 2008, the Court ordered the parties to show cause why its construction of the claim term "transmit," as set forth in the Court's February 29, 2008 Memorandum and Order (D.E. # 81), should not be amended to mean "electronically connecting and/or communicating by any wireless or wire mechanism." (D.E. # 95). This amended construction involves deleting the words "sending out" from the Court's original construction, *i.e.*, "electronically connecting, sending out and/or communicating by any wireless or wire mechanism." For the reasons stated herein, plaintiff Cross Atlantic Capital Partners, Inc. ("XACP") does not object to the Court's proposed amendment.

As a threshold matter, XACP objects to defendants Facebook, Inc. and Thefacebook, LLC's (collectively, "Facebook") attempts to argue that "transmit" means either just "sending out" or "electronically connecting, sending out ***and*** communicating by any wireless or wire mechanism." Any construction that always requires "sending out" to be a part of the practiced method or system was clearly and properly rejected by the Court in its February 29, 2008 Order, and the latter construction was never agued by Facebook prior to its letter to the Court dated March 5, 2008. Even if Facebook had advanced its latest arguments prior to the Court's

decision, it fails to meet the high threshold justifying reconsideration of that Order. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Ehrheart v. Lifetime Brands, Inc., 498 F. Supp. 2d 753, 756 (E.D. Pa. 2007) (Padova, J.) (court denied motion for reconsideration of order denying motion to dismiss the complaint for lack of subject matter jurisdiction) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985), cert. denied, 476 U.S. 1171 (1986)). "A motion for reconsideration will only be granted if the moving party establishes: (1) the existence of newly available evidence; (2) an intervening change in the controlling law; or (3) a need to correct a clear error of law or prevent manifest injustice." Id. (citing Public Interest Research Group of New Jersey v. Magnesium Elektron, 123 F.3d 111, 116-17 (3d Cir. 1997)).

"Reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of judicial resources." Ehrheart, 498 F. Supp. 2d at 756-57 (citing Moyer v. Italwork, Civ. A. No. 95-2264, 1997 WL 312178, at *3 (E.D. Pa. June 3, 1997)); accord Jilin Pharm. USA, Inc. v. Chertoff, 447 F.3d 196, 199 n.4 (3d Cir. 2006). Facebook simply cannot meet the heavy burden sufficient to support this "extraordinary remedy." Specifically, Facebook has not argued and cannot establish: (1) the existence of newly available evidence; (2) an intervening change in the controlling law; or (3) a need to correct a clear error of law or prevent manifest injustice.

Nonetheless, XACP does not object to the Court amending its claim construction Order since deletion of the words "sending out" from the definition of "transmit" is not inconsistent with the Court's stated rationale. The term "transmit" is the root word for "transmitting," which is used in, *inter alia*, Claim 1 of the '629 Patent as follows: "transmitting the created community based in part on the at least one communications address." As the Court held in its February 29,

2008 Memorandum Opinion (D.E. # 81), the intrinsic evidence supports the term "transmit" being construed as *electronically connecting and/or communicating by any wireless or wire mechanism.* Furthermore, the Court's stated rationale was legally and factually correct:

> [T]he specification itself requires a construction that includes the concept of "connecting" in the definition of "transmitting." The specification discloses a method for two-way communication by "interacting through a network" and allowing "widespread and rapid distribution of an electronic connection" between users. ('629 Patent Col. 3, lines 16-19; 24-29.) In the Detailed Description of the Preferred Embodiments, the inventor describes the embodiment as a "Network [that] may be any network that permits multiple users to connect and interact," which may be an internet service provider, a dial-up access or "other manner of connecting to a network." (Id., Col. 5, lines 26-27; 32-34.)
>
> Numerous other parts of the specification make clear that interaction among users is the purpose of the invention. The method includes a "central controller module" with which a user must communicate to initiate the community, (id., Col,. 26, lines 56-67), a "communications module" to enable communications with others (id., Col. 6, lines 39-40), a chat application object permitting users to communicate (id., Col. 18, lines 20-33), and an instant messaging application object to permit users to communicate (id., Col. 18, lines 37-54). Limiting "transmitting" to just "sending" would make these functions impossible.

(Court's Mem. at 13-14). While the Court's rationale supports defining "transmit" as *electronically connecting and/or communicating by any wireless or wire mechanism,* it rejects any definition that would require "sending" to be a part of every instance that someone practiced the claimed method or system. Thus, XACP does not object to the Court's proposed amendment to its claim construction Order.

The Court's proposed construction of the "transmit" term is consistent with and supported by Federal Circuit precedent and the intrinsic record. The specification is "always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*), cert. denied, 546 U.S. 1170 (2006). Consistent with the Court's proposed definition and Phillips, the specification of the '629 Patent requires that the term "transmit," as

used in the claims, be broad enough to include an *electronic connection and/or communication through a wire or wireless mechanism* between a user of a client (*e.g.*, a personal computer[1]) and a created community being stored by a central controller module (*e.g.*, multiple server computers configured to appear to the client as a single resource[2]). As the Court has observed, support for this construction is found in both the stated purposes of the invention and the description of the preferred embodiments.

> Among the relevant purposes stated for the invention are the following:
>
> It is a further object of the invention to provide a method and system which simplifies processes for *interaction among individuals and/or entities which occur through a communications network*.
>
> It is still a further object of the invention to provide a *system and method for multi-user interaction and communication through a network* which is directed to a specific transaction, interaction and/or interest.
>
>     \*\*\*  \*\*\*  \*\*\*
>
> It is another object of the invention to provide a system and methodology for invoking an invitation application to simplify the creation of and *allow the widespread and rapid distribution of an electronic connection between a plurality of users through an on-line community* associated with a user interest.

('629 Patent at Col. 3, lines 11-18; 23-29)(emphasis added). Each of these purposes for the invention requires that the concept of connecting and/or communicating be included in the definition of "transmitting."

Additionally, the written description of a preferred embodiment discloses that created communities "may be stored in data storage module **160**," and that a "[c]entral controller module **115** may communicate with a number of data storage modules **160**." (See '629 Patent at Col. 6, lines 59-62; 19-23). The central controller module also administers the community that it is

---

[1] See Col. 5, lines 41-50.

[2] See Col. 6, lines 22-24.

hosting. (See Col. 7, lines 1-24; Fig. 1). In the context of this preferred embodiment, the specification also teaches that a transmission of a created community includes users electronically connecting to and/or communicating with the created community through the host central controller module. This is illustrated in Fig. 1 of the '629 Patent as follows:



Many other parts of the written description also support defining "transmit" as *electronically connecting and/or communicating by any wireless or wire mechanism*, since they describe methods and systems for users to connect and/or communicate with communities:

> Communication module **180** may enable central controller module **115** to communicate with others. According to an embodiment of the invention, communication module **180** may comprise an email transfer application such as Sendmail, Postfix, or Q-Mail or the like. Communication module **180** may further enable central controller module **115** to interact with users via user application objects, such as instant messaging. *Further, communications module **180** may enable central controller module **115** to interact with an Internet browser, such as Netscape Navigator®, Microsoft Internet Explorer®, or the like*.
>
> \*\*\*   \*\*\*   \*\*\*
>
> An executable component may assist central controller module **115** in

> downloading a client application upon confirmation that installation should proceed. According to an embodiment of the invention, a client application may be downloaded while an invited user watches a tutorial. When the download is complete, a user may have a link that has been associated on the user's computer. At step **270**, a user may launch a community, such as activating a link to launch a client application for a community. ***The link may designate information necessary for the invited client to connect to central controller module 115 and initiate the user into the community***.
>
> \*\*\*   \*\*\*   \*\*\*
>
> ***In a preferred embodiment, the user next launches the invitation application (e.g. the executable component) which establishes a connection with central controller module 115. Central controller module 115 immediately initiates the community, or "lobby," executable and the user is placed in the community chat room*** (**530**). According to another embodiment, a user may be presented a dialog box instead of being placed in a chat room. The lobby serves as the entry point into the gaming environment. Alternatively, it is possible for the verification invitation application to be designed to automatically invoke the connection and launch the application upon successful verification.
>
> \*\*\*   \*\*\*   \*\*\*
>
> Returning to FIG. 11, at step **805**, ***the user establishes a connection to a community with central controller 805***. ***This can be accomplished*** through the use of an invitation application object as described above or ***through browser access to an appropriate website***.

('629 Patent at Col. 6, lines 39-49; Col. 16, lines 26-35; Col. 26, lines 56-67; and Col. 29, lines 56-60; see also Col. 5, lines 23-40)(emphasis added). Finally, as the Court also observed, communities can be created with a chat application object and/or an instant messaging application object which permits users to communicate. (Col. 18, lines 20-54; Court's Mem. at 14).

In sum, the preferred embodiments teach that created communities may reside on the servers of the central controller module and that users may connect to and/or communicate with the communities, including their various application objects, through browser access to the central controller module's website. This is among the extensive support in the intrinsic record for the Court's proposed definition of the term "transmit," *i.e.*, *electronically connecting and/or communicating by any wireless or wire mechanism*. Conversely, there is no support in the

intrinsic record for defining "transmit" to require a "sending out" of a created community. As the Court found, such a construction is inconsistent with the specification and would make certain functions of the invention impossible. (Court's Mem. at 14). Accordingly, plaintiff XACP does not object to the Court's proposed amended definition of the "transmit" term.

Respectfully submitted,

　/s/ Patrick J. Keenan
Thomas J. Duffy, Esquire (PA ID # 34729)
Patrick J. Keenan, Esquire (PA ID # 53775)
**Duffy & Keenan**
The Curtis Center, Suite 1150
Independence Square West
Philadelphia, Pennsylvania 19106
(215) 238-8700
(215) 238-8710 (Fax)


Frederick A. Tecce, Esquire
**McShea\Tecce, P.C.**
The Bell Atlantic Tower - 28th Floor
1717 Arch Street
Philadelphia, Pennsylvania 19103
(215) 599-0800
(215) 599-0888 (Fax)

Counsel for plaintiff
Cross Atlantic Capital Partners, Inc.

Dated: March 24, 2008

# CERTIFICATE OF SERVICE

This is to hereby certify that on this 24th day of March, 2008, I caused a true and correct copy of the foregoing Plaintiff Cross Atlantic Capital Partners, Inc.'s Memorandum in Support of the Court's Proposed Amendment to Its Claim Construction Order *via* this Court's Electronic Filing ("ECF") System and regular mail, upon the following:

> Heidi L. Keefe, Esquire
> Mark R. Weinstein, Esquire
> Sam C. O'Rourke, Esquire
> White & Case LLP
> 3000 El Camino Real
> 5 Palo Alto Square, 9th Floor
> Palo Alto, California 94306
>
> Alfred W. Zaher, Esquire
> Dennis P. McCooe, Esquire
> Joel L. Dion, Esquire
> Blank Rome
> One Logan Square
> 130 North 18th Street
> Philadelphia, PA 19103
>
> Counsel for defendants
> Face Book, Inc. and Thefacebook, LLC

          /s/ Patrick J. Keenan
      PATRICK J. KEENAN, ESQUIRE