IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | CIVIL ACTION |
| Plaintiff, | NO. 07-CV- 02768-JP |
| v. | |
| FACEBOOK, INC. and THEFACEBOOK, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## FACEBOOK'S RESPONSE TO MARCH 17, 2008 ORDER TO SHOW CAUSE RE CONSTRUCTION OF "TRANSMIT" IN U.S. PATENT NO. 6,519,629

XACP is making the construction of the claim term "transmit" far more complicated than it needs to be. It is black letter Federal Circuit law that claim terms are given their plain meaning as long as that meaning is consistent with the patent specification. The plain meaning of the word "transmit" is to send, and that plain meaning is entirely consistent with the patent specification. In fact, the specification uses the term "send" as a synonym for "transmit." Accordingly, the construction of the word "transmit" must, at a minimum, include the act of sending. The Court's original construction, as well as its proposed revised construction, both allow transmit to be interpreted so as to exclude the act of sending. As detailed below, such a construction renders the claims nonsensical. Facebook therefore respectfully submits that the definition of "transmit" is no more complicated than "send." If, after reviewing the law below, the Court still believes that something more than just sending is required, then Facebook proposes a very slight variation of the Court's original construction: "electronically connecting, sending out **and** communicating by any wireless or wire mechanism."

### A. The Current and Proposed Revised Constructions Should Be Revised

The Court's original claim construction defines "transmit" as "electronically connecting, sending out <u>and/or</u> communicating by any wireless or wire mechanism." The connector "and/or" includes the disjunctive "or," which means that any claim term that requires "transmitting" is met by merely sending (without connecting or communicating), merely connecting (without any sending or communicating), or merely communicating (without establishing a connection or sending any information). Respectfully, the Court's proposed revised construction does not resolve this problem, it compounds it. The elimination of "sending out" from the revised construction would allow "transmitting" to mean merely connecting or merely communicating, and would entirely eliminate the base concept of sending. As discussed in greater detail in the following section, neither of these constructions makes sense and both are at odds with the specification and other claims.

### B. The Claims Require "Transmit" To Include The Act Of "Sending"

Construing "transmit" in a way that requires at least the act of sending is consistent with the common sense, plain meaning of the word "transmit" and the manner in which it is used throughout the claims of the '629 patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms."). For example, claim 17, which has been asserted by XACP against Facebook, reads:

> 17. A method for creating a community for users with common interests to interact in, the method comprising the steps of:
>
> <u>transmitting</u> a creation transmission, the creation transmission indicating the desire to create a community;
>
> <u>transmitting</u> community identification information;
>
> <u>transmitting</u> at least one communications address corresponding to a user to receive the created community; and

selecting at least one application object for inclusion in the community, whereby the community is created based on the community identification information and the at least one application object.

This claim describes the process of creating a community from the perspective of a user (community creator). It describes a process in which the user enters information about a community (i.e., community identification information, communications address(es)), which is transmitted to the central controller to create the community. *See* '629 patent, Col. 7, ll. 52-60, col. 8, ll. 15-23; col. 13, ll. 14-17. The claim uses the term "transmitting" in its plain and ordinary sense, as the act of sending.

Under both the original and proposed revised constructions of "transmit," claim 17 would not make sense. Using the definitions with the disjunctive "or," each of the claim limitations reciting "transmitting" would be satisfied, for instance, by the mere act of "connecting." For example, the claim limitation of "transmitting community identification information" becomes "connecting community identification," and so forth. It is not clear how the claim would function if the act of sending information to the controller is not required. Plainly, any definition that includes "or," such that "connecting" alone is sufficient to satisfy the claim construction, must be rejected.

### C. The Specification Requires "Transmit" To Include Sending

The patent specification also requires a construction of "transmit" that incorporates the plain meaning of that term – to send. For example, as described above, claim 17 addresses the process for creating a community. The limitation from claim 17, "transmitting at least one communications address," is explained in the specification as follows: "A user selects communications addresses and creates a personal invitation at step **254** and ***sends*** communication addresses and personal invitations to central controller **115** at step **256**." '629 patent, Col. 13, ll. 14-17 (emphasis supplied). A similar process is described for transmitting community identification information:

> At step **202**, a creator provides community identification information to a central controller module **115**. Community identification information may

3

> comprise a community name, description, search tags, keywords, and topline key. . . . Community identification information may further comprise information about the creator, such as name, address, personal information, and other creator information. . . .
>
> According to an embodiment of the invention, a creator may input the requested information through input device **120**. Information may be automatically provided to central controller module **115** through the connection of user **110** with central controller module **115**, such as the computer identifier number. Other methods for providing information to central controller module **115** may also be used, such as inputting information into a telephone keypad or personal digital assistant.

'629 patent, col. 7, ll. 61-64; col. 8, ll. 7-10; col. 9, ll. 15-23.

These passages of the specification describe the same process covered by claim 17 – a process in which the user sends information to the central controller so that information may be used to create a community. Clearly the information input by the user must somehow reach the controller so the controller can use that information to facilitate the creation of a community. Indeed, this is the very object and purpose of the alleged invention. Moreover, the specification expressly uses "send" as a synonym for "transmit." Accordingly, the specification necessarily requires that this information be transmitted or <u>sent</u> to the central controller.

Merely "connecting" to the central controller would not achieve the goal of transferring the user information from the user to the controller. Thus, any construction of "transmit" that could be satisfied by merely connecting would make no sense.

### D. **XACP's Concern About the "Purposes" and "Objects" is Irrelevant.**

XACP's supplemental brief on the construction of "transmit" includes lengthy quotes from preferred embodiments in the specification discussing the objects and purposes of the invention, and argues that the word "transmit" must be construed in a way that accommodates all of those objects and purposes. This is an incorrect statement of the law. Rather, the Court should focus on the portions of the specification that address the subject matter of the claims at issue.

4

128605.00601/11765202v.1

It is a bedrock principle of patent law that the *claims* of the '629 patent are limited to their language, and may cover far less than what is disclosed in the specification. *See, e.g.*, *E-Pass Techs., Inc.* v. *3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003) ("An invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them."); *Yoon Ja Kim* v. *ConAgra Foods, Inc.*, 465 F.3d 1312, 1319 (Fed. Cir. 2006) ("The mere fact that one object of the invention is to produce a slow acting oxidant which is functional throughout the entire manufacturing process does not mean that this particular feature was adopted as a limitation in each claim of the patent."); *SRI Intern.* v. *Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) ("If everything in the specification were required to be read into the claims . . . there would be no need for claims."). It is commonplace for patent claims to cover only a portion of the subject matter disclosed in the specification.

In the present case, the claims of the '629 patent are narrowly drawn to address only (1) the creation of a community based on user-specified parameters (*i.e.* community identification information, selected application object(s)); and (2) the delivery (*i.e.* transmission) of that community to at least one other user. Claim 1, for example, reads:

> 1. A method <u>for creating a community</u> for users with common interests to interact in, the method comprising the steps of:
>
> receiving a creation transmission from a registered user, the creation transmission indicating that the registered user desires to create a community;
>
> receiving community identification information from the registered user;
>
> receiving a selection of at least one application object from the registered user;
>
> creating a community based on the community identification information and the at least one application object;
>
> receiving at least one communications address designated by the registered user, the at least one communications address corresponding to a user to receive a created community;

5

> and <u>transmitting</u> the created community based in part on the at least one communications address.

Claim 1 concludes with the step of transmitting the community to at least one user. The claim is not concerned with, nor does it attempt to cover, any activity that may occur *after* the community is created and transmitted. Although the specification explains that users can interact and communicate with each other using application objects (such as chat and instant messaging), any such interaction or communication is outside the scope of the claim because it takes place *after* the community is created and transmitted.

Here it is obvious that the applicants for the '629 patent knew how to write broader claims to cover the "interaction" after the community is transmitted. U.S. Patent No. 6,487,583, the parent to the '629 patent-in-suit that shares the identical written specification, claims "[a] method for *enabling users to interact within a community* of interest," in which "the at least one new user *interacts with the community* through a user interface." *See* Exhibit A, Col. 31, ll. 5-6, 19-20 (Claim 1) (emphasis added). It would be improper to construe the '629 patent by reference to interactions that may take place later, which are not the subject matter of the claims being construed.

For these reasons, Facebook respectfully disagrees with the position that any claim construction that limits "transmitting" to "sending" would render impossible the interaction and communication contemplated in the specification. The community could first be created and transmitted (sent) to other users according to the claimed method, and then – after the steps of claim 1 of the '629 patent have completed – the users of that community could communicate and interact with each other using the community and the application objects (e.g., chat, instant messaging). In fact, this is the precise sequence described in the '629 patent specification. *See* '629 patent, Col. 13, ll. 9-18 ("FIG. **3** is a flow-chart which illustrates inviting other users to participate in and/or join a community according to an embodiment of the invention. . . A user selects communications addresses and creates a personal invitation at step **254** and sends communication addresses and personal invitations to central controller **115** at step

6

**256**."); col. 15, ll. 28-29 ("At step **260**, central controller module **115** sends an invitation application to an invited user."); col. 15, ll. 39-44 ("At step **262**, an invited user receives an invitation application and launches an executable component of the invitation application."); col. 16, ll. 44-49 ("When a client application is launched to access a community, a user may be presented with a login screen. The user may access a community by entering the correct password a community [sic]."). The subsequent acts of interacting and communicating with users through instant messaging, chat and other application objects are made possible only because the community has been previously "transmitted" to those users.

Accordingly, Facebook respectfully requests that the Court construe the term "transmit" to require, at a minimum, the act of sending. The most appropriate construction of the term, in light of the claims and specification, is no more complicated than "sending."[1] If, however, the Court still believes that some additional act beside sending is required, Facebook respectfully submits that the Court's previous construction be modified to read: "electronically

/ / /

/ / /

/ / /

---

[1] XACP devotes a considerable portion of its brief arguing that it would be improper to revise the Court's prior claim construction order. It is well-established, however, that the Court has inherent authority to reconsider and revise prior interlocutory orders, and may do so *sua sponte* and at any time prior to entry of judgment. *See, e.g.*, *Cabirac v. Commissioner of Internal Revenue*, No. Civ. A. 02-8057, 2003 WL 21790356, at *1, fn. 1 (E.D. Pa. 2003) (Padova, J.) ("That Order is an interlocutory order and the Court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment."); *I.H. ex rel. Litz v. County of Lehigh*, No. 04-CV-3890, 2007 WL 2781264, *1 (E.D. Pa. 2007) ("Although there is no pending motion to reconsider before me, a district court may reconsider its own interlocutory opinions *sua sponte*. . . Furthermore, as my Memorandum did not dispose of every claim in this action, it is 'subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties.'") (citing Fed. R. Civ. P. 54(b)).

connecting, sending out **and** communicating by any wireless or wire mechanism."

                                                Respectfully submitted,

Dated: March 26, 2008                           By:      /s/ Heidi L. Keefe
                                                Heidi L. Keefe
                                                Mark R. Weinstein
                                                Sam O'Rourke
                                                WHITE & CASE LLP
                                                3000 El Camino Real
                                                5 Palo Alto Square, 9th Floor
                                                Palo Alto, CA  94306

                                                Alfred W. Zaher
                                                Dennis P. McCooe
                                                BLANK ROME LLP
                                                130 N 18th St
                                                Philadelphia, PA 19103
                                                Attorneys for FACEBOOK, INC. and
                                                 THEFACEBOOK, LLC

# CERTIFICATE OF SERVICE

This is to hereby certify that on March 26, 2008, I caused a true and correct copy of FACEBOOK'S RESPONSE TO MARCH 17, 2008 ORDER TO SHOW CAUSE RE CONSTRUCTION OF "TRANSMIT" IN U.S. PATENT NO. 6,519,629 to be served via this Court's Electronic Filing ("ECF") System, upon the following:

>Frederick A. Tecce, Esq.
>McShea/Tecce, P.C.
>The Bell Atlantic Tower – 28th Floor
>1717 Arch Street
>Philadelphia, PA  19103
>ftecce@mcshea-tecce.com
>
>Thomas J. Duffy, Esq.
>Patrick J. Keenan, Esq.
>Duffy & Keenan
>One Liberty Place, 55th Floor
>1650 Market Street
>Philadelphia, PA  19103
>pjk@duffykeenan.com
>
>Counsel for plaintiff
>Cross Atlantic Capital Partners, Inc.

                                                                  /s/ Heidi L. Keefe
                                                                  Heidi L. Keefe