# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | **CIVIL ACTION** |
| Plaintiff, | **NO. 07-CV- 02768-JP** |
| v. | |
| FACEBOOK, INC. and THEFACEBOOK, LLC, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | **FACEBOOK MOTION NO. 4** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FACEBOOK'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

### [REDACTED VERSION FOR PUBLIC FILING]

**(Unredacted version filed separately under seal pursuant to Protective Order)**

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ....................................................................................................1

    A.    Procedural History ......................................................................................1

    B.    The Methods and Systems Claimed by the Patent-in-Suit........................1

III.  APPLICABLE LAW ..............................................................................................2

IV.   ARGUMENT..........................................................................................................4

    A.    Facebook Cannot Infringe Any Claim of the '629 Patent Because It Does
        Not Create Groups or Events Based on Community Identification
        Information ...................................................................................................4

        1.    The '629 Patent Requires a User to Provide Unique Information
            Identifying a Community....................................................................4

        2.    The Accused Facebook Groups and Events Features Do Not Infringe .......6

    B.    Facebook Cannot Infringe Claims 17-24 Because Facebook Alone Does Not
        Practice Each Step.......................................................................................11

    C.    Facebook Cannot Infringe Claims 25-32 Because It Does Not Meet Each
        Element of the Claims................................................................................13

    D.    Facebook Cannot Infringe Claims 8, 16, 24 or 32 Because the Accused
        System Does Not Provide "Vendor Fields" or Perform the Comparison
        Required by the Claims...............................................................................15

        1.    Facebook Does Not Have "Vendor Fields" ...............................................16

        2.    Facebook Does Not Practice a Method That Allows Comparison of
            "Community Fields" ...........................................................................19

        3.    Facebook Does Not Compare All Three Fields.........................................21

    E.    Facebook Cannot Infringe Claim 1-16 of the '629 Patent Because It Does
        Not Use a Method of Transmitting a Created Community Based on a User
        Supplied Communications Address............................................................21

V.    CONCLUSION......................................................................................................24

PALOALTO 89319 (2K)

# TABLE OF AUTHORITIES

## CASES

*BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) ...............2, 11, 12, 14

*Boykins v. Lucent Technologies, Inc.*, 78 F. Supp. 2d 402 (E.D. Pa. 2000) ....................................3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................................3

*Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325 (Fed. Cir. 1998)...........................3, 4

*Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377 (Fed. Cir. 2000)...........................................10

*TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360 (Fed. Cir. 2002).................................................3

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001) ......................2, 3

## STATUTES

Fed. R. Civ. P. 56(c) ........................................................................................................................3

PALOALTO 89319 (2K)

## I.  INTRODUCTION

Defendants Facebook, Inc. and TheFacebook, LLC (collectively "Facebook") are entitled to summary judgment of non-infringement of U.S. Patent No. 6,519,629 because the accused Facebook systems and methods do not infringe, and have never infringed, the asserted claims of the patent. Specifically:

- Facebook does not create Groups or Events based on user-provided community identification information as required by every claim of the patent.

- Facebook does not practice claims 17-24 because these claims require the coordinated effort between Facebook and parties outside its control.

- Facebook does not provide "vendor fields," nor allow a comparison of "community fields" as required by claims 8, 16, 24 and 32.

- Facebook does not infringe claims 25-32 because it does not make, sell, offer to sell, or import display devices for its users as required by the claims.

- Facebook does not transmit "communities" based on user provided communications addresses as required by claims 1-16.

As shown below, the patent-in-suit contains numerous narrow limitations that do not read on the accused product, making entry of summary judgment of non-infringement warranted.

## II.  BACKGROUND

### A.  Procedural History

On July 3, 2007, Cross Atlantic Capital Partners ("XACP") filed the instant action accusing Facebook of infringing each of the thirty-two (32) claims in U.S. Patent No. 6,519,629 ("'629 patent") through Facebook's "Groups" and "Events" features. On September 4, 2007, Facebook filed its Answer and Counterclaim for a declaration of non-infringement and invalidity. The Court entered an order construing the '629 patent claims on February 29, 2008.

### B.  The Methods and Systems Claimed by the Patent-in-Suit

The '629 patent purports to cover a method and system for creating on-line communities.

Claims 1, 9, 17 and 25 are independent claims that are similar to one another. Claim 1 of the '629 patent provides:

```
1. A method for creating a community for users with common interests to
   interact in, the method comprising the steps of:
        receiving a creation transmission from a registered user,
        the creation transmission indicating that the registered
        user desires to create a community;

        receiving community identification information from the
        registered user;

        receiving a selection of at least one application object
        from the registered user;

        creating a community based on the community identification
        information and the at least one application object;

        receiving at least one communications address designated by
        the registered user, the at least one communications
        address corresponding to a user to receive a created
        community; and

        transmitting the created community based in part on the at
        least one communications address.
```

Declaration of Jeremiah J. Burke in Support of Facebook's Motion for Summary Judgment of Non-Infringement ("Burke Decl.") Ex. A.

Each independent claim is followed by seven substantially identical dependent claims. *Id.*

## III.  APPLICABLE LAW

The legal standard for infringement in patent cases is well-established. To show infringement of a claim, the patent holder bears the burden of proving that the accused system satisfies each and every limitation of the claim. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001). The absence of even a single limitation from the accused system will preclude a finding of infringement. *Id.*; *see also BMC Resources, Inc. v.*

*Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007) ("Infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention.").

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), a party is entitled to summary judgment when it shows that the nonmoving party cannot provide evidence to support an essential element of its case, upon which it will bear the burden of proof at trial. "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Technologies, Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000).

Summary judgment of non-infringement is properly granted "where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial." *Telemac Cellular*, 247 F.3d at 1323 (affirming summary judgment of non-infringement); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1373 (Fed. Cir. 2002) ("We have further recognized that specific claim limitations cannot be ignored as insignificant or immaterial in determining infringement.").

Summary judgment of non-infringement is particularly appropriate when, as here, the operation of the allegedly infringing process is undisputed. *See Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332-33 (Fed. Cir. 1998). As explained below, there is no genuine issue of material fact regarding the operation of the accused Groups and Events features, and no dispute that they do not practice each and every limitation of the '629 patent claims asserted against Facebook.

## IV.   ARGUMENT

### A.   Facebook Cannot Infringe Any Claim of the '629 Patent Because It Does Not Create Groups or Events Based on Community Identification Information

#### 1.   The '629 Patent Requires a User to Provide Unique Information Identifying a Community

Every independent claim of the '629 patent requires (1) either the receipt or transmission of "community identification information" from a user, and (2) the creation of a community "based on" the community identification information.[1]  The parties agreed that "community identification information" is "[i]nformation that identifies the community being created, which may include, but is not limited to, a community name, description, search tags, keywords, information about the creator, and/or computer information." February 29, 2008 Order (Doc. No. 81) at 3.  This definition is a restatement of language in the '629 patent specification identifying examples of community identification information.  *See* Burke Decl. Ex. A at Col. 7, ll. 61-64; Col. 8, ll. 2-13.

The key aspect of "community identification information" is that the information must actually *identify* the community being created.  Common sense dictates that information can only serve to "identify" a community if it is unique, *i.e.* not already in use by another community. After all, if a system allowed users to create multiple communities with identical names, it can hardly be said that the name serves the purpose of identifying the community.  This common sense approach is explained plainly in the '629 patent, which makes clear that an infringing system must ensure that the "community identification information" is unique:

---

[1] *See* Burke Decl., Ex. A at Col. 31, ll. 4-5, 8-10 (claim 1, reciting "receiving community identification information from the registered user," "creating a community based on the community identification information . . . ."); *id.* Col. 32, ll. 4-5, 12-13 (same, claim 9); *id.* Col. 33, ll. 3, 8-9 (claim 17, reciting "transmitting community identification information," "the community is created based on the community identification information . . . ."); *id.* Col. 33, ln. 62-col. 34, ln. 1, col. 34, ll. 5-7 (same, claim 25).

FIG. 2 is a flow-chart which illustrates creating a community according to an embodiment of the invention. A creating user, or creator, starts creating a community at step **200**. At step **202**, a creator provides community identification information, and community identification information is screened to determine if the information is valid at step **204**. If community identification information is not valid, a creator is informed at step **206**, and is returned to step **202**.

Burke Decl., Ex. A at Col. 7, ll. 27-34. The specification discloses that community identification is "not valid" when the community name is already in use (not unique):

> At step **204**, central controller screens community identification information to determine if it is valid. If community identification information is already in use, such as a community name already in use, a creator may be informed of this event at step **206** and may be returned to step **202** to provide different community identification information.

*Id.*, Col. 8, ll. 24-34.

This is explicitly shown in Figure 2, which illustrates the perpetual "loop" (from step **202** to **204** and **206**, back to **202**) a user would encounter if the user attempted to create a community with a name already in use:



FIG. 2

Burke Decl. Ex. A at Fig. 2 (partial figure shown).

As shown above, the system disclosed in the '629 patent explicitly checks (step **204**) if the community identification information ("CII") is valid, and if not, tells the user that it is a "duplicate" (step **206**), then forces the user to provide different community identification information (step **202**). The '629 patent and the Court's construction clearly require a community creation system that ensures that the "community identification information" provided by a user fulfills an identification function by distinguishing between, and preventing duplicates among communities.

### 2. The Accused Facebook Groups and Events Features Do Not Infringe

XACP has claimed that the Groups and Events features of Facebook's website infringe the '629 patent. The Court can dispose of this entire case on summary judgment because the accused features do not require user-provided "community identification information" to be unique.

As explained in the supporting Declaration of Blake Ross, the process for creating a Group or Event using Facebook is straightforward. To create a Group, a registered user logs onto the facebook.com website and presses a button to create a new Group. *See* Declaration of Blake Ross in Support of Motion for Summary Judgment of Non-Infringement ("Ross Decl.") ¶¶ 4-6. The user is taken to another page that asks the user to provide a minimum amount of required information, specifically a "Group Name," "Description," "Group Type," and a "Network" selection (if the user wishes to alter the default "Network"). Ross Decl. ¶ 7. A representation of the applicable page appears in Figure 1, below.



**Figure 1 – Page for Creating a Group on Facebook (emphasis added)**

Redacted

This technique is fundamentally different from the technique described in the '629 patent,

which relies on the user-provided information (that has been screened for uniqueness) to identify

a new community.  An example of this is shown in the figure below, which was generated using the Facebook Groups feature:



**Figure 2 – Example of Multiple Groups With Identical Names, Networks, Descriptions and Types**



For example, if the user were to select the first "John Smith's Work Group" shown at the top of Figure 1, the following screen would appear:



**Figure 3 - "John Smith's Work Group" (gid = 34292263168)**



Thus, Facebook uses a method of identifying Groups and Events that is fundamentally different from the one covered by the '629 patent. If Facebook actually practiced the claimed systems and methods of the '629 patent, it would ensure that a user creating a new Group or Event could not proceed beyond the initial screen if the user attempted to use a name that was already in use. As shown above, this is not what Facebook does. Even XACP's expert witness, Mr. Edward Yourdon, concurs:

Redacted

Burke Decl., Ex. C (*Deposition of Edward Yourdon*) at 181:23-182:8.

Facebook is therefore entitled to summary judgment of non-infringement as to each independent claim of the '629 patent because it does not receive "community identification information" from the user. Because XACP cannot establish infringement of any independent claim, it likewise cannot show infringement of any dependent claims. *See, e.g., Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000) (a dependent claim cannot be infringed unless the claim from which it depends is also infringed). Summary judgment of non-infringement on the entire '629 patent is therefore appropriate.

**B.      Facebook Cannot Infringe Claims 17-24 Because Facebook Alone Does Not Practice Each Step**

Facebook cannot infringe claims 17-24 because it does not practice each step recited in those claims.  Claim 17 of the '629 patent is an independent claim that recites:

```
17. A method for creating a community for users with common
interests to interact in, the method comprising the steps of:

transmitting a creation transmission, the creation transmission
indicating the desire to create a community;

transmitting community identification information;

transmitting at least one communications address corresponding to
a user to receive the created community; and

selecting at least one application object for inclusion in the
community,

whereby the community is created based on the community
identification information and the at least one application
object.
```

Burke Decl., Ex. A Col. 32, ln. 65-col. 33, ln. 10.  Claims 18 through 24 are dependent claims that depend, directly or indirectly, from claim 17.

As shown above, claim 17 recites three steps involving the "transmitting" of certain information, a "selecting" step, followed by the step of creating the community.  XACP's theory of infringement is that Facebook users perform the "transmitting" and "selecting" steps recited in claim 17 by filling out an electronic form using a web browser (an example of which is shown in Part IV.A.2, *supra* (Figure 1)), while Facebook performs the final step of creating the community.  *See* Burke Decl., Ex. B (*XACP Response to Interrogatory No. 1*) at 13-15.

The Federal Circuit has squarely rejected XACP's "divided infringement" theory and held that infringement does not occur unless a single party performs or practices the entire claim.  *See BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).  In *BMC Resources*, the plaintiff accused the defendant of infringing an electronic payment processing

patent even though some of the steps in the claims were performed by parties other than the defendant. The court rejected this argument, reasoning that "[d]irect infringement requires a party to perform or use each and every step or element of a claimed method or product." *Id.* at 1378. Because no individual party performed all of the claim elements, the court found that the plaintiff could not show direct infringement. *Id.* at 1379-80. The court then rejected the plaintiff's claim for indirect infringement (based on inducement) for the same reasons, noting that "[i]ndirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed *the entire act of direct infringement.*" *Id.* at 1379 (emphasis added). Because the plaintiff could not establish direct or indirect infringement, the court affirmed summary judgment of non-infringement. *Id.* at 1380-81.

The *BMC Resources* decision confirmed the long-established rule that infringement liability requires a single party to perform or practice all of the elements of an asserted claim. The decision confirms that liability for infringement will not arise merely because the collective actions of multiple actors read on the elements of a claim. *Id.* at 1380.

Here, XACP cannot identify a single party that practices each step of claim 17, and it is undisputed that XACP's theory of infringement relies on the division of actions between Facebook and its users. Summary judgment of non-infringement is therefore appropriate.

XACP may attempt to argue that Facebook is somehow vicariously liable for infringement, but any such argument would fail. The court in *BMC Resources* recognized that the "single party" rule could potentially create a loophole, not implicated here, in which a party could avoid liability by simply hiring a third party to perform a claim step on its behalf. *Id.* at 1379. The court addressed this issue by creating a narrow rule holding that a party cannot escape infringement by simply "contracting out steps of a patented process to another entity." *Id.* at

1381.[2] "In the context of patent infringement, a defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps *on its behalf.*" *Id.* at 1379 (emphasis added). A party can be vicariously liable, the court held, when it "controlled the conduct of the acting party." *Id.*

The "control" theory recognized in *BMC Resources* does not create or sanction a theory of divided infringement, and the concerns it was designed to address are clearly not present here. XACP has offered no evidence of any contractual or other relationship by which Facebook exercises control over its users. It is undisputed that Groups and Events are optional features that Facebook users are not required to use. Users may choose to not create a Group or Event, or even they chose to create one, could decide not to send out invitations to other users. As to each of the "transmitting" steps and the "selecting" step of claim 17 XACP claims are performed by users, those users at all times remain free to transmit or select nothing at all.

In sum, because Facebook does not perform the selecting and transmitting steps, summary judgment of non-infringement as to claims 17-24 is appropriate.

### C. Facebook Cannot Infringe Claims 25-32 Because It Does Not Meet Each Element of the Claims

Facebook cannot infringe claims 25-32 for the same reasons discussed above with respect to claims 17-24. Claim 25 of the '629 patent is an independent apparatus claim that contains many of the elements recited in claim 17:

```
25. A system for creating a community for users with common
interests to interact in, the system comprising:

a transmitter module for transmitting:
```

---

[2] In fact, the Federal Circuit expressly acknowledged that the "control" requirement "may in some circumstances allow parties to enter into arms-length agreements to avoid infringement. Nonetheless, this concern does not outweigh concerns over expanding the rules governing direct infringement." *BMC Resources*, 498 F.3d at 1381.

```
a) a creation transmission, the creation transmission
indicating the desire to create a community;

b) community identification information;

c) at least one communications address corresponding to a
user to receive the created community; and

d) a selection of at least one application object for
inclusion in the community,

whereby the community is created based on the community
identification information and the at least one application
object; and

a display module for displaying prompts for the community
identification information, the at least one communications
address, and the selection of at least one application object.
```

Burke Decl., Ex. A Col. 33, ln. 61-col. 34, ln. 13 (emphasis added). Claims 26 through 32 are

dependent claims that depend, directly or indirectly, from claim 25. XACP cannot establish

infringement of these claims for two reasons.

First, XACP cannot establish infringement of claim 25 because, as with claim 17

described above, XACP's theory of infringement depends on dividing up the claim elements

between Facebook and its users. The acts of transmitting "a creation transmission," "community

identification information," "at least one communications address" and "a selection of at least

one application object" are allegedly performed by a Facebook *user*, while on the other side of

the equation, *Facebook* is allegedly creating the community. Liability for "divided

infringement" under these circumstances cannot be established for the reasons explained above.

*See BMC Resources*, 498 F.3d at 1380 ("Infringement requires, as it always has, a showing that a

defendant has practiced each and every element of the claimed invention.").

Second, XACP has provided no evidence that Facebook satisfies the final element of

claim 25, which requires "a display module for displaying prompts for the community

identification information, the at least one communications address, and the selection of at least

one application object." This Court has held that "the customary meaning of 'display' requires

hardware," and construed the term "display module" to mean "a device that displays on-screen information, such as a CRT display." February 29, 2008 Order (Doc. No. 81) at 19, 22. Under the Court's ruling, the only "display module" to which XACP could conceivably point is the monitor or other display device that a Facebook user employs to fill out forms when creating a Group or Event. It is undisputed, however, that Facebook does not sell or otherwise provide display hardware to its users. It plays no role in selecting display hardware for its users and does not advise or encourage users to procure any particular display hardware. *See* Ross Decl. ¶ 24. XACP cannot show that Facebook satisfies this element.

**D.** **Facebook Cannot Infringe Claims 8, 16, 24 or 32 Because the Accused System Does Not Provide "Vendor Fields" or Perform the Comparison Required by the Claims**

An additional non-infringement ground exists for removing dependent claims 8, 16, 24 and 32 from this case. Claim 8 of the '629 patent reads:

```
8.     The method according to claim 1, wherein community
information further comprises community fields, whereby the
community presents to a user at least [sic] at least one of:

       a) at least one other user having user fields;

       b) at least one other community having community fields;
       and

       c) at least one vendor product having vendor fields;

wherein the presentation is based in part on a comparison of user
fields, community fields and vendor fields.
```

Burke Decl., Ex. A Col. 31, ll. 54-64. Claims 16, 24 and 32 are substantially identical to claim 8 shown above except that they depend from different independent claims. *Id.*, Col. 32, ll. 54-64; col. 33, ll. 49-50; col. 34, ll. 52-63.

XACP alleges that Facebook practices these claims through a combination of two features: (1) the ability to present an advertisement on a Group page on Facebook (which XACP

claims is  a presentation of a "vendor product") and (2) a feature known as Related Groups, which displays a list of other Groups that have the most members in common with the Group the user is viewing (which XACP claims is the presentation of "at least one other community"). *See* Burke Decl., Ex. B at 7; Ex. C at 277:16-279:20.

Claim 8, shown above, requires the presence of user fields, vendor fields, <u>and</u> community fields because the claim requires all three to be compared against each other (*i.e.*, "the presentation is based in part on a comparison of user fields, community fields and vendor fields"). Here, XACP cannot show infringement of these claims because it cannot establish that Facebook has "vendor fields" or performs the "comparison" required by the claims.

### 1.    Facebook Does Not Have "Vendor Fields"

Facebook provides an advertising system that allows potential advertisers to place ads on the Facebook system. Facebook provides a user interface that allows a prospective advertiser to specify the parameters of an ad. One of these parameters is for the advertiser to specify the audience it wishes to reach. Below is a depiction of one of the forms Facebook presents to potential advertisers wishing to place ads on Facebook:

//

//

//

//

//

//

//

//



**Figure 4 – Choose Audience Page**

Ross Decl. ¶ 22.

The above form asks the advertiser to identify characteristics <u>about the user</u> to whom the ad should be targeted. Ads can be targeted based on, for example, the user's location, gender, age, educational status, keywords or other information that may be present in a user's profile, as shown above.

The information provided by a potential advertiser clearly does not meet the definition of "vendor fields" in the '629 patent. The Court's claim construction order defined "vendor fields" as: "Information that *describes a product or service*, which may comprise, but is not limited to, a

category or categories of interest, language, location, age group, and/or meta tags of interest associated with a product or service." February 29, 2008 Order (Doc. No. 81), at 4 (emphasis added). Nowhere on the form does Facebook solicit information that "describes a product or service." The information the advertiser can provide, *i.e.*, location, sex, age, keywords, education status, workplaces, relationship status and "interested in," are used to describe the user the advertiser wants to target – not the products or services an advertiser may be promoting. Ross Decl. ¶ 23. Facebook's ad system does not obtain or use any information describing a product or service the advertiser may be promoting. *Id.* Indeed, an advertiser could elect to promote any number of products or services, none of which would be described or identified by the information provided to Facebook.

Redacted

Burke Decl., Ex. C at 272:22-273:19 (emphasis added).

The definition of "vendor fields" makes clear that the patent requires the information to "describe[] a product or service," not to describe a user. In fact, claim 8 specifies an entirely different type of information – user fields – which are used to describe the demographics of

particular users. *See* February 29, 2008 Order (Doc. No. 81), at 4. XACP's theory of infringement improperly seeks to eliminate the clear distinctions between "vendor fields" and "user fields" reflected in the claim construction order and throughout the '629 patent.

It is axiomatic that because Facebook's system does not have "vendor fields," they cannot be used for any "comparison," which is yet another reason Facebook does not infringe.

### 2. Facebook Does Not Practice a Method That Allows Comparison of "Community Fields"

Facebook is also entitled to summary judgment of non-infringement as to claim 8 because it does not practice the element that specifies "at least one other community having community fields" and requires a comparison of "community fields." The Court defined "community fields" to mean: "Information that designates the interests and/or demographics of a community, which may comprise, but is not limited to, a category or categories of interest, language, location, age group, and/or metatags of interest associated with a community, which may overlap with other community identification information." February 29, 2008 Order (Doc. No. 81), at 4.

Redacted

Redacted

Burke Decl., Ex. C at 281:8-283:8 (emphasis added).

XACP's admission that "[t]he information that is compared does not involve community fields," *id.*, is fatal to its claim of infringement of claims 8, 16, 32 and 32. Considering the

admissions by XACP's own expert, it is inexcusable that XACP persists in maintaining its ill-conceived allegations of infringement. Summary judgment is appropriate as to these claims.

### 3. Facebook Does Not Compare All Three Fields

Yet another ground exists to dismiss XACP's assertion of claims 8, 16, 24 and 32. Claim 8 requires a comparison between each of the community, user and vendor fields (*e.g.*, Claim 8: "the presentation is based in part on a comparison of user fields, community fields and vendor fields") (emphasis added). Because no "vendor fields" even exist (Part IV.D.1, *supra*), obviously no such fields could ever be used for a comparison. Nor can XACP identify any instance in which "community fields" are compared at all, as described in the preceding section. Beyond these failures, XACP has failed to identify any instance in which all three fields are compared as required by the plain language of the claim. Accordingly, there is no genuine issue of material fact and entry of summary judgment of non-infringement is appropriate.

### E. Facebook Cannot Infringe Claim 1-16 of the '629 Patent Because It Does Not Use a Method of Transmitting a Created Community Based on a User Supplied Communications Address

Yet another reason for non-infringement of claims 1-16 is that independent claims 1 and 9 call for the accused community creation system to receive "at least one communications address designated by the registered user." Following that receipt, the accused system must "[transmit] the created community based in part on the at least one communications address." The parties stipulated that a "communications address" is "the precise location in a computer system or network where a communication may be received or sent, such as an e-mail address, IP address, URL or Internet Relay Chat address." February 29, 2008 Order (Doc. No. 81). The Court has construed "transmitting" as "electronically connecting and/or communicating by any wireless or wire mechanism." Doc. No. 95, <u>Order</u>. In other words, in order for claims 1-16 to be infringed, a system would have to receive an email address from a user, and then use *that*

user-provided email address to connect the user to the community. Or the system could receive an IP address from a user and then use *that* user-provided IP address to connect the user to the community. Facebook does neither, and therefore cannot infringe.

In the Facebook system, when a user creates a Group or an Event, he is allowed to invite people to join. The form on the facebook.com website allows the user to optionally enter email addresses of persons it wishes to invite. Therefore, other persons could be notified by an e-mail message asking them to join. Ross Decl. ¶ 20.

Redacted

Following receipt of the invitation email, if the invitee wishes to access the Group, he must connect to the Facebook server. When an invitee actually connects to or accesses a Group or Event, though, the connection takes place through the user's web browser using an Internet Protocol (IP) address of the computer he is using at the time. Ross Decl. ¶ 21. Facebook's servers use the IP address of the invitee's computer to send information to the invitee's web browser.

Thus, Facebook uses the IP address of the invitee's computer (and not the user's e-mail address) to connect the invitee to his Group or Event. This IP address is never provided by a user in connection with inviting other users to join a Group or Event. Ross Decl. ¶ 21. XACP's

expert confirms that

Redacted

PALOALTO 89319 (2K)

Redacted

Burke Decl., Ex. C 254:3-17. Because it is undisputed that Facebook does not transmit the created community using a user-supplied communications address, there can be no infringement of claims 1-16.

## V. CONCLUSION

For the foregoing reasons, Facebook respectfully requests entry of summary judgment of non-infringement as to each claim of the '629 patent for the reasons discussed above.

Dated: June 20, 2008

By: ____/s/ Heidi L. Keefe____

Heidi L. Keefe
Mark R. Weinstein
Craig W. Clark
WHITE & CASE LLP
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306

Alfred W. Zaher
Dennis P. McCooe
BLANK ROME LLP
130 N 18th St
Philadelphia, PA 19103

Attorneys for FACEBOOK, INC. and
THEFACEBOOK, LLC

24

## CERTIFICATE OF SERVICE

This is to hereby certify that on this 20th day of June, 2008, I caused a true and correct copy of the foregoing document: Memorandum of Points and Authorities in Support of Facebook's Motion for Summary Judgment of Non-Infringement to be served *via* this Court's Electronic Filing ("ECF") System upon the following:

Frederick A. Tecce, Esq.
McShea/Tecce, P.C.
The Bell Atlantic Tower – 28th Floor
1717 Arch Street
Philadelphia, PA 19103
ftecce@mcshea-tecce.com

Thomas J. Duffy, Esq.
Patrick J. Keenan, Esq.
Duffy & Keenan
One Liberty Place, 55th Floor
1650 Market Street
Philadelphia, PA 19103
pjk@duffykeenan.com

Counsel for plaintiff
Cross Atlantic Capital Partners, Inc.


/s/ Heidi L. Keefe
Heidi L. Keefe