IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CROSS ATLANTIC CAPITAL PARTNERS, INC., | : : : | CIVIL ACTION |
| Plaintiff, | : : | NO.: 07-CV-02768 |
| vs. | : : | |
| FACEBOOK, INC. and THEFACEBOOK, LLC | : : : | |
| Defendants. | : | |

PLAINTIFF'S RESPONSE TO
DEFENDANTS' STATEMENT OF MATERIAL
FACTS IN SUPPORT OF FACEBOOK'S MOTION FOR
SUMMARY JUDGMENT OF INEQUITABLE CONDUCT

COMES NOW, the plaintiff, Cross Atlantic Capital Partners, Inc., by and through its undersigned counsel, and hereby responds to the Statement of Material Facts submitted by the defendants Facebook, Inc. and Thefacebook, LLC. in support of their Motion For Summary Judgment of Inequitable Conduct

1. In 1999, Mr. Harvey founded and became Chief Executive Officer of iKimbo, Inc. ("iKimbo"). Declaration of Dennis P. McCooe in Support of Facebook's Motion for Summary Judgment of Inequitable Conduct (McCooe Decl.") Ex. C. (Deposition of James Harvey) at 43:21-44:7; 58:12-14.

**RESPONSE:**

**Admitted that the referenced quote is a partial excerpt of the deposition of Mr. Harvey.**

2. In 1999, Andrew Fregly became Chief Technology Officer of iKimbo. McCooe Decl. Ex. B (iKimbo Business Plan October 1999) at AF-00032.

**RESPONSE:**

Denied. The document submitted in support of Paragraph 2 is hearsay. To the extent that AF-00032 is admissible, the document speaks for itself.

3. Mr. Harvey analyzed and studied competing third-party products that allowed users to create on-line communities. McCooe Decl. Ex. B at AF-00048-00049.

**RESPONSE:**

Denied. AF-0048-00049 are hearsay and are therefore inadmissible. To the extent that the document is admissible, it speaks for itself. By way of further denial, Harvey was generally familiar with numerous online community systems all of which were unlike iKimbo. (Harvey Decl. at ¶ 9-16).

4. Mr. Harvey incorporated his studies of the on-line community market into a detailed Business Plan, dated October 1999, for iKimbo. McCooe Decl. Ex. B at AF-00048-00049.

**RESPONSE:**

Denied. AF-0048-00049 is hearsay. To the extent that it is admissible, it speaks for itself. The business plan was a marketing document. It had nothing to do with technology. (Harvey Decl. at ¶ 21).

5. The Business Plan stated, "In terms of functionality and market position, iKimbo most closely resembles web sites that allow people to develop their own community of interest sites." McCooe Decl. Ex. B at AF-00049.

**RESPONSE:**

Denied. AF-00049 is inadmissible. To the extent that it is admissible, it speaks for itself. Harvey was generally aware of various systems which were unlike iKimbo. (Harvey Decl. at ¶¶ 9-16).

6. The Business Plan identifies strong and formidable competitors building on-line community sites, including eGroups, Yahoo! and Excite Communities. McCooe Decl. Ex. B at AF-00049. The Business Plan identifies nine on-line community building sites. *Id.*

**RESPONSE:**

**Denied. AF-00049 is inadmissible. To the extent that it is admissible, it speaks for itself. By way of further denial, Harvey was generally aware of numerous systems which were unlike iKimbo. (Harvey Decl. at ¶¶ 9-16). The sole focus of the business plan was marketing strategy. (Harvey Decl. At ¶ 21).**

7. Mr. Harvey testified that he was the main person studying all of the sites in the Business Plan. McCooe Decl. Ex. C at 85:11-86:5.

**RESPONSE:**

**Admitted that referenced quote is a partial excerpt of the deposition of Mr. Harvey. The remaining allegations of Paragraph 7 are denied.**

8. Even before 1999, eGroups allowed registered user to create online communities and invite others to join by entering in their email address. Members of the community could interact using calendar, filing sharing, and photo sharing applications. McCooe Decl. Ex. F (Deposition of Jack Wu) 11:5-15:10; 24:9-21; 26:6-21.

**RESPONSE:**

**Denied. The uncorroborated testimony of Jack Wu is insufficient as a matter of law to establish the configuration of eGroups and its effective date any earlier than September 15, 1999. It is admitted that the referenced quote is a partial excerpt of the deposition of Mr. Wu.**

9. The Business Plan states that eGroups has "well established, vibrant communities in which members can develop their own web pages, participate in group discussions with relative ease, upload information, swap information and some offer limited 'opt-in' e-commerce applications." McCooe Decl. Ex. B at AF-00049. It further states, "In fact, since its establishment in January '99, eGroups has amassed over 5 ½

million members." *Id.*

**RESPONSE:**

**Denied. AF-00049 is hearsay. To the extent that it is admissible, the document speaks for itself. Harvey was generally aware of various systems which were unlike iKimbo. (Harvey Decl. at ¶¶ 9-16).**

10. Mr. Harvey testified:

   Q. What was eGroups?

   A. eGroups was a site designed to have groups communicate with one another online.

   Q. Had you ever used eGroups before [the October 1999 Business Plan] was prepared?

   A. Yes.

McCooe Decl. Ex. C at 80:10-15.

**RESPONSE:**

**Denied. It is admitted that the reference quote is a partial excerpt of the deposition of Mr. Harvey.**

11. Mr. Fregly testified:

   Q. Before you joined iKimbo, were you a member of any online communities?

   A. Yes.

   Q. And which online communities were you a member of?

   A. A community called eGroups.

   Q. When did you become a member of eGroups?

A. I don't recall the exact date. I can give you a time frame.

Q. Please.

A. Somewhere between 1998 to mid-1999.

McCooe Decl. Ex. H (Deposition of Andrew Fregly) at 38:15-39:1.

**RESPONSE:**

**Denied. It is admitted that the referenced quote is a partial excerpt of the deposition of Mr. Harvey.**

12. Mr. Fregly used eGroups to create his own community for a person development course. McCooe Decl. Ex. H at 39:11-13. His eGroup – called WDCTMLP, an acronym for Washington D.C. Team Management and Leadership Program – had approximately 50 active members and grew by about 20 to 30 members each year. *Id.* at 40:6-12.

**RESPONSE:**

**It is admitted that the referenced quote is a partial excerpt of the deposition of Mr. Fregly. The remaining allegations of Paragraph 12 are denied.**

13. Mr. Fregly was aware of the eGroups' community creation process and the invitation functionality:

Q. How did you set up that group with eGroups?

A. I logged on onto eGroups. I got an account at eGroups. And then I went into eGroups and, using a function provided by eGroups, created a group, which involved giving it a name. And then they had a way of inviting people to join the group.

McCooe Decl. Ex. H at 41:3-10.

**RESPONSE:**

**It is admitted that the referenced quote is a partial excerpt of the deposition of Mr. Fregly. The remaining allegations of Paragraph 13 are denied.**

14. Mr. Fregly was aware of that eGropus contained a calendar and survey applications objects?

> A. How did I used the group? We tried using a calendar function in it. We used it a few times. We also did a couple of uses of the survey function.
>
> Q. Were the calendar and survey functions applications that eGroups provided?
>
> A. they were part ... Yes, they were part of the application.

McCooe Decl. Ex. H at 41:17-42:1.

**RESPONSE:**

**It is admitted that the referenced quote is a partial excerpt of the deposition of Mr. Fregly. The remaining allegations of Paragraph 13 are denied.**

15. Mr. Fregly was invited to join an online community centered on participation in a bike-a-thon. McCooe Decl. Ex. H at 42:21-43:7.

**RESPONSE:**

**It is admitted that the referenced quote is a partial excerpt of the deposition of Mr. Fregly. The remaining allegations of Paragraph 13 are denied.**

16. Excite Communities launched in August 17, 1998. McCooe Decl. Ex. I (Deposition of Scott Derringer) at 16:6-10.

**RESPONSE:**

**Denied. Mr. Derringer's uncorroborated testimony is inadmissible as a**

matter of law. By way of further denial, the documents relied upon by the Defendants are also inadmissible as hearsay and fail to establish the configuration of the Excite System and any date earlier then August 17, 1998.

17. After the launch, to create an Excite Community, registered users of Excite would enter a name for and description of the community on the Excite Communities webpage. After creation of the community, users could invite others to join the community by inputting their email addresses into an on-line form provided by Excite. Once formed, the Excite Community offered application objects, including discussion boards, chat, shared calendaring, links and shared photos. McCooe Decl. Ex. I at 22:12-23:2; 25:25-27:10; 24:4-24; 85:11-86:20.

**RESPONSE:**

**Denied. The uncorroborated testimony of Mr. Derringer is insufficient as a matter of law to establish the configuration of the Excite system. The configuration of the Excite system is limited to the configuration set forth in the documents attached as Exhibit E to XACP's opposition brief. By way of further denial, the Excite documents are hearsay.**

18. On August 17, 2998, *CBS Market Watch* wrote a story about the launch titled "Excite Unveils Communities Strategy:

> Excite Inc. began a test entry into the crowded Web 'community' business, which lets users create their other Web sites and online businesses. Registered visitors have will have the ability to build home pages, publish photo albums, organize personal and business interest areas on the Web, make them public available or private, and accompany them with by chat sessions and message boards. "It's about enabling groups of people to create their own online communities and give them the tools," Excite produce manager Scott Derringer told *CBS.MarketWatch.com*.

McCooe Decl. Ex. I at 18:7-25.

**RESPONSE:**

**Denied. *CBS.MarketWatch* is hearsay and therefore does not establish the configuration or effective date of the Excite system. Further, this testimony is inconsistent with Mr. Derringer's testimony that at the time, these features were what Excite intended to have. (Derringer Tr. at 18:10-19:4).**

19. Mr. Harvey's Business Plan describes Excite Communities as a "formidable" competitor with a "well established e-commerce communities, often with a loyal customer base." McCooe Decl. Ex. B at AF-00049. The Business Plan further states, "Excite, for example, has over 200,000 registered communities averaging 45 members per community. *Id.*

**RESPONSE:**

**Denied. AF-00049 is hearsay. To the extent that the document is admissible, it speaks for itself. Harvey was generally aware of various systems which were unlike iKimbo. (Harvey Decl. at ¶¶ 9-16).**

20. Mr. Harvey testified:

    Q. Can you recall having used Excite communities?

    A. All of the sites that are listed in the business plan were looked at by either myself or somebody in the executive team. But I mainly looked at all of them - - ... at this stage of the company.

McCooe Decl. Ex. C at 85:11-86:5.

**RESPONSE:**

**It is admitted that the referenced quote is a partial excerpt of the deposition of Mr. Harvey. The remaining allegations of Paragraph 20 are denied.**

21. On August 18, 1998, Yahoo! Inc. released a community creation tool called Yahoo! Clubs. McCooe Decl. Ex. G (Deposition of Ethan Kan) at 18:4-20:2; Ex. K.

**RESPONSE:**

**Denied. The uncorroborated testimony of Mr. Kan is insufficient as a matter of law to establish the August 1998 date.**

22. Yahoo!'s August 19, 1998 press release announced:

### Getting Started

Creating a club is simple - Yahoo! Clubs requires no special software, HTML or other technical skills to get started. People can begin by going to http://clubs.yahoo.com, where they can browse more than a dozen subjects and choose the category that best suits the club they want to create. Individuals then select their club name and choose whether they'd like an Unlisted club (only for people they invite) or Listed club (available to the general public. Yahoo! provides the club founder with the tools and features needed to create the club, including a designated area where founders can post photos and general club messages. Founders are also given the administrative rights to moderate and modify their clubs and can opt to share these rights with other individuals.

### Club Features - All the Best Community Tools in One Place

Yahoo! Clubs features some of Yahoo!'s most popular communications and community tools - brought together in one convenient location for individuals and organizations to use and create their own meeting place on the Web.

### Key features include:

**Message Boards** - Post messages, voice opinions, respond to other users and invite other club members to event

**Chat** - Engage in private, real-time chat with other members of the club using Yahoo!'s new chat technology

**Member Activity** - See what has recently taken place in the

club, including who's coming and going, how many people
have visited and other club statistics; check out the member
list and read the profiles of the individuals in the club

**Email** - Send e-mail to other members in a club; founders can
send group e-mail to all club members simultaneously to keep
them updated on the latest club news and announcements

**Web Links** - Share, compare and comment on favorite Web
links

McCooe Decl. Ex. K (Yahoo! Press Release)

### RESPONSE:

**Admitted in part, denied in part. It is admitted that the August 19, 1998 press release contained the cited language. However, that press release is hearsay. Moreover, that language fails to establish the configuration of Yahoo! Clubs as a matter of law. The remaining allegations of Paragraph 22 are denied.**

23. Mr. Fregly knew of Yahoo! Clubs before working on the iKimbo product. McCooe Decl. Ex. H at 44:13-20.

### RESPONSE:

**It is admitted that the referenced quote is a partial excerpt of the deposition of Mr. Fregly. The remaining allegations of Paragraph 23 are denied.**

24. Mr. Harvey's research identified Yahoo! as a competitor. McCooe Decl. Ex. B at AF-00049.

### RESPONSE:

**Denied. AF-00049 is hearsay. To the extent that it is admissible, it speaks for itself.** *See also,* **Harvey Decl. at ¶ 20-22.**

25. Harvey testified that patents were essential to attracting investors because

they were the "special sauce" that provided investors with an "insurance policy" and "downside protection." McCooe Decl. Ex. C at 169:21-171:15. Mr. Harvey further testified, that patents "were what gave us the competence to swing into a crowded but undifferentiated field of competitors and believe that we could beat them. *Id.* at 170:3-9.

## RESPONSE:

**It is admitted that the referenced quote is a partial excerpt of the deposition of Mr. Harvey. The remaining allegations of Paragraph 25 are denied. By way of further denial, *see also,* Harvey Decl. at ¶ 20-22.**


26. On May 10, 2000, Harvey and Fregly submitted a Joint Declaration in connection with Patent Application No. 09/513,844 acknowledging their duty "to disclose all information know to us to be material to the patentability of this application as defined in 37 C.F.R. § 1.56." McCooe Decl. Ex. P.

## RESPONSE:

**It is admitted that on May 10, 2000 Harvey and Fregly submitted a joint declaration. The remaining allegations of Paragraph 26 are denied.**


27. On May 26, 2000, an Information Disclosure Statement was submitted to the United States Patent and Trademark Office ("USPTO") in connection with Application No. 09/513,844. The Information Disclosure Statement did not disclose Yahoo! Clubs, Excite Communities or eGroups. McCooe Decl. Ex. Q.

## RESPONSE:

**Denied. The prior art of record identified online communities in general which would have included Yahoo! Clubs, Excite Communities and eGroups.**


28. On June 27, 2000, an Information Disclosure Statement was submitted to the USPTO in connection with Application No. 09/513,844. The Information Disclosure Statement did not disclose Yahoo! Clubs, Excite Communities or eGroups. McCooe Decl. Ex. R.

**RESPONSE:**

**Denied. The prior art of record described numerous online communities all of which would have included Yahoo! Clubs, Excite Communities and eGroups.**

29. On November 9, 2001, an Information Disclosure Statement was submitted to the USPTO in connection with Application No. 09/968,386. The Information Disclosure Statement did not disclose Yahoo! Clubs, Excite Communities or eGroups. McCooe Decl. Ex. X.

**RESPONSE:**

**Denied. The Information Disclosure Statement included numerous prior art online communities having all the features of the three references. ('629 Prosecution History and cited art.)**

30. No information by the inventors or anyone else about eGroups, Excite Communities, or Yahoo! Clubs was provided to the USPTO during the prosecution of U.S. Patent No. 6,519,629 (the '629 Patent).

**RESPONSE:**

**Denied.**

31. Mr. Harvey and Mr. Fregly knew about eGroups, Excite Communities, and Yahoo! Clubs before filing the application for the patent-in-suit.

**RESPONSE:**

**Denied. Harvey and Fregly were generally familiar with numerous online community groups. (Fregly Decl. at ¶¶ 5-19; Harvey Decl. at ¶¶ 17-19.)**

32. eGroups, Excite Communities and Yahoo! Clubs were material to the patentability of the '629 Patent. McCooe Decl. Ex. B at AF-00049; Ex. F at 11:5-15:10; 24:9-21; 26:6-21; Ex. I at 22:12-23:2; 24:4-24; 25:25-27:10, Ex. K.

**RESPONSE:**

**Denied. By way of further denial, Paragraph 32 states a conclusion of law to which no response is necessary.**

33. Mr. Harvey and Mr. Fregly knew or should have known of the materiality of eGroups, Excite Communities, and Yahoo! Clubs.

**RESPONSE:**

**Denied.**

34. Mr. Harvey and Mr. Fregly have not provided an explanation for their failure to disclose eGroups, Excite Communities, and Yahoo! Clubs to the USPTO.

**RESPONSE:**

**Denied. (Harvey Decl. - Ex. Q; Fregly Decl. - Ex. R respectively).**

                    Respectfully submitted,

Dated: July 14, 2008

/s/ Frederick A. Tecce
Thomas J. Duffy, Esquire (PA ID # 34729)
Patrick J. Kennan, Esquire (PA ID # 53775)
**Duffy & Keenan**
One Liberty Place - 55th Floor
1635 Market Street
Philadelphia, Pennsylvania 19103
(215) 238-8700
(215) 238-8710 (Fax)
pjk@duffykeenan.com

and

Frederick A. Tecce, Esquire
**McShea\Tecce, P.C.**
The Bell Atlantic Tower - 28th Floor
1717 Arch Street
Philadelphia, Pennsylvania 19103
(215) 599-0800
(215) 599-0888 (Fax)
ftecce@mcshea-tecce.com

Counsel for plaintiff,
Cross Atlantic Capital Partners, Inc.

# CERTIFICATE OF SERVICE

This is to hereby certify that on this 14th day of July, 2008, I caused true and correct copies of the foregoing Plaintiff's Response to Defendants' Statement of Material Facts in Support of Factbook's Motion For Summary Judgment of Inequitable Conduct to be served *via* this Court's Electronic Filing ("ECF") System, upon the following:

>Heidi L. Keefe, Esquire
>Mark R. Weinstein, Esquire
>Craig C. Clark, Esquire
>**White & Case LLP**
>3000 El Camino Real
>5 Palo Alto Square, 9th Floor
>Palo Alto, California 94306
>
>Alfred W. Zaher, Esquire
>Dennis P. McCooe, Esquire
>Joel L. Dion, Esquire
>Blank Rome
>One Logan Square
>130 North 18th Street
>Philadelphia, PA 19103
>
>Counsel for defendants
>Face Book, Inc. and Thefacebook, LLC

>/s/ Frederick A. Tecce
>**Frederick A. Tecce, Esquire**